ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN
ALEXANDRA S. BERNAY
CARMEN A. MEDICI
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINCOLN ADVENTURES, LLC, a Delaware Limited Liability Company, and MICHIGAN MULTI-KING, INC., a Michigan Corporation, on Behalf of Themselves and All Those Similarly Situated,<br><br>                Plaintiffs,<br><br>  vs.<br><br>THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON MEMBERS OF SYNDICATES, et al.<br><br>                Defendants. | No. 2:08-cv-00235-CCC-JAD<br><br>CLASS ACTION<br><br>THE PARTIES' JOINT SUBMISSION FOR COMPLETION OF FACT DISCOVERY |

Pursuant to the Court's February 27, 2019 minute order (ECF 83), Plaintiffs Lincoln Adventures, LLC and Michigan Multi-King, Inc. ("Plaintiffs"), and the remaining Defendants, Syndicates 510, 727, 1003, 1084, 1096, 1245, 2003, 2020, 2488, and 2791 (the "Defendants" or the "Syndicates") (collectively with Plaintiffs, the "Parties"),[1] have met and conferred and hereby respectfully submit the following discovery proposal regarding the completion of fact discovery, jointly setting forth the matters upon which they agree and separately setting forth their respective positions where they do not.

## I.   DISCOVERY MOTIONS

Pursuant to the Court's February 27, 2019 minute order, below is a list of motions pending in this case, along with the Parties' respective positions on their present status.  *See* ECF 83.

### A.   Binding Authorities and Lineslips

<u>Plaintiffs' Position</u>:

On April 26, 2013, Plaintiffs filed a motion to compel Defendants to produce binding authorities and lineslips agreements (the "Agreements MTC").  *See* ECF 64 at

---

[1]   Certain Defendants (Syndicates 33, 102, 382, 435, 570, 609, 623, 958, 1183, 1886, 2001, 2623, and 2987) have reached agreements to settle and do not join this discovery plan because the settlement agreements stay discovery with respect to them pending a decision on the forthcoming motion for approval of partial class action settlement.

- 1 -

1-2[2]; MDL 1663 ECFs 2495, 2495-1, 2530, 2537.[3]  The Agreements MTC was stayed

pending a ruling on the motions to dismiss, the Parties' mediation efforts, and a

motion for leave to file a Second Amended Class Action Complaint (MDL 1663 ECF

2737, "SAC").  *See, e.g.*, ECF 64 at 2-3.

     This Court held a telephone conference on June 25, 2018, and supplemental

briefing ensued.  *See* ECF 64 at 2-3.  On August 23, 2018, this Court ruled that

"Defendants are hereby ordered to produce lineslips and binding authorities."  ECF 64

at 6.  Therein, this Court ordered the Parties to "meet and confer to determine how

Defendants can search for and produce a random sampling of the documents" for all

the years in question.  *Id.*  Thereafter, the Parties met and conferred by phone on

September 6, 2018, exchanged correspondence on October 25, November 2, and

November 21, 2018, but were still unable to reach agreement.  Plaintiffs have

proposed limiting the production to 2004-2005 agreements.  The Defendants propose

limiting the production to approximately 5-10% of the lineslips and binding

authorities from that period.

     At the February 27, 2019 status conference, the Court ordered the Parties to

meet and confer further.  *See* ECF 83.  On March 6, 2019, Plaintiffs provided

additional information to the Defendants and suggested an in-person meeting on

---

[2]    Page number citations to docket entries ("ECF") refer to the page numbers
generated by the electronic case filing (CM/ECF) system.

[3]    References to "MDL 1663 ECF" are to the docket entries in *In re Ins. Brokerage
Antitrust Litig.*, No. 2:04-cv-5184 CCC-JAD (D.N.J.).

April 2, 2019.  Defendants have not yet agreed to the date nor have they provided a counter-proposal.  The Parties will report to the Court within five (5) days of their meeting, and if unable to reach agreement, the Court will need to issue an order about the scope of the production.  *See* Ex. 1 (Feb. 27, 2019 Hrg. Tr.) at 26:22-27:1.[4]

Defendants' Position:

Per the Court's instruction at the February 27, 2019 hearing, the Parties are conferring with respect to this issue and will report to the Court once the meet and confer is completed, which will be prior to the May 1, 2019 status conference.  On March 6, 2019, Plaintiffs provided a letter outlining the information they sought from this meet and confer.  Counsel for the Syndicates are gathering information to facilitate this meet and confer based on Plaintiffs' March 6 letter.

