ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN
ALEXANDRA S. BERNAY
CARMEN A. MEDICI
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINCOLN ADVENTURES, LLC, a Delaware Limited Liability Company, and MICHIGAN MULTI-KING, INC., a Michigan Corporation, on Behalf of Themselves and All Those Similarly Situated,<br><br>                                  Plaintiffs,<br><br>        vs.<br><br>THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON MEMBERS OF SYNDICATES, et al.<br><br>                                  Defendants. | No. 2:08-cv-00235-CCC-JAD<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT<br><br>Motion Return Date:  May 20, 2019 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ....................................................................1

II.     PROCEDURAL HISTORY .......................................................4

        A.      Filing and Stay of the Action ........................................4

        B.      Denial of the Motions to Dismiss...................................5

        C.      Fact Discovery to Date ..................................................6

        D.      Arm's Length Settlement Negotiations...........................6

III.    OVERVIEW OF THE PARTIAL SETTLEMENT BENEFITS ....................9

IV.     FRAMEWORK FOR CLASS ACTION SETTLEMENTS.........................10

V.      THE PARTIAL SETTLEMENT SHOULD BE PRELIMINARILY
        APPROVED .........................................................................11

        A.      The Partial Settlement Is the Result of Arm's-Length
                Negotiations by Well-Informed and Experienced Counsel ...............12

        B.      The Benefits Under the Partial Settlement Are Adequate .................15

        C.      The Other Amended Rule 23(e)(2) Factors Are Met..........................18

                1.      The Proposed Method for Distributing Relief Is Effective ......18

                2.      Attorneys' Fees and Expenses and Service Awards.................19

                3.      The Settling Parties Have No Side Agreements Besides
                        Opt Outs ...........................................................21

                4.      Class Members Are Treated Equitably .....................................21

VI.     THE COURT SHOULD CERTIFY A SETTLEMENT CLASS FOR
        SETTLEMENT PURPOSES.........................................................21

        A.      The Settlement Class Satisfies Rule 23(a) .........................................22

                1.      The Settlement Class Is Sufficiently Numerous.......................23

**Page**

2.  Common Questions of Law and Fact Bind the Settlement Class ........................................................... 23

3.  Plaintiffs' Claims Are Typical ................................. 24

4.  Plaintiffs and Class Counsel Are Adequate ............................. 25

B.  The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ........................................................ 26

1.  Common Legal and Factual Questions Predominate ................ 26

2.  A Class Action Is Superior to Other Methods of Adjudication ...................................................... 28

3.  The Court Should Appoint Plaintiffs as Class Representatives and Appoint Class Counsel ........................... 29

VII.  THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS .............................................. 30

VIII.  PROPOSED SCHEDULE OF EVENTS ........................... 32

IX.  CONCLUSION ............................................... 33

- ii -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)..........................................................................22, 26, 27, 29

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013).............................................................................26

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fl. 1988) ...........................................................18

*Block v. RBS Citizens, Nat'l Ass'n, Inc.*,
  No. 15-cv-1524, 2016 WL 8201853
  (D.N.J. Dec. 12, 2016) ..........................................................................4

*Bogosian v. Gulf Oil Corp.*,
  561 F.2d 434 (3d Cir. 1977) ................................................................25

*Bredbenner v. Liberty Travel, Inc.*,
  No. 09-cv-0905, 2011 WL 1344745
  (D.N.J. Apr. 8, 2011) ...........................................................................15

*Capps v. Law Offices of Peter W. Singer*,
  No. 15-cv-02410, 2016 U.S. Dist. LEXIS 161137
  (S.D. Cal. Nov. 21, 2016) ....................................................................30

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013).................................................................................27

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) ................................................................10

*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
  604 F. Supp. 446 (E.D. Pa. 1985).......................................................17

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) .....................................................12, 15, 17

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) ...............................................................30

- iii -

**Page**

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..........................................................................10

*Hart v. Colvin*,
No. 15-cv-00623, 2016 U.S. Dist. LEXIS 155799
(N.D. Cal. Nov. 9, 2016).....................................................................................10

*In re Aggrenox Antitrust Litig.*,
No. 3:14-md-02516, 2017 WL 4278788
(D. Conn. Sept. 19, 2017) ..................................................................................13

*In re Brokerage Antitrust Litig.*,
No. 04-5184 (CCC-JAD), slip op.
(D.N.J. Aug. 1, 2013)..........................................................................................19

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ..............................................................................11

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009) ..................................................................13, 14

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993) .......................................................................17

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ................................................................................11

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012).........................................................................22

*In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*,
MDL No. 2284, 2013 WL 504857
(E.D. Pa. Feb. 12, 2013) ....................................................................................22

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012)...............................................................12, 16, 21

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009) ..............................................................................28

- iv -

**Page**

*In re Linerboard Antitrust Litig.*,
    MDL No. 1261, 2004 WL 1221350
    (E.D. Pa. June 2, 2004) ...................................................................21

*In re: Liquid Aluminum Sulfate Antitrust Litig.*,
    No. 16-md-2687 (JLL) (JAD), slip op.
    (D.N.J. Dec. 3, 2018) .....................................................................19

*In re Mercedes-Benz Antitrust Litig.*,
    213 F.R.D. 180 (D.N.J. 2003) ....................................................26, 27

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................14, 16

*In re NFL Players' Concussion Injury Litig.*,
    961 F. Supp. 2d 708 (E.D. Pa. 2014) ..............................................17

*In re NFL Players Concussion Injury Litig.*,
    775 F.3d 570 (3d Cir. 2014) ...........................................................22

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................17

*In re Pet Food Prods. Liab. Litig.*,
    No. 07-cv-2867, 2008 WL 4937632
    (D.N.J. Nov. 18, 2008).....................................................................22

*In re Philips/Magnavox Television Litig.*,
    No. 09-cv-3072, 2012 WL 1677244
    (D.N.J. May 14, 2012) .....................................................................13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ...........................................23, 24, 27, 28

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) ...........................................................27

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ...........................................................10

- v -

**Page**

*Jones v. Commerce Bancorp, Inc.*,
  No. 05-cv-5600, 2007 WL 2085357
  (D.N.J. July 16, 2007)......................................................................11

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ........................................................23, 24

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ..............................................14

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950).........................................................................30

*Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ................................................................24

*Parker v. City of New York*,
  No. 15-cv-6733, 2017 WL 6375736
  (E.D.N.Y. Dec. 11, 2017) ...............................................................12

*Sanders v. CJS Solutions Grp., LLC*,
  No. 17 Civ. 3809, 2018 WL 1116017
  (S.D.N.Y. Feb. 28, 2018).................................................................15

*Singleton v. First Student Management LLC*,
  No. 13-1744, 2014 WL 3865853
  (D.N.J. Aug. 6, 2014).......................................................................16

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) ............................................................23

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) .......................................................26, 27

*Varacallo v. Mass Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005)......................................................14, 26

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).........................................................................23

- vi -

Page

**STATUTES, RULES AND REGULATIONS**

18 U.S.C.
    §1961................................................................................*passim*
    §1962(c) ...........................................................................5
    §1962(d) ...........................................................................5

Federal Rules of Civil Procedure
    Rule 23 ...................................................................4, 22, 33
    Rule 23(a).........................................................21, 22, 25
    Rule 23(a)(2)....................................................23, 24
    Rule 23(a)(3)....................................................24, 25
    Rule 23(a)(4)....................................................25
    Rule 23(b)(3)..............................................21, 26, 27, 28
    Rule 23(c)(2).....................................................30
    Rule 23(c)(2)(B)(v)..........................................2
    Rule 23(e)..................................................3, 10, 11
    Rule 23(e)(1)....................................................11
    Rule 23(e)(2)....................................................*passim*
    Rule 23(e)(2)(A)...............................................12
    Rule 23(e)(2)(B)...............................................12
    Rule 23(e)(2)(C)(ii)..........................................18
    Rule 23(e)(2)(C)(iii)........................................18
    Rule 23(e)(2)(C)(iv).........................................18
    Rule 23(e)(3)....................................................12
    Rule 23(g)........................................................29

**SECONDARY AUTHORITIES**

*Manual for Complex Litigation* (4th ed. 2004)
    §21.63......................................................11, 30, 32

William Rubenstein, Alba Conte & Herbert Newberg,
    *Newberg on Class Actions* (4th ed. 2010)
    §4:25 ...............................................................26

1505647_6

Plaintiffs submit this memorandum in support of their motion for preliminary approval of the partial class action settlement ("Partial Settlement").

## I.   INTRODUCTION

After a decade of litigation, investigation, discovery, and several rounds of multi-day mediations in New York and London under the auspices by the Court-appointed Settlement Master, Plaintiffs have reached settlements with thirteen (13) of the Lloyd's Syndicate-Defendants ("Settling Defendants").[1] Under the terms of the proposed Partial Settlement,[2] the Settling Defendants will provide nearly $22 million in monetary relief and five (5) years of business reforms in exchange for dismissal of the Second Amended Class Action Complaint (the "SAC")[3] as against those defendants only. As to the Remaining Defendants, the litigation will continue and, with it, the potential for additional relief either in the form of additional partial settlements or a judgment in favor of Plaintiffs and other Settlement Class Members.[4]

---

[1]   The 13 Settling Defendants are Lloyd's Syndicates 0033, 0102, 0382, 0435, 0570, 0609, 0623, 0958, 1183, 1886, 2001, 2623, and 2987.

[2]   The terms of the Settlement are reflected in the Stipulation of Partial Class Action Settlement, which, along with its exhibits, is referred to as the "Agreement" and attached as Exhibit A to the Declaration of Rachel L. Jensen ("Jensen Declaration").

[3]   Hereafter, capitalized terms shall have the same meaning as set forth in the Agreement, unless otherwise noted.

[4]   The 10 Defendants who are not party to the Agreement and against which the litigation will continue are Syndicate-Defendants 0510, 0727, 1003, 1084, 1096, 1245, 2003, 2020, 2488, and 2791 (the "Remaining Defendants").

1505647_6

The proposed Partial Settlement is the product of extensive arm's-length negotiations by highly experienced counsel with multiple Syndicate-Defendants and their counsel over the period of many months with the assistance of the Court-appointed Settlement Master, the Honorable Layn R. Phillips (ret.) (hereafter "Judge Phillips").  The Settling Parties' negotiations were informed with the benefit of this Court's ruling on the motions to dismiss, the investigation and discovery conducted to date, Magistrate Judge Dickson's guidance on the pending discovery motions, expert analysis and insights, and the extensive procedural history that preceded them.

As part of the Partial Settlement, the Settling Parties agree, for settlement purposes only, to the certification of the following proposed Federal Rule of Civil Procedure ("Rule") 23(b)(3) class:

> All persons and entities in the United States (including its territories) who, from January 1, 1997, through March 25, 2019, purchased or renewed a Contract of Insurance with any Lloyd's Syndicates named as a Defendant in the Action.  Excluded from the Settlement Class are Released Defendants, Defendants, defendants formerly named as such in the Action, all Lloyd's syndicates, Opt-outs, and judges presiding over the Action and their immediate families (the "Settlement Class").

Pursuant to the terms of the Agreement and Rule 23(c)(2)(B)(v), all members of the Settlement Class will have an opportunity to opt out or object.

Under the Agreement, each Settlement Class Member is being treated equitably – a *pro rata* share of the monetary relief based on the premium they paid for insurance, and the business reforms agreed to by the Settling Defendants.

- 2 -

Importantly, the Agreement does not release any claims against any Remaining Defendant, nor does it release any claim arising before or after the Class Period.

This Partial Settlement satisfies Rule 23(e), including the 2018 amendments. Indeed, the Partial Settlement is a fair, reasonable, and adequate resolution for the Settlement Class with respect to the Settling Defendants and balances the objective of securing the highest possible recovery with recognition of the risks and costs of continued litigation, including the possibility that, as with any complex case, the Settlement Class could receive nothing.  Accordingly, Plaintiffs and their counsel believe that the Partial Settlement is in the best interests of the Settlement Class.