### B.   Xchanging Data

Plaintiffs' Position:

On May 10, 2013, Plaintiffs moved to compel, *inter alia*, definitions for data fields provided by certain Defendants ("May 10 Data MTC").  *See* MDL 1663 ECFs 2513, 2530, 2537.  On September 26, 2013, Plaintiffs moved to compel Defendants to produce policy-level data processed through Xchanging ("Xchanging MTC").  *See* ECF 64 at 2; MDL 1663 ECFs 2579, 2586, 2591.  These MTCs were also stayed for the same reasons the Agreements MTC was stayed.

---

[4]   References to Exs. 1-3 are to the exhibits attached to the Declaration of Rachel L. Jensen, filed herewith.

1542888_1

On July 13, 2018, Plaintiffs renewed their Xchanging MTC.  *See* ECF 64 at 3. The Court heard argument on August 30, 2018.  *See* ECF 65.  Thereafter, the Parties met and conferred about a potential informal resolution by phone on September 6, 2018; exchanged correspondence on October 25, November 2, and November 21, 2018; and provided several status reports to the Court.  *See* ECFs 67-68, 72, 74, 76, 78.  The Parties were unable to reach an informal resolution, however.  *See* ECF 83. At the February 27 status conference, the Court directed the Parties to meet and confer and thereafter submit additional cost and magnitude information for a ruling if they are unable to reach an agreement.  *See* Ex. 1 (Feb. 27, 2019 Hrg. Tr.) at 37:21-23.

As aforementioned, Plaintiffs have proposed a meeting on April 2, 2019, and will report to the Court within five (5) days of the meeting.  If the Parties are unable to reach an agreement, the Court will need to issue an order on the Xchanging MTC as to the Defendants.  *See* Ex. 1 (Feb. 27, 2019 Hrg. Tr.) at 37:21-24.  If the Parties reach agreement on that data, or if the Court otherwise orders its production, Plaintiffs agree to withdraw their May 10 Data MTC without prejudice.

Defendants' Position:

This motion is fully briefed and argued.  The Court indicated at the February 27, 2019 hearing that it would decide this motion once the Parties reported to the Court on the results of their meet and confer on the binders and lineslips issue.

To the extent any issues with respect to the Xchanging data may be reasonably addressed during this meet and confer, the Parties will do so.

### C.   Custodians and Search Terms

Plaintiffs' Position:

On May 10, 2013, Plaintiffs filed a motion to compel Defendants to produce documents related to certain custodians and search terms ("Custodians and Search Terms MTC").  *See* MDL 1663 ECFs 2513, 2530, 2537.  Like the other motions to compel, the Custodians and Search Terms MTC was stayed for several years.

Due to the passage of time, the Custodians and Search Terms MTC is now stale. First, many employees have left their respective Syndicate-employer or changed positions in the past six years.  Second, the Parties served supplemental initial disclosures on November 15, 2017, providing additional information about witnesses and documents.   Third, Plaintiffs have reached settlements with 13 of the 23 Syndicate-Defendants, thereby mooting a great portion of the MTC.   Plaintiffs, therefore, recommend that the Parties also meet and confer at their in-person meeting proposed for April 2, 2019, about custodians and search terms or technology assisted review of ESI, which is viewed as the current best practice.[5]  If the Defendants will

---

[5]   The Defendants have only produced approximately 1.8 million pages of documents, with Syndicate 2488 producing the vast majority of the documents (1.7 million pages of documents).  Defendants' document production was deficient as Syndicates ran a limited set of search terms for a limited set of custodians, which they reviewed for relevance and privilege, without consultation with Plaintiffs.

agree to this approach or the Court otherwise orders it, Plaintiffs will withdraw their Custodians and Search Terms MTC without prejudice.