Plaintiffs seek the Court's preliminary approval so that notice may be disseminated to the Settlement Class, and a Fairness Hearing may be set to consider final approval.  At the Fairness Hearing, the Court will make a final determination as to whether the Partial Settlement is fair, reasonable, and adequate as a whole.  In the interim, Plaintiffs request entry of the Settling Parties' proposed Preliminary Approval Order ("PAO"), which will commence the approval process by, among other things:

- preliminarily approving the terms of the Partial Settlement;

- certifying the Settlement Class and preliminarily certifying Plaintiffs as class representatives and Co-Lead Counsel as Class Counsel for purposes of the Partial Settlement only;

- approving the retention of A.B. Data, Ltd. ("A.B. Data") as the Claims Administrator;

- 3 -

- approving the form and content of the Claim Form, Long-form Notice, and Summary Notice, attached as Exhibits A, D, and E to the Agreement;

- approving the plan for disseminating notice to the Settlement Class as the best notice practicable pursuant to Rule 23, due process, and all other applicable law and rules; and

- setting a schedule for: (i) disseminating notice to the Settlement Class; (ii) submitting any requests for exclusion from the Settlement Class; (iii) filing any objections to the Partial Settlement; (iv) submitting Claim Forms to participate in the Partial Settlement; (v) submitting papers in support of final approval of the Partial Settlement; (vi) submitting papers in support of Plaintiffs' Counsel's application for attorneys' fees and expenses, and Service Awards to Plaintiffs; and (vii) the Fairness Hearing.

For the reasons set forth herein, the proposed Partial Settlement satisfies the standards for preliminary approval. *See Block v. RBS Citizens, Nat'l Ass'n, Inc.*, No. 15-cv-1524, 2016 WL 8201853, at *4 (D.N.J. Dec. 12, 2016) ("Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient.").[5]

## II.    PROCEDURAL HISTORY

### A.    Filing and Stay of the Action

This case was filed more than ten years ago.  On July 13, 2007, Plaintiffs filed their lawsuit in the Southern District of Florida (the "Action"), which was "tagged" by certain Defendants to Multidistrict Litigation ("MDL") 1663, then pending in this District before District Judge Garrett Brown Jr. (ret.), as a potential tag-along action.

---

[5]    Here, and throughout, internal citations and quotation marks are omitted and emphasis is supplied unless otherwise noted.

On December 11, 2007, the Judicial Panel on Multidistrict Litigation transferred this case to MDL 1663 (MDL Dkt. 232).  Upon transfer of the Action to this District, Judge Brown (ret.) stayed this case until October 20, 2011, when MDL 1663 was transferred to this Honorable Court, which lifted the stay (MDL Dkt. 1922).

### B.   Denial of the Motions to Dismiss

On November 14, 2012, at the Court's direction, Plaintiffs filed a Revised First Amended Class Action Complaint ("FAC") (MDL Dkt. 2312).  On December 4, 2012, Defendants filed motions to dismiss the FAC, which motions were fully briefed as of April 30, 2013 (MDL Dkt. 2503).  While these motions were pending before the Court, and after the parties to the Action (the "Parties") were unable to resolve the Action at the conclusion of their two-day September 2013 mediation in London, on November 4, 2013, Plaintiffs filed a motion for leave to amend the FAC (MDL Dkt. 2603).  On November 17, 2015, the Court directed Plaintiffs to submit a revised proposed second amended complaint and, in February 2016, the Court granted leave for Plaintiffs to file it.

On February 12, 2016, Plaintiffs filed their SAC on behalf of themselves and a putative class for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c)-(d); civil conspiracy; and unjust enrichment alleging that Defendants and other co-conspirators operating in the Lloyd's Market

exploited the structure of Lloyd's Corporation in order to collaborate rather than compete in the pricing of insurance products sold to U.S. insureds.

On March 28, 2016, Defendants filed motions to dismiss the SAC (MDL Dkts. 2762-2770), which motions were fully briefed and argued. On August 23, 2017, the Court denied Defendants' motions ("MTD Order") (MDL Dkts. 2877-2878).

### C.    Fact Discovery to Date

From June 2012 to September 2013, the Parties conducted fact discovery. Defendants produced some documents, and Plaintiffs took depositions of the 23 Defendant-Syndicates, including the Settling Defendants, and third-party brokers.

The Parties were unable to resolve a number of discovery disputes regarding the scope of discovery and outstanding documents and depositions, which resulted in the filing of a half dozen numerous discovery motions in 2013 (*see, e.g.*, MDL Dkts. 2495, 2513, 2530, 2537, 2544, 2548, 2553, 2579, 2586, and 2591), many of which remain pending. Discovery continues as to the Remaining Defendants, with a discovery status conference set for May 1, 2019, before Magistrate Judge Dickson.[6]

### D.    Arm's Length Settlement Negotiations

On September 25, 2012, this Court entered an Order Appointing Mediator, referring MDL 1663, including this Action, to mediation and appointing Judge

---

[6]    As part of their Agreement with the Settling Defendants, Plaintiffs agreed to stay discovery vis-à-vis the Settling Defendants pending this Court's approval of the Partial Settlement.

Phillips as the mediator (MDL Dkt. 2198).  Since that time, all the Parties in this Action, including the Settling Parties, have engaged in extensive arm's length settlement negotiations under the auspices of Judge Phillips, including at least four (4) arm's length in-person mediation sessions: (i) a one-day mediation in New York City in October 2012; (ii) a two-day mediation in London in September 2013; (iii) a one-day mediation in May 2016; and (iv) a two-day mediation in New York City in April 2018.  *See* Jensen Decl., ¶¶3-7.

First, on October 25, 2012, the Parties participated in a one-day mediation session with Judge Phillips in New York City, but were unable to reach a resolution at that time.  *See* Jensen Decl., ¶4.

Then, on September 23-24, 2013, the Parties participated in an intensive two-day mediation session in London, under the auspices of Judge Phillips, but were again unable to reach a resolution at that time.  *See* Jensen Decl., ¶5.

On May 17, 2016, the Parties participated in a mediation session in New York City with Judge Phillips, which led to months of negotiations between Plaintiffs and Defendant Syndicate 2001 ("Syndicate 2001") and culminated in a conditional Term Sheet in 2017 (the "2017 Conditional Term Sheet").  *See* Jensen Decl., ¶6; Declaration of Robert S. Schachter ("Schachter Decl."), ¶3.  This "ice-breaker" settlement with Syndicate 2001 – reached before this Court's ruling on the motions to dismiss and

nearly a decade after this case was filed – ultimately worked, bringing in a dozen additional Syndicate-Defendants into this Partial Settlement.