Defendants' Position:

By this motion, Plaintiffs seek to compel the Syndicates to expand their document review and production to include additional search terms and custodians, notwithstanding the fact that, as described below, the Syndicates already conducted large-scale searches of hard-copy and electronic files for hundreds of custodians using hundreds of different search terms.  (MDL 1663 Dkt. Nos. 2513, 2530, 2537) Because of the breadth of the search terms used and custodians searched, the Syndicates' key term searches resulted in the collection and review of well over 5 million pages of documents.  The Syndicates' search for documents responsive to Plaintiffs' document requests was more than adequate, and the Syndicates stand on their opposition to this motion to compel.  Plaintiffs are seeking to use this motion to re-open and expand the scope of discovery.  For example, the primary example of missing search terms cited by Plaintiffs in their attempt to justify the re-opening of discovery ("the manner in which Lloyd's and the LMA are involved with the allocation of capacity," *see* § II.A below) was not the subject of a single document request from Plaintiffs.  This attempt to re-open discovery is inappropriate and should be rejected.

### D.     Privilege Logs

Plaintiffs' Position:

On May 10, 2013, Plaintiffs filed a motion to compel Defendants to provide additional information about their privilege logs ("Privilege Logs MTC").  *See* MDL 1663 ECFs 2513, 2530, 2537.  Like the other motions, the Privilege Logs MTC was stayed for several years.  The Privilege Logs MTC is now also stale because of the passage of time.  Plaintiffs propose to update the Privilege Logs MTC to withdraw portions that relate to the Settling Defendants and update the law within thirty (30) days.

Defendants' Position:

The Syndicates understand that Plaintiffs are not asking the Court to act on this motion at this time.  If and when Plaintiffs re-submit this motion, the Syndicates will provide an appropriate response at that time.

### E.     Depositions

Defendants' Position:

This motion for a protective order by the Syndicates sought to limit the number of depositions Plaintiffs may take.  The Syndicates filed this motion in response to Plaintiffs' service of nearly 60 deposition notices in the final weeks of the fact discovery period and noticing the depositions of the chief executive officers and non-executive directors of a number of the Syndicates, notwithstanding Plaintiffs' failure to show that these most senior corporate officials have unique personal knowledge

- 7 -

relevant to this action.  (MDL 1663 Dkt. Nos. 2544, 2548, 2553)  While appropriately seeking to limit the number of depositions by this protective order motion, the defendants worked diligently to permit reasonable discovery.  Seventeen of these depositions were completed in the final weeks of discovery in 2013.

The issue of the depositions of the senior corporate officials is now moot, because all but one of the Syndicates employing these executives have settled, and the executive of the non-settling Syndicate no longer is affiliated with that Syndicate's managing agent.  The Syndicates continue to object to the demand for the remaining depositions.

The Syndicates never agreed to stay these depositions pending the outcome of any motions or completion of any discovery.  Plaintiffs have not sought to take these depositions and thus there has been no need for the Syndicates to seek a ruling from the Court.  As described below, fact discovery should be over but for the outstanding document issues regarding the discovery motions addressed at the February 27 hearing.  Plaintiffs should not be permitted to take these or other fact depositions.

Plaintiffs' Position:

On June 24, 2013, certain Defendants filed a motion for protective order to prevent the depositions of certain executives and directors and a number of other depositions.  *See* MDL 1663 ECFs 2544, 2548, 2550, 2553.  This motion  was also stayed for several years.

In 2013, Plaintiffs noticed but agreed to stay nearly 60 depositions pending the outcome of the various discovery motions and production of the outstanding documents and data.  *See* MDL 1663 ECF 2595 at 2 ("Plaintiffs already told Defendants they will suspend further depositions (including dozens noticed months ago) until after the motion for leave and/or pending discovery motion(s) are decided.").  Plaintiffs withdraw without prejudice all deposition notices directed at the Settling Defendants.  Plaintiffs also recommend that the Parties devote time at their upcoming in-person meeting to discuss which noticed deponents are still employed by the Defendants.  Plaintiffs anticipate they will not need to take all 60 of the depositions already noticed but held in abeyance in 2013.