After denying the motions to dismiss, the Court directed all Parties, except Syndicate 2001, to participate in further mediation efforts overseen by Judge Phillips. On April 23-24, 2018, the Parties participated in a two-day mediation overseen by Judge Phillips in New York City. *See* Jensen Decl., ¶7.

As a result of their arm's length negotiations at the April 2018 mediation, Plaintiffs and Defendant Syndicates 0102, 0382, 0435 and 1886 entered into a Term Sheet on April 24, 2018 (the "April 24 Term Sheet"). *See* Jensen Decl., ¶8; Schachter Decl., ¶4. Certain Parties continued negotiations thereafter via telephone and with Judge Phillips' assistance. *See* Jensen Decl., ¶9. As a result of the continued negotiations, Plaintiffs and Defendant Syndicates 0623, 2623, 2987, 0033 and 1183 entered into a Term Sheet on May 14, 2018 (the "May 14 Term Sheet"). *Id.*

On October 15, 2018, Plaintiffs and Defendant Syndicates 0570 and 0609 reached an agreement to settle this Action. *See id.*, ¶10; Schachter Decl., ¶5. And finally, on February 26, 2019, Plaintiffs and Defendant Syndicate 0958 reached an agreement to settle this Action. *See* Jensen Decl., ¶11; Schachter Decl., ¶6.

On April 19, 2019, Plaintiffs and the Settling Defendants entered into an Agreement to resolve all of the claims of Plaintiffs and the proposed Settlement Class with respect to the Settling Defendants. *See* Jensen Decl., Ex. A. Over a dozen drafts

of the Agreement and its nine (9) exhibits were exchanged before the Settling Parties were able to reach a final agreement regarding the terms of the proposed Partial Settlement now before the Court.  *See* Jensen Decl., ¶12.

## III.   OVERVIEW OF THE PARTIAL SETTLEMENT BENEFITS

The proposed Partial Settlement provides for significant monetary relief and five years of business reforms to the Settlement Class.  First, the Settlement Amount of $21,950,000, together with interest earned thereon after the fund is deposited in an escrow account, less court-approved attorneys' fees and litigation expenses, Service Awards (if any), settlement administration expenses, Taxes and Tax Expenses (the "Net Settlement Amount"), will be distributed to those Settlement Class Members who submit timely and valid Claim Forms to the Claims Administrator.

In addition, the Settling Defendants agreed to implement business reforms in the Lloyd's Market for five years.  Specifically, each Settling Defendant[7] agrees to:

(1)   comply with any applicable requirements of the Corporation of Lloyd's or any U.K. regulatory authority on competition law, compensation to producers, and anti-bribery and corruption compliance, including treating customers fairly and paying due regard to their interests and managing conflicts of interest fairly;

(2)   adhere to the requirements of the U.K. Bribery Act applicable to it;

(3)   adhere to the applicable regulations regarding whistleblowing as set by the appropriate U.K. regulatory authority, including maintenance of internal procedures for handling reports made by whistleblowers, education of U.K.-based employees, and appointment of a senior-level

---

[7]   Syndicate 0102 no longer sells insurance in the London Market and thus will not be implementing these reforms.

employee or director to oversee the integrity, independence and effectiveness of each of the Settling Defendant's policies and procedures on whistleblowing, as may be required by these regulations; and

(4)      comply with all regulatory and legal requirements relating to the information it is permitted to share with any other syndicate regarding the placement of insurance in the Lloyd's market by U.S. policyholders.

These are significant and meaningful benefits for the Settlement Class.

## IV.   FRAMEWORK FOR CLASS ACTION SETTLEMENTS

Rule 23(e) requires court approval for any compromise of claims brought on a class basis. It is well established in this Circuit that the settlement of class action litigation is both favored and encouraged. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) ("Settlement Agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). A class settlement is to be approved if, "taken as a whole," it is fair, reasonable, and adequate to the class. *See Hart v. Colvin*, No. 15-cv-00623, 2016 U.S. Dist. LEXIS 155799, at *15 (N.D. Cal. Nov. 9, 2016) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "Courts do not have the ability to 'delete, modify, or substitute certain provisions'; the settlement 'must stand or fall in its entirety.'" *Id.* (citing *Hanlon*, 150 F.3d at 1026).

The Third Circuit has held that an initial "presumption of fairness" if this Court finds that: "(1) the negotiations occurred at arm's length; (2) there was sufficient

discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).

The *Manual for Complex Litigation* describes a three-step process for approving a class action settlement: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to class members; and (3) a final approval hearing. *See Manual for Complex Litigation* §21.63 (4th ed. 2004). At this stage, the Court need not make a final determination whether it will ultimately approve the Partial Settlement but only if it is likely to do so. *See* Rule 23(e)(2). This proposed Partial Settlement easily clears that low hurdle. Plaintiffs request that the Court take the first and second steps in the settlement approval process by entering the PAO and ordering the dissemination of notice to the Settlement Class.

## V.   THE PARTIAL SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Amended Rule 23(e) provides that the Court's task at preliminary approval is to determine whether class notice is warranted as it will likely be able to grant final approval and certify the settlement class. *See* Rule 23(e)(1); *cf. Jones v. Commerce Bancorp, Inc.*, No. 05-cv-5600, 2007 WL 2085357, at \*2 (D.N.J. July 16, 2007) ("Courts make a preliminary evaluation of the fairness of the settlement, prior to directing that notice be given to members of the settlement class."). These factors apply:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

>    (i)   the cost, risks and delay of trial and appeal;
>
>    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
>    (iii)   the terms of any proposed award of attorney's fees including timing of payment; and
>
>    (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Rule 23(e)(2). These factors also overlap with those set forth by the Third Circuit in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) (granting final approval after review of *Girsh* factors). These factors all favor preliminary approval here.