Defendants now appear to criticize Plaintiffs for not taking the 60 depositions that were noticed but held in abeyance.  It would not have been responsible for Plaintiffs to take these depositions until they obtained the relevant documents and data, however.  And, given that Defendants had filed a motion for protective order, Plaintiffs could not take those depositions while the motion was pending.

### F.     Disclosure of Damages Calculation

Defendants' Position:

This motion seeks to compel Plaintiffs to disclose their calculation of damages in compliance with Fed. R. Civ. P. 26(a)(1) and Defendants' Interrogatories.  (Dkt. No. 460)  The Motion was filed by Defendant Syndicate 2791 MAP, joined by two

defendants that are currently settling, Syndicates 570 and 609 ATR.  The motion is now joined by Defendant Wellington Syndicate 2020 and Defendant Catlin Syndicates 1003 and 2003.  The basis of this motion is that Defendants require a disclosure of how Plaintiffs propose to calculate damages and would be prejudiced if that disclosure were delayed until the exchange of expert reports.  To enable Plaintiffs to obtain the data that they allegedly need for their calculation, the moving Defendants are willing to defer the date for this disclosure until after the completion of any production made in response to the motion on Xchanging data.

Plaintiffs' Position:

Defendants concede that the information necessary to respond to Defendants' premature request regarding the calculation of damages has not yet been provided. There is no manner in which we can determine what undisclosed payments were made by the Defendants, because by their very nature undisclosed payments are not disclosed.  Assuming that Defendants provide a complete production of Xchanging data, Plaintiffs will revisit this request, but believe this is the proper subject of a merits expert report and should be submitted at that time as is standard practice in large antitrust class actions.

In any event, the motion should be denied, because to the extent that we have been able to determine this information given the data currently available, we have

already updated our initial disclosures.  Also, separately, we are submitting to the Court an estimate of the magnitude of the case, given what we know now.

## II.    SUBJECTS ON WHICH DISCOVERY IS STILL NEEDED

### A.    Plaintiffs' Position

Defendants' characterization of the status of discovery when the Parties were ordered to mediation is misleading.  In September 2013, when Defendants claim that fact discovery ended, none of the outstanding discovery motions had been decided, there were 60 outstanding depositions, the Parties prepared for and conducted a mediation.  After the mediation was unsuccessful, Plaintiffs promptly alerted the Court that they intended to amend their complaint.  MDL 1663 ECF 2585.  All of these events had substantial impact on how discovery and the case itself would move forward.  The idea that Plaintiffs sat on their hands or that discovery was close to over is inaccurate.

Defendants have not provided many of the documents and discovery that Plaintiffs previously requested; hence, the many motions to compel that are pending. The remaining Defendants suggest that they made a large-scale document production, but that is untrue.  Defendants made an extremely narrow production, which did not search relevant custodians, did not use relevant search terms, and did not provide documents responsive to Plaintiffs' requests.  This is because Defendants read the complaint as not considering many of the features of the Lloyd's Market as relevant to Plaintiffs' claims – this is why Plaintiffs were forced to bring a motion regarding

lineslips and binding authorities, some of the most basic of agreements challenged both in the Revised First Amended Class Action Complaint (MDL 1663 ECF 2312) and SAC. *See, e.g.*, ECF 58 at 2 (showing a lack of relevant search terms, including for example nothing regarding the manner in which Lloyd's and the LMA are involved with allocation of capacity, nothing regarding the coordination between so-called competitors and nothing about the manner in which the Syndicates make deals with each other and hide that from insurance purchasers). With that flawed view of the complaint now rejected by the Court's MTD Order (MDL ECF 2877), the Defendants should be ordered to meaningfully participate in discovery. This will be the first time they have done that in this case. Even a cursory inspection at the quantity of documents produced to date make this clear. Defendants have produced so far:

| Defendant | Total Documents Produced | Total Pages Produced |
|---|---|---|
| Syndicate 0510 | 4,227 | 35,594 |
| Syndicate 0727 | 122 | 809 |
| Syndicate 1003 & 2003 | 1,206 | 5,271 |
| Syndicate 1084 & 1096 | 5,112 | 31,625 |
| Syndicate 1245 | 1 | 1 |
| Syndicate 2020 | 180 | 1,856 |
| Syndicate 2488 | 89,130 | 1,770,840 |
| Syndicate 2791 | 25 | 493 |
| **Total** | **100,003** | **1,846,489** |

Leaving aside Syndicate 2488, whose production consisted overwhelmingly of non-responsive and irrelevant documents, the remaining Syndicates produced an

average of less than 1,560 documents each.  In litigation of this magnitude, and given the discovery served to date, those numbers are plainly the result of an inadequate search.