## A.   The Partial Settlement Is the Result of Arm's-Length Negotiations by Well-Informed and Experienced Counsel

The first two factors that this Court considers are the adequacy of representation for the settlement class and the arm's length nature of the settlement negotiations. *See* Rule 23(e)(2)(A)-(B); *Parker v. City of New York*, No. 15-cv-6733, 2017 WL 6375736, at *5 (E.D.N.Y. Dec. 11, 2017) (the court "determine[s] if the settlement was achieved through arms-length negotiations by counsel with the experience and

ability to effectively represent the class's interests").  A proposed settlement resulting from arm's-length negotiations between experienced, capable counsel at an advanced stage of the case is entitled to a presumption of fairness.  *In re Aggrenox Antitrust Litig.*, No. 3:14-md-02516, 2017 WL 4278788, at *3 (D. Conn. Sept. 19, 2017).[8]

Here, the Partial Settlement is the result of extensive arm's-length negotiations by well-informed and experienced counsel.  The negotiations – collectively spanning the course of years – involved many in-person meetings, several all-day or multi-day mediation sessions with the assistance of the Court-appointed mediator Judge Phillips, and dozens of follow-up calls and email communications.  *See* Jensen Decl., ¶¶3-12; Schachter Decl., ¶¶2-6.

Throughout the negotiations, Plaintiffs and their counsel were mindful of the strengths and weaknesses of the claims and defenses in light of a decade of investigation, extensive proceedings, discovery conducted to date, expert analysis, and the Court's rulings and guidance.  *See* Jensen Decl., ¶¶13-14; *In re Philips/Magnavox Television Litig.*, No. 09-cv-3072, 2012 WL 1677244, at *11 (D.N.J. May 14, 2012) ("Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent.").

---

[8]     *See also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) ("Where a settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the negotiation enjoys a presumption of fairness.").

Moreover, the attorneys representing Plaintiffs are highly experienced in prosecuting complex class actions, including claims concerning anti-competitive conduct, fraudulent scheme, RICO,[9] and the insurance industry.[10] Jensen Decl., ¶14, & Ex. B; Schachter Decl., ¶10, & Ex. A.

Bringing this experience and knowledge to bear, counsel believe that the Partial Settlement is in the best interests of the Settlement Class. Jensen Decl., ¶¶13-14; Schachter Decl., ¶7. Counsel's judgment is entitled to considerable weight. *See Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *Currency Conversion*, 263 F.R.D. at 122 (citing the "extensive" class action experience of counsel). These views are even weightier where, as here, many of the attorneys have been involved in the investigation and discovery since the start. *See, e.g.*, *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 662 (S.D.N.Y. 2015) (settlement procedurally fair where, due to experienced counsel and extensive discovery, "counsel on both sides were well-situated to thoughtfully assess the potential outcomes of the case and the likelihoods of each occurring"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts give "great

---

[9]    The experience and qualifications of proposed Class Counsel are described in the Jensen Decl., Exhibit B and in the Schachter Decl., Exhibit A.

[10]    Class Counsel and certain other Plaintiffs' Counsel played significant roles on behalf of the plaintiffs in *Insurance Brokerage*, MDL 1663; Schachter Decl., ¶10.

weight . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").

Judge Phillips' participation further ensures that negotiations were non-collusive and conducted at arm's length. *See* Jensen Decl., ¶¶3-12; Schachter Decl., ¶¶3-6; *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-0905, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *see also Sanders v. CJS Solutions Grp., LLC*, No. 17 Civ. 3809, 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018) ("[T]he settlement was negotiated for at arm's length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement.").

### B.    The Benefits Under the Partial Settlement Are Adequate

Amended Rule 23(e)(2), like *Girsh*, considers the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal would impose. These factors weigh in favor of approval.

Even without considering these factors, a Partial Settlement providing nearly $22 million in monetary relief and business reforms, with an opportunity for further relief from the Remaining Defendants, is an exceptional outcome, particularly when delay is taken into account. This case was filed over a decade ago, stayed for five years, and could take years more to complete fact discovery, obtain class certification

- 15 -

for litigation purposes, defeat summary judgment, conduct expert discovery, and prevail at trial and the appeals that will inevitably follow. *See Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 103 ("By reaching a favorable Settlement with most of the remaining Defendants prior to the disposition of Defendants' renewed dismissal motions or even an eventual trial, Class Counsel have avoided significant expense and delay, and have also provided an immediate benefit to the Settlement Class.").

Further, the relief is fair, reasonable, and adequate considering the risks of litigation. *See Singleton v. First Student Management LLC*, No. 13-1744, 2014 WL 3865853, at *6 (D.N.J. Aug. 6, 2014); *Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 105 (approving settlement "reached after arm's-length negotiations between experienced counsel after completion of a significant amount of discovery and motion practice," in light of "the substantial risks Plaintiffs face and the immediate benefits provided by the Settlement"). Plaintiffs believe their case is strong but acknowledge, as always, there are risks to recovery. *Cf. NASDAQ*, 187 F.R.D. at 475-76 ("[T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."). Given the ongoing litigation against the Remaining Defendants, Plaintiffs will not detail the specific risks but are willing to provide them *in camera* if this Court wishes.

At bottom, a settlement is a compromise. "[T]he dollar amount of the settlement by itself is not decisive in the fairness determination, and the fact that the settlement fund may equal only a fraction of the potential recovery at trial does not render the settlement inadequate." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 131 (S.D.N.Y. 1997); *In re NFL Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 715-16 (E.D. Pa. 2014); *Girsh*, 521 F.2d at 156-57.

Here, Defendants have argued throughout this case that damages are zero or a *de minimus* amount because the payments were not hidden or passed on to insureds. *See, e.g.*, MDL Dkt. 2763-1 at 42. While Plaintiffs vigorously disagree and continue to fight for data necessary to quantify damages with precision,[11] Plaintiffs estimate that the Partial Settlement provides 22% of reasonably recoverable damages (minus the ice-breaker settlement with Amlin (Syndicate 2001)) based on data produced in discovery and consultation with industry and economic experts, not even quantifying the value of five years of business reforms. This recovery falls well within the approvable range of settlements, particularly where the case has been hard fought at every turn for years. *See Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 451 (E.D. Pa. 1985) (2.4% of sales within the reasonable range of recoveries); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 324-25 (N.D. Ga. 1993) (12.7% - 15.3% of total damages was "well above the lowest point in the zone of

---

[11]    *See, e.g.*, MDL Dkts. 2495, 2530; No. 2:08-cv-00235-CCC-JAD, ECFs 55, 57, 58, 60, 61, 64, 67-69, 72, 74.