Plaintiffs were also up front when they sought leave to amend their complaint that modest additional discovery may be needed.  *See* MDL 1663 ECF 2617 at 21-22.  Such discovery is necessary to provide a full and complete record for dispositive motions, as the District Court indicated would be afforded after denial of Defendants' motions to dismiss.[6]

With all this in mind, additional discovery may be needed on the following subjects for the relevant time period alleged in the SAC, some of which has been

---

[6]   *See* Ex. 2 (Nov. 30, 2017 Hrg. Tr.) at 15:21-16:11 (Cecchi, D.J.) ("And I will also say this: In terms of discovery, I'm not sure what loose ends are left at this point. But to the extent we're going to be teeing up any further motion practice, as a general rule I like to make sure that we have motions that are presented in a way that they're full and complete and that the parties have had ample opportunity to develop their case through discovery.  So in thinking about discovery, I would like motions in the future, if we get to that point, that are fully prepared with ample discovery supporting them and not any holes in terms of the arguments presented.  But obviously you're going to wait for Judge Dickson to come to his ruling.  But I just wanted to give you the benefit of my consideration as to how I see discovery unfolding in general; that there should be sufficient disclosure to provide the parties with an opportunity for full briefing on whatever matters they intend to bring forward."); *see also* Ex. 3 (Sept. 26, 2017 Hrg. Tr.) at 16:20-24 (Dickson, M.J.) ("[T]he plaintiffs and the defendant to the extent the defendant wants to, can issue new discovery request[s] and then we'll fight about whether or not somebody thinks they're over-broad or redundant or irrelevant, based on the claims.").

already requested, but not provided for the reasons described above and in the pending motions to compel:[7]

1.      Representations made by, and communications among, the Syndicates, Lloyd's, and Lloyd's Brokers, concerning competition in the Lloyd's Market.  *See, e.g.*, SAC, ¶¶2-3, 6, 8, 11, 69, 72-152; *see also* MTD Order at 2-3.

2.      Representations made by, and communications among, Syndicates, Lloyd's, and Lloyd's Brokers, concerning the payment of broker compensation.  *See, e.g.*, SAC, ¶¶5, 7-8, 12, 7-8, 12, 78-79, 110-64; MTD Order at 6-8.

3.      Selecting and "following the leader" by Syndicates and Lloyd's Brokers through agreements, including binding authorities and lineslips, and profit sharing. *See, e.g.*, SAC, ¶¶6-8, 10-12, 62, 69, 72-89, 110-152, 231-36; MTD Order at 2-4.

4.      Information sharing among Syndicates, Lloyd's, Lloyd's Council, Franchise Performance Directorate, Lloyd's Market Association ("LMA"), and Lloyd's Brokers about the franchisor-franchisee model, controlling the risk appetite and capacity of individual Syndicates and the market, business plans, profit targets, underwriting review and guidance, budgets, risk management, allocation of business,

---

[7]      *See* SAC, ¶183; *see also* Aug. 23, 2017 Opinion denying Defendants' motions to dismiss (MDL 1663 ECF 2877) ("MTD Order") at 2.  For discovery already provided for the relevant time period, Plaintiffs do not seek duplicative discovery.  Plaintiffs reserve the right to request additional discovery if they learn new or different information through the course of their investigation or discovery.

1542888_1

and broker compensation.  *See, e.g.*, SAC, ¶¶4, 6, 10-74, 89-97, 114, 203-17; MTD Order at 3-5, 8.