- 17 -

reasonableness"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fl. 1988) (approving settlement of 5.7% of damages). Even including Amlin (Syndicate 2001) – whose settlement served as an icebreaker and spurred additional Defendants to come into the fold – the percentage of recovery, in Plaintiffs' view, is nearly 17%, further demonstrating the Partial Settlement falls squarely into the range of reasonableness. The Court should find that the relief provided under the Partial Settlement is adequate, given the risks, posture of the case, and the damages alleged.

### C.   The Other Amended Rule 23(e)(2) Factors Are Met

#### 1.   The Proposed Method for Distributing Relief Is Effective

The 2018 amendments to Rule 23(e)(2) enumerate three additional factors that a court considers in approving a settlement: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees; and (iii) the existence of any so-called "side agreements." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) (am. 2018). These factors will also be readily met.

As set forth in the concurrently filed affidavit of the proposed Claims Administrator, the Notice Program includes mailing the Summary Notice to all potential Settlement Class Members who can be reasonably identified by the Settling Defendants and for whom the Claims Administrator is able to determine valid mailing addresses. *See* Affidavit of Linda V. Young (the "Young Affidavit"), ¶¶4-7. The Claims Administrator will also access the databases utilized in the settlement

administrations in *In re: Insurance Brokerage Antitrust Litigation,* Civil Action No. 05-1079 ("*Brokers*") to identify any instances where a claim in *Brokers* included information relating to the purchase of a Lloyd's policy and those persons or entities will receive a Summary Notice by mail. *See id.*, ¶¶4-5. These mailings will be followed up by publication of the Summary Notice nine times in six different publications and a Digital Notice Program utilizing the Google Display Network and LinkedIn, which is estimated to reach 71% of the Settlement Class. *See id.*, ¶¶10-22. In addition, a website dedicated to the Settlement will include all of the important Settlement documents, including the Notices. *See id.*, ¶24. Class Counsel will also post the Notices on their firm websites. Settlement Agreement, §VIII.6.(b).

## 2.  Attorneys' Fees and Expenses and Service Awards

The Agreement provides that Plaintiffs will apply to this Court for an award of attorneys' fees and expenses 35 days prior to the Fairness Hearing. *See* Agreement, §XVI.1. As set forth in the proposed Long-form Notice, Plaintiffs will request attorneys' fees not to exceed one-third of the Settlement Amount and litigation expenses not to exceed $1,850,000. This fee request is in line with settlements approved by this Court in MDL 1663 and recent cases in this District. *See, e.g.*, *In re Brokerage Antitrust Litig.*, No. 04-5184 (CCC-JAD), Dkt. 2558 (D.N.J. Aug. 1, 2013) (slip op.) (awarding 33.3% of $10.5 million partial settlement fund in attorneys' fees and $1,023,188.76 in expenses); *In re: Liquid Aluminum Sulfate Antitrust Litig.*, No.

- 19 -

16-md-2687 (JLL) (JAD), Dkt. 1171 (D.N.J. Dec. 3, 2018) (slip op.) (awarding 33.3% of $10,796,800 settlement fund).  This is particularly true where, as here, the Settlement also secures five years of business reforms, the significant value for which Class Counsel is not seeking additional fees.  Class Counsel's maximum expense figure is based on the substantial expense that Plaintiffs have incurred to date in a decade of litigation against 23 separate foreign insurer defendants.  This undertaking has necessitated the outlay of hundreds of thousands of dollars for the common benefit of Settlement Members in the pursuit of document and deposition discovery from nearly two dozen foreign defendants and numerous third parties located in the United Kingdom, four separate mediations with Judge Phillips on two continents, and substantial expert analysis.  *See* Jensen Decl., ¶15; *see also id.*, ¶17.

Further, as explained in the Long-form Notice, the two named Plaintiffs in this Action will each seek a Service Award of $15,000 for their many years of time and effort in this Action.  The named Plaintiffs have monitored this case for over a decade to date; provided documents and information requested by Defendants; reviewed with their counsel important pleadings; sat for full-day depositions; and traveled to, and participated in, several multi-day mediation sessions in New York City and London, United Kingdom.  *See* Jensen Decl., ¶16.  Such service awards are typical of complex class actions, especially those where plaintiffs served for a number of years.  *See, e.g.*,

*Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 119, 125; *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at *18-*19 (E.D. Pa. June 2, 2004).

### 3. The Settling Parties Have No Side Agreements Besides Opt Outs

Further, the Settling Parties' Agreement and the exhibits thereto constitute the entirety of their agreement, except for the customary "blow provision" that specifies the threshold number of individual opt outs to trigger the Settling Defendants' termination rights under the Agreement. *See* Agreement, §XIX.3. This is another factor that weighs in favor of preliminary approval.

### 4. Class Members Are Treated Equitably

Finally, as explained above, Settlement Class Members are treated equitably under the terms of the Settlement Agreement. Under the Agreement, each Settlement Class Member is being treated equitably – a *pro rata* share of the monetary relief based on the premium they paid for insurance, and the business reforms agreed to by the Settling Defendants. Importantly, the Agreement does not release any claims against any Remaining (non-settling) Defendant nor does it release any claim arising after the Class Period. For all these reasons, preliminary approval is warranted here.

## VI. THE COURT SHOULD CERTIFY A SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

The Settling Parties agree that the Court should certify the Settlement Class for the purpose of settlement pursuant to Rules 23(a) and (b)(3). The propriety of certifying a class for purposes of settlement is well established in this Circuit. *See,*

*e.g.*, *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 583 (3d Cir. 2014) (**"[P]reliminary** analysis of a proposed class is . . . a tool for settlement used by the parties to fairly and efficiently resolve litigation.") (emphasis in original); *In re Pet Food Prods. Liab. Litig.*, No. 07-cv-2867, 2008 WL 4937632, at *3 (D.N.J. Nov. 18, 2008) ("Class actions certified for the purposes of settlement are well recognized under Rule 23."). Certification of a settlement class is "the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 186 (S.D.N.Y. 2012). Importantly, manageability is not an issue in deciding whether to certify a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

### A.   The Settlement Class Satisfies Rule 23(a)

Rule 23(a) permits certification if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a); *see also In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2284, 2013 WL 504857, at *3 (E.D. Pa. Feb. 12, 2013).  The Settlement Class meets each requirement.