5.      Mandatory participation in the LMA, information sharing and coordination through it, including public representations, bidding practices, premium volume written, forward-looking analysis, pricing, contracts, capacity, broker compensation, and market share.  *See, e.g.*, SAC, ¶¶9-10, 98-109; MTD Order at 6.

6.      Data and other evidence concerning the premium written by each Defendant in each line of business, the amount of Lloyd's Broker compensation paid, and supra-competitive pricing of insurance for Plaintiffs and the Class.  *See, e.g.*, SAC, ¶¶11, 64-68, 89-90, 93, 139, 165-202, 218-230, 232, 236; MTD Order at 9-10.

7.      Internal investigations and inquiries by regulators about the alleged practices, including the European Commission and regulators in the United States. *See, e.g.*, SAC, ¶¶109, 152, 240.

## B.      Defendants' Position

1.      Plaintiffs seek unfettered discovery well into 2020.  Plaintiffs propose no limits on either the amount of discovery or the scope of discovery.  Plaintiffs do not set any limits on the number of document requests or depositions.  Likewise, Plaintiffs include only a non-exhaustive list of topics on which they will seek discovery, reserving to themselves the ability to seek discovery on any topic for the next year. Moreover, Plaintiffs seek to extend the relevant time period for discovery set by the

Court by 12 years.  If 2007 as the cut-off for discovery was not adequate for Plaintiffs' purposes, they should have raised this issue during the fact discovery period in 2012-2013.  They did not.

2.     Plaintiffs ignore the fact that they already have had extensive fact discovery from May 2012 through September 2013.   During this time, plaintiffs served on each of the defendants 57 individual requests for production of documents, data requests seeking information on U.S. policyholders placing insurance with each defendant over an eleven-year period from 1997 to 2007, and dozens of deposition notices.   In response, all of the Syndicates have produced documents, data and witnesses for deposition.  Collectively, the Syndicates produced more than 2,000,000 pages of documents, collected and produced more than 220,000 lines of data regarding U.S. policyholders, and presented 45 witnesses for deposition.  Plaintiffs' complaints regarding the number of documents produced ignore the breadth of the Syndicates' discovery efforts.   The Syndicates' production of documents included electronic discovery through key word searches.  By way of example concerning the breadth of the searches conducted, for eighteen of the defendants, the search encompassed the electronic files of more than 245 custodians using 124 different search terms.  The result was approximately 200 GB of documents to be reviewed.  Using conservative estimates, this amount of data translates to over 5 million pages of documents that were reviewed to respond to Plaintiffs' broad discovery requests.   In addition,

Plaintiffs obtained document and deposition discovery from various brokers.  By Order dated June 28, 2013 (MDL 1663 Dkt. No. 2547), the Court set September 30, 2013 as the fact discovery end date.  There was no further extension of this fact discovery end date.  Forty-five depositions were taken by Plaintiffs under Rule 30(b)(1) and 30(b)(6), the latter of which included testimony on various substantive aspects of plaintiffs' claims.  The absence of responsive documents reflects the lack of merit to Plaintiffs' claims.

3.    After September 2013, Plaintiffs sought leave to amend their complaint, representing to the Court that this amendment did not constitute a new case theory but rather added additional factual allegations to support their existing theory of the case. *See* June 17, 2014 Transcript (hearing on Motion for Leave to File Second Amend Complaint) at p. 13 ("And in the proposed second amended complaint, the basic allegations are there in both complaints.  This is nothing new."); Plaintiffs' Memorandum In Support of Their Motion for Leave to Amend (MDL 1663 Dkt. No. 2603) at 2 ("Armed with newly-developed evidence gleaned from discovery, Plaintiffs now seek leave to amend the complaint to add new plaintiff-class representatives, name additional defendants, and streamline and **focus their allegations to conform with the evidence** discovered to date.") (emphasis added); Plaintiffs' Reply Memorandum In Support Of Motion for Leave to Amend (MDL 1663 Dkt. No. 2617) at 7 ("The SAC does not plead entirely new claims.  *See* §II.B.  The RAC's

allegations foreshadowed the SAC, though the latter expanded upon it, which is par for the course after discovery. . . . Parties may amend their pleadings to conform to discovery."). Further, in their reply, Plaintiffs argued that the Syndicates' concerns about boundless additional discovery were "speculative" and that the only discovery that remained was the discovery at issue in the pending motions to compel. *Id.* at 12. Finally, Plaintiffs stated that "[e]ven modest additional" discovery – if it were requested – would be no reason to deny the motion. *Id.* Thus, Plaintiffs gave the Court the impression that they were not seeking any discovery – but that if anything did come up after the discovery motions were decided, it would be modest. Now, of course, Plaintiffs seek immodest discovery spanning decades that will take years to complete.