- 22 -

1505647_6

### 1.    The Settlement Class Is Sufficiently Numerous

The Settling Defendants have identified thousands of Settlement Class Members nationwide. *See* Young Affidavit, ¶¶4-6. Numerosity is met. *See Stewart v. Abraham*, 275 F.3d 220, 227-28 (3d Cir. 2001) (40 class members is sufficient).

### 2.    Common Questions of Law and Fact Bind the Settlement Class

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Importantly, "Rule 23(a)(2)'s commonality requirement does not require identical claims or facts among class member[s]." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Stewart*, 275 F.3d at 227; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (answers to common question must help "drive the resolution" of the litigation). Courts in this Circuit have found commonality easily met in similar class actions. *See, e.g.*, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308 (3d Cir. 1998) (predominance readily met in RICO action alleging common scheme).

The same is true here. Plaintiffs' allegations focus on the alleged misconduct of Defendants – an issue that does not vary for any Settlement Class Member. All Settlement Class Members share the following legal and/or factual questions:

- whether Defendants made false or misleading statements or omissions;

1505647_6

- whether Defendants' scheme was furthered by mailings or wires;

- the effect of Defendants' conduct on the price of insurance sold to insureds in the United States during the Class Period;

- whether their conduct violated RICO and/or civil conspiracy laws and/or unjustly enriched them; and

- the nature and extent of monetary damages to which Plaintiffs and Settlement Class are entitled.

Because there are several common legal and factual questions related to liability, the commonality requirement of Rule 23(a)(2) is easily met.

### 3.    Plaintiffs' Claims Are Typical

Rule 23(a)(3) requires that the class representatives' claims be "typical of the claims . . . of the class."  As the Third Circuit explained:

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.

*Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994); *see also Marcus*, 687 F.3d at 598 ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class.").  Moreover, the "typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."  *See Prudential*, 148 F.3d at 311.

1505647_6

Here, the claims of Plaintiffs are typical compared to those of other members of the Settlement Class. Plaintiffs allege that Defendants engaged in a scheme to conceal the lack of competition in the Lloyd's Market. The claims of Plaintiffs, like those of other Settlement Class Members, arise out of the same alleged conduct by Defendants and are based on the same legal theories. This satisfies Rule 23(a)(3).

### 4. Plaintiffs and Class Counsel Are Adequate

Rule 23(a) requires that the representative parties fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). This requirement guarantees "that the representatives and their attorneys will competently, responsibly and vigorously prosecute the suit, and that the relationship of the representative parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977).

As explained above, for the past decade, Plaintiffs and Class Counsel have, and continue to, adequately represent the interests of the Settlement Class, and no conflict exists between Plaintiffs and other Settlement Class Members. *See* Jensen Decl., ¶¶16-17; Schachter Decl., ¶10. Likewise, as aforementioned, Class Counsel are highly experienced in civil RICO claims and complex class action litigation, and have diligently prosecuted the claims on behalf of the Settlement Class. *See* Jensen Decl., ¶14; Schachter Decl., ¶10. Adequacy is, therefore, satisfied.

**B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class meets this standard.

**1.    Common Legal and Factual Questions Predominate**

To satisfy Rule 23(b)(3)'s requirement that common questions of law and fact predominate, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (quoting William Rubenstein, Alba Conte & Herbert Newberg, *Newberg on Class Actions* §4:25 (4th ed. 2010)). The touchstone of predominance is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594. This rule, however, "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013). Rather, predominance is determined by whether "the efficiencies gained by class resolution of common issues are outweighed by individual issues." *Varacallo*, 226 F.R.D. at 231; *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D.N.J.

- 26 -

2003) (predominance requires that "common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members").  "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298.  The mere existence or possibility of some individual issues does not defeat certification. *See Mercedes-Benz*, 213 F.R.D. at 186.

The Supreme Court has recognized that the Rule 23(b)(3) predominance test can be "readily met" in similar cases. *Amchem*, 521 U.S. at 624-25; *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) (predominance is readily met because "proof of the conspiracy is a common question that is thought to predominate"); *Prudential*, 148 F.3d at 308 (RICO class action).  In addition, the predominance standard is met by a showing that the existence of individual injury resulting from the alleged violation is capable of proof at trial through evidence that is common to the class.  *See Comcast Corp. v. Behrend*, 569 U.S. 27, 30 (2013).

Here, Plaintiffs and the Settlement Class allegedly paid supra-competitive prices for insurance.  Plaintiffs and the Settlement Class have the same interest in establishing liability, and they all seek damages for the ensuing overcharges.  They all will rely on the same evidence of Defendants' violations of law and will rely on class-

- 27 -

wide damages models offered by their experts to show the fact and amount of harm that they incurred.  Accordingly, the predominance requirement is easily satisfied.

### 2.    A Class Action Is Superior to Other Methods of Adjudication

In addition to predominance, Rule 23(b)(3) requires a showing that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  To this end, the Court must balance, in terms of fairness and efficiency, the advantages of class action treatment against alternative available methods of adjudication.  *Prudential*, 148 F.3d at 316.  Further, in evaluating the superiority of a class action, the Court should inquire as to the class members' interest in individually controlling the prosecution of separate actions, the extent and nature of any litigation concerning the controversy already commenced by members of the class, and the desirability or undesirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Here, a class action is superior to other available methods of adjudication "because litigating all of these claims in one action is . . . far more desirable than numerous separate actions litigating the same issues."  *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 259 (3d Cir. 2009).  By proceeding as a class action, resolution of common issues will lead to an efficient use of judicial resources and a result that is binding on all members.  In addition, the Settlement Class, like the Plaintiffs, are geographically dispersed, which poses the risk of multiple scattered lawsuits with

- 28 -

contradictory results. These issues led the Supreme Court to acknowledge these factors as leading to a finding that a class action is superior to other forms of adjudication. *Amchem*, 521 U.S. at 617. This, of course, applies with even greater force where the classwide resolution is accomplished by a settlement.

### 3.   The Court Should Appoint Plaintiffs as Class Representatives and Appoint Class Counsel

Plaintiffs also request that the Court appoint them to serve as representatives for the Settlement Class and to appoint Robbins Geller Rudman & Dowd LLP and Zwerling, Schachter & Zwerling, LLP to serve as Class Counsel for the Settlement Class pursuant to Rule 23(g).