4. Once the Court decides the pending motions on Xchanging data and lineslips/binders, and any additional discovery required by the Court's resolution of these motions is provided, the fact discovery period should close. As the Court recognized at the February 27 hearing, the Court always understood that fact discovery was near its end, not its beginning: "[T]he Court is actually concerned about this issue, too. About reopening discovery and then litigating the case for another three years. I mean, I think Judge Cecchi and I – I know what I think and I think Judge Cecchi thought that this is all we need to get done and then we can move this case to dispositive places." Ex. 1 at 39:10-16 (Feb. 27, 2019 Hearing).

- 18 -

5.      The topics on which Plaintiffs seek discovery do not support a continuation of the fact discovery period.  Those topics fall into one of two categories. First, many of the topics already were covered by the discovery served and received by Plaintiffs during the 17 months of fact discovery:

> Topic No. 2 – Representations and communications concerning the payment of broker compensation: Plaintiffs' Document Request Nos. 26-33, Plaintiffs' Rule 30(b)(6) Notice, ¶¶ 2, 7
>
> Topic No. 5 – Participation in, and information sharing and coordination through, the LMA: Plaintiffs' Document Request Nos. 25-31
>
> Topic No. 6 – Data concerning premium/pricing, broker compensation: Plaintiffs' Data Request; Plaintiffs' Xchanging Data Motion to Compel; Plaintiffs' Lineslips/Binders Motion to Compel; Plaintiffs' Rule 30(b)(6) Notice, ¶¶ 4, 8
>
> Topic No. 7 – Internal investigations and inquiries by regulators: Plaintiffs' Document Request Nos. 2-8, Plaintiffs' Rule 30(b)(6) Notice, ¶¶ 2, 7, 10

6.      Second, the balance of the topics were never pursued during the prior 17-month discovery period, and there is no justification for Plaintiffs' failure to pursue this discovery that would merit re-opening discovery now.  These topics include: Topic No. 1 – representations and communications concerning competition in the Lloyd's Market, Topic No. 3 – selecting and "following the leader" by syndicates and brokers, and Topic No. 4 – information sharing among Syndicates, Lloyd's, Franchise Performance Directorate, LMA, and brokers.

7.      The Syndicates respectfully request that the Court (1) set a time period for compliance with any document or data production required by the resolution of the

two pending discovery motions and (2) close fact discovery once any such discovery is complete.

## III.   TIMELINE FOR COMPLETION

### A.    Plaintiffs' Position

The Parties anticipate that the remaining fact discovery can be completed in less than a year.  In 2013, Plaintiffs held in abeyance nearly 60 noticed depositions due to the missing documents and data.  Once the Defendants certify the completion of their respective document productions, Plaintiffs will resume and complete any remaining fact depositions in this case within six (6) months.[8]

Below is the proposed schedule for completion of fact discovery:

| Event | Date |
|---|---|
| Serve Updated Document Requests | March 22, 2019 |
| Status Conference | May 1, 2019 |
| Certify Completion of Document Productions | August 20, 2019, or another date set by the Court. |
| Status Conference | To be set at the convenience of the Court after document productions are completed. |
| Complete Fact Depositions | Six (6) months after Defendants certify completion of document productions. |
| Status Conference | To be set at the convenience of the Court at the end of fact depositions. |

---

[8]   Plaintiffs are reluctant to provide any shorter time estimate, given that the witnesses are located in London, United Kingdom.

- 20 -

Within thirty (30) days of completing fact depositions, Plaintiffs propose to file their class certification motion.  Plaintiffs recommend that the Court hold a status conference after class certification is decided to set the remaining pretrial schedule.