As discussed before, Plaintiffs have adequately represented the interests of the absent members of the Settlement Class. Likewise, Class Counsel: (i) have already done substantial work in investigating and prosecuting the claims in this Action; (ii) are experienced in handling complex litigation and claims (especially of the type asserted here); and (iii) have extensive knowledge of the applicable laws. In addition, counsel have devoted considerable time and resources to this Action. *See* Jensen Decl., ¶¶14-15, 17 & Ex. B; Schachter Decl., ¶9 & Ex. A. These facts support appointing Robbins Geller and Zwerling Schachter as Class Counsel.

## VII.  THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

The second step of the approval process is to give notice to the Settlement Class.  *See Manual for Complex Litigation*, *supra*, at §21.63.  Rule 23(c)(2) requires the best practicable, which means it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  "'[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process.'"  *Capps v. Law Offices of Peter W. Singer*, No. 15-cv-02410, 2016 U.S. Dist. LEXIS 161137, at *26 (S.D. Cal. Nov. 21, 2016) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975)).

Here, the Settling Defendants will provide the Claims Administrator with the most current list of names of Settlement Class Members to the extent reasonably available from electronic searches on their current underwriting databases.  *See* Young Affidavit, ¶4.  In addition, the Settling Defendants will request the assistance of coverholders active in the past five years to request that they also provide the names of policyholders as they maintain these names.

These identified policyholders, along with all other insureds of Defendant Lloyd's Syndicates identified in the *Brokers* settlement databases, will be forwarded to a third party vendor to compile a list of valid addresses to which the Summary

Notice will be mailed.  *See* Young Affidavit, ¶¶4-5.  The Summary Notice will direct Settlement Class Members to the Settlement Website, where they can find Settlement-related documents, including the Agreement, Long-form Notice, Claim Form, the Plan of Allocation, this Court's PAO, and other documents.  The Claims Administrator will also publish the Summary Notice nine times in six different publications (*The Wall Street Journal*, *The New York Times*, *USA Today*, *Business Insurance*, *Risk Management* and *Risk & Insurance*) and will utilize digital notice via the Google Display Network and LinkedIn.  *Id.*, ¶¶12-22.  Class Counsel will also post the Long-form Notice and Claim Form on their websites.

Further, the proposed Notices are plain and easily understood.  The Notices provide neutral, objective, and accurate information about the nature of the Action and the Partial Settlement.  The Notices describe the claims, the Settlement Class, the relief provided under the Partial Settlement, and Settlement Class Member's rights and options, including the deadlines and means of submitting a request for exclusion, submitting a Claim Form, objecting, and/or appearing at the Fairness Hearing personally or through counsel.

The Notice Program provides the best notice practicable under the circumstances.  *See* Young Affidavit, ¶29.  Accordingly, Plaintiffs respectfully request that the Court approve the proposed Notice Program and direct that notice be disseminated to the Settlement Class.

## VIII.  PROPOSED SCHEDULE OF EVENTS

The last step in the settlement approval process is to hold a Fairness Hearing at which the Court will hear argument and make a final decision about whether to approve the Partial Settlement pursuant to Rule 23(e)(2).  *See Manual for Complex Litigation*, *supra*, at §21.63.

Plaintiffs have submitted an agreed-upon PAO concurrently with this motion, setting forth the proposed schedule of events from here through final approval. Plaintiffs believe that the Court may enter the PAO without the need for a hearing, unless the Court has questions, given that the Court will hold a Fairness Hearing once Settlement Class Members weigh in.

Specifically, Plaintiffs propose the following schedule:

| | |
|---|---|
| Deadline for Settling Defendants to submit names of Settlement Class members to Claims Administrator | 30 days after the Execution Date |
| Deadline for Settling Defendants to wire transfer Notice Credits to the Claims Administrator | 10 days after entry of the PAO |
| Deadline for commencing the mailing of the Summary Notice | 44 days after entry of the PAO |
| Deadline for commencing publication of the Summary Notice and commencing Digital Notice | 55 days after entry of POA |
| Deadline for filing a final approval motion and application for attorneys' fees and expenses and Plaintiffs' Service Awards | 35 days prior to the Fairness Hearing |
| Deadline for requesting exclusion or objecting to the Partial Settlement | 21 days prior to the Fairness Hearing |
| Deadline for filing a reply in support of final approval, attorneys' fees and expenses, and Plaintiffs' Service Awards; deadline for Claims Administrator declaration | 7 days prior to the Fairness Hearing` |

| Fairness Hearing | Approximately 125 calendar days after entry of the PAO, at the Court's convenience |
|---|---|
| Deadline for filing Claim Forms | 175 days after entry of POA |

This proposed schedule complies with Rule 23, while securing the recoveries for Settlement Class Members in a timely fashion.

## IX.   CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for preliminary approval and enter the Settling Parties' proposed PAO, which is Exhibit G to the Agreement.

DATED:  April 19, 2019                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN
ALEXANDRA S. BERNAY
CARMEN A. MEDICI


                    s/Rachel L. Jensen
                    RACHEL L. JENSEN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

- 33 -

ZWERLING, SCHACHTER
  & ZWERLING, LLP
ROBERT S. SCHACHTER
DAN DRACHLER
ANA M. CABASSA
41 Madison Avenue
New York, NY  10010
Telephone:  212/223-3900
212/371-5969 (fax)

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
H. SULLIVAN BUNCH
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602/274-1199 (fax)

FOOTE, MIELKE, CHAVEZ
  & O'NEIL, LLC
ROBERT M. FOOTE
KATHLEEN C. CHAVEZ
10 West State Street, Suite 200
Geneva, IL  60134
Telephone:  630/232-7450
630/232-7452 (fax)

CAFFERTY CLOBES MERIWETHER
  & SPRENGEL LLP
ELLEN MERIWETHER
1101 Market Street, Suite 2650
Philadelphia, PA  19107
Telephone:  (215) 864-2800
215/864-2810 (fax)

- 34 -

DAVID M. FOSTER, P.C.
DAVID M. FOSTER
30833 Northwestern Hwy., Suite 209
Farmington, MI  48334
Telephone:  248/855-0940
248/855-0987 (fax)

Attorneys for Plaintiffs