### B.    Defendants' Position

Upon the resolution of the two pending discovery motions, and completion of any discovery relating to those motions, fact discovery should close.

The Syndicates propose a status conference at the close of fact discovery to set a schedule for the remaining pre-trial activity, including experts, class certification and summary judgment.  With respect to Plaintiffs' proposal that they will file a class certification motion within 30 days of the close of fact discovery, the Syndicates note that any class certification schedule must include time for expert discovery and any *Daubert* motions.

DATED:  March 15, 2019                      Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
RACHEL L. JENSEN
ALEXANDRA S. BERNAY
CARMEN A. MEDICI


                        s/ Rachel L. Jensen
                      RACHEL L. JENSEN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

1542888_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ZWERLING, SCHACHTER
  & ZWERLING, LLP
ROBERT S. SCHACHTER
DAN DRACHLER
ANA M. CABASSA
41 Madison Avenue
New York, NY  10010
Telephone:  212/223-3900
212/371-5969 (fax)

WHATLEY KALLAS, LLP
JOE R. WHATLEY, JR.
EDITH M. KALLAS
1180 Avenue of the Americas, 20th Floor
New York, NY  10036
Telephone:  212/447-7060
800/922-4851 (fax)

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
H. SULLIVAN BUNCH
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602/274-1199 (fax)

FOOTE, MIELKE, CHAVEZ
  & O'NEIL, LLC
ROBERT M. FOOTE
KATHLEEN C. CHAVEZ
ALEX J. DRAVILLAS
10 West State Street, Suite 200
Geneva, IL  60134
Telephone:  630/232-7450
630/232-7452 (fax)

CAFFERTY CLOBES MERIWETHER
  & SPRENGEL LLP
ELLEN MERIWETHER
1101 Market Street, Suite 2650
Philadelphia, PA  19107
Telephone:  (215) 864-2800
215/864-2810 (fax)

CAFFERTY CLOBES MERIWETHER
  & SPRENGEL LLP
NYRAN ROSE RASCHE
30 North LaSalle Street, Suite 3200
Chicago, IL  60602
Telephone:  312/782-4880
312/782-4485 (fax)

AULO I. GONANO, P.C.
AULO I. GONANO
1932 Ford Avenue
Wyandotte, MI  48192
Telephone:  734/285-3333

DAVID M. FOSTER, P.C.
DAVID M. FOSTER
30833 Northwestern Hwy., Suite 209
Farmington, MI  48334
Telephone:  248/855-0940
248/855-0987 (fax)

Attorneys for Plaintiffs

DATED:  March 15, 2019                WALSH PIZZI O'REILLY
                                        FALANGA LLP
                                      MARC D. HAEFNER


                                          s/ Marc D. Haefner
                                      ──────────────────────────
                                          MARC D. HAEFNER

                                      Walsh Pizzi O'Reilly Falanga LLP
                                      One Riverfront Plaza
                                      1037 Raymond Boulevard, 6th Fl
                                      Newark, NJ 07102
                                      Telephone:  973/757-1100
                                      973/757-1090 (fax)

                                      Defendants' Liaison Counsel and Counsel
                                      for Defendant Syndicate 2488

                                      ROBINS KAPLAN LLP
                                      MATTHEW M. BURKE
                                      Prudential Tower
                                      800 Boylston Street
                                      Boston, MA 02199
                                      Telephone:  617/859-2711
                                      617/267-8288 (fax)

                                      Counsel for Defendant Syndicates 510,
                                      727, 1084, 1096, 1245, and 2488

                                      FREEBORN & PETERS LLP
                                      THOMAS F. BUSH
                                      311 South Wacker Drive, Suite 3000
                                      Chicago, IL 60606
                                      Telephone:  312/360-6837
                                      312/360-6520 (fax)

                                      Counsel for Syndicates 1003, 2003, 2020,
                                      and 2971

1542888_1

## ECF CERTIFICATION

The filing attorney attests that she has obtained concurrence regarding the filing of this document from the signatories to this document.

Dated:  March 15, 2019                                    By:   s/ Rachel L. Jensen
                                                                          RACHEL L. JENSEN

- 25 -