**ROBINS KAPLAN** LLP

800 BOYLSTON STREET
SUITE 2500
BOSTON MA  02199

617 267 2300 TEL
617 267 8288 FAX
ROBINSKAPLAN.COM

MATTHEW M. BURKE
617 859 2711 TEL
MBURKE@ROBINSKAPLAN.COM

May 20, 2019

**BY ECF**

The Hon. Magistrate Judge Joseph A. Dickson
United States District Court for the District of New Jersey
Martin Luther King, Jr. Building & U.S. Courthouse
50 Walnut Street, Room MLK 2D
Newark, NJ  07101

    Re:   Lincoln Adventures, LLC v. Those Certain Underwriters at Lloyd's London,
            <u>No. 2:08-cv-00235-CCC-JAD</u>

Dear Judge Dickson:

Defendant Syndicates 510, 727, 1003, 1084, 1096, 1245, 2003, 2020, 2488, and 2791 (the "Syndicates") submit this opposition to plaintiffs' motion dated May 10, 2019 to extend the period for responsive discovery by 12 years ("Pls. Mtn.") (ECF 97[1]).

"IT IS FURTHER ORDERED that the period for which responsive discovery shall be provided is January 1, 1997 through December 31, 2007."  MDL ECF 2201 (September 23, 2012) (the "September 2012 Order").  By this Order, the Court set December 31, 2007 as the end date for the period during which the parties were to provide responsive discovery.  The Syndicates relied on this end date to collect and review millions of pages of documents responsive to plaintiffs' document requests, to produce hundreds of thousands of lines of data regarding policies sold to U.S. insureds, and to prepare and present 45 witnesses for deposition.  For *seven years*, plaintiffs were silent as to this end date for responsive discovery.  Now, after all

---

[1] References to ECF are to docket entries in this action; references to MDL ECF are to docket entries in *In re Ins. Brokerage Antitrust Litig.*, No. 2:04-cv-5184-CCC-JAD.

of the time and expense incurred by the Syndicates to respond to plaintiffs' discovery, plaintiffs ask the Court to amend the September 2012 Order and ***add 12 years to the discovery period***. In their motion, plaintiffs offer no good cause for extending the discovery period and provide no explanation for their lack of diligence in waiting seven years to raise this issue with the Court.

**I.      In 2012, the Court Ordered that the Discovery Period Encompass Some, But Not All, of the Alleged Class Period**

Discovery in this action began in earnest in 2012 when the Court lifted the stay on tag along cases in the MDL. At that time, the operative complaint alleged a class period from January 1, 1997 to the date of any class certification. ECF 1 at ¶ 162. Thus, when discovery began in 2012, plaintiffs were alleged a class period through at least 2012.

At the outset of discovery, the Court addressed various discovery- and scheduling-related issues in the September 2012 Order. The Court denied the Syndicates' request to limit discovery to the named plaintiffs, set deadlines for discovery responses and submission of motions on discovery disputes, and established the period for which responsive discovery shall be provided as January 1, 1997 through December 31, 2007. September 2012 Order at 1-2.

Plaintiffs' statement that "there were no orders from the Court regarding the appropriate end date for the discovery period" (Pls. Mtn. at 5) is simply false, as evidenced by the express terms of the September 2012 Order. It set both a start date and an end date for the time period for responsive discovery. Whether the end date of the discovery period was contested is irrelevant. The Court ordered that the end date for discovery be December 31, 2007, and the parties have relied on, and been bound by, this September 2012 Order for the last seven years.

Seeking discovery to prove their allegations, including a class period through at least 2012, plaintiffs served document and data requests in 2012. The discovery served by plaintiffs

sought responsive information for the period through December 31, 2007. *See* Plaintiffs' First Request for Production of Documents at 10 (ECF 97-2). Thus, plaintiffs served document and data requests that sought discovery for only a portion of their alleged class period, leaving a five-year gap between the end of the discovery period and the end of their alleged class period. Likewise, the Court entered the September 2012 Order that plaintiffs now seek to amend with at least a five-year gap between the end of the discovery period and the end of the class period.

II. **Plaintiffs Have Failed to Show the Requisite Good Cause to Amend the Court's Order on the End Date for Responsive Discovery**

Plaintiffs now move to amend the Court's September 2012 Order, seven years after it was entered. To succeed on this motion, plaintiffs must prove good cause. *See Marlowe Patent Holdings LLC v. Dice Electrics LLC Holdings LLC v. Dice Electrics LLC*, 293 F.R.D. 688, 697-702 (D.N.J. 2013) (good cause required to modify scheduling order); *see also*, *J.G. v. C.M.*, No. 11-2887 (WJM), 2014 U.S. Dist. LEXIS 56143, at *5 (D.N.J. Apr. 23, 2014) (in considering party's motion to amend court's discovery order, court held that "[t]he 'good cause' standard is not a low threshold"). Good cause requires diligence on the part of the moving party. *Marlowe Patent Holdings LLC*, 293 F.R.D. at 700-701. Where a party fails to act diligently, no good cause exists and the motion should be denied. *Druding v. Care Alts.*, No. 08-2126(JBS/AMD), 2017 U.S. Dist. LEXIS 219777 (D.N.J. July 21, 2017) (rejecting party's attempt to expand the scope of discovery); *J.G.*, No. 11-2887 (WJM), 2014 U.S. Dist. LEXIS 56143, at *6; *Marlowe Patent Holdings LLC*, 293 F.R.D. at 700-701. Here, plaintiffs have failed to prove good cause.

First, plaintiffs' actions here have been dilatory, not diligent. The Syndicates produced documents in response to plaintiffs' requests by the end of 2012. After reviewing those documents, plaintiffs filed several lengthy and detailed motions to compel addressing multiple

issues, reflecting a detailed review by plaintiffs of the Syndicates' document productions. These motions addressed the data production by the Syndicates (MDL ECF 2579), the production of binding authority and lineslip agreements and documents related to those agreements (MDL ECF 2495), the scope of the Syndicates' search for responsive documents, including search terms used and custodians searched (MDL ECF 2513), and the Syndicates' privilege logs (MDL ECF 2513). None of these motions sought to extend the end date for responsive discovery. Nothing prevented plaintiffs from raising the end date for discovery in the first half of 2013 when these motions were filed, or earlier. Instead, plaintiffs proceeded with depositions, taking testimony from 45 witnesses who were prepared to testify to relevant events during the time period set by the Court for discovery, *i.e.*, through December 31, 2007.

Moreover, contrary to plaintiffs' current arguments (Pls. Mtn. at 3, 6), nothing prevented plaintiffs from serving supplemental document requests following their review of the Syndicates' document production. As evidenced by the multiple motions to compel, plaintiffs had sufficient information to serve additional requests for discovery and seek timely relief with respect to the discovery end date in the Court's September 2012 Order.

Second, plaintiffs' argument that the 2007 end date for discovery was "a preliminary assessment … about the likely end of the Class Period" (Pls. Mtn. at 4) is indefensible on its face. When plaintiffs served their discovery in June 2012, they knew that their alleged class period ran through at least 2012, and thus knew there was a gap of at least five years between the discovery end date and the class period end date. Plaintiffs provide no record support for their contention that the discovery period or the class period allegations were preliminary.

Plaintiffs claim, without any citation to the record or other proof, that it was only after they reviewed documents produced in 2012 and depositions taken in 2013 that "the continuation

of the course of conduct continuing past 2007 became apparent." Pls. Mtn. at 8.  To the contrary, plaintiffs filed a Revised First Amended Class Action Complaint in November 2012 (MDL ECF 2312).  In this complaint, plaintiffs alleged that, *as of 2012*, the alleged RICO conduct was continuing. Revised First Amended Class Action Complaint at ¶ 312 ("Defendants' scheme … creates an ongoing problem that will continue"); ¶ 310 ("Defendants' conduct has been continuing in nature"); ¶ 275 ("each Enterprise is continuing"); ¶ 282 ("the Lloyd's Enterprise functions as a continuing unit with the purpose of assisting with, perfecting and furthering their wrongful scheme to sell insurance to the consuming public").  Either plaintiffs had a good faith basis to believe in 2012 that the alleged course of conduct was continuing, and thus should have sought any additional post-2007 discovery then, or they filed a pleading in violation of Rule 11 of the Federal Rules of Civil Procedure.

Third, nothing in the litigation has changed to justify plaintiffs' request to begin discovery anew for the 12-year period from 2008 to 2019.  Plaintiffs argue that "the SAC [Second Amended Complaint] alleges a Class Period that extends far past 2007," Pls. Mtn. at 2, but there is nothing new in this allegation.  The operative complaint in 2012 alleged a class period to "the date of class certification," exactly as the SAC now alleges.  ECF 1 at ¶ 162.  Thus, when plaintiffs served discovery and the Court set 2007 as the end of the responsive discovery period, the class period already extended "far past 2007."  Likewise, plaintiffs unsuccessfully attempt to differentiate the present circumstances from those existing as of 2012 when the September 2012 Order was entered.  Plaintiffs claim that they "had no reason to fight for" post-2007 discovery.  Pls. Mtn. at 7.  Just as plaintiffs were content in 2012 to accept discovery through 2007 to prove liability and damages for a class period that, as of then,

extended at least five years past this discovery end date, there is no reason for the Court to change the discovery period now.

Finally, the contention that the discovery period "should be co-extensive with the Class Period" (Pls. Mtn. at 4) makes no sense. Under plaintiffs' logic, discovery would never end as the end date of the class period changes each day and thus so would the end date for discovery.

Plaintiffs have not acted with diligence in seeking to extend the end date for responsive discovery. In fact, the opposite is true. Plaintiffs have failed to show good cause.

### III.     Maintaining the Discovery Period Causes No Prejudice to Plaintiffs

The Court's September 2012 Order did not prejudice plaintiffs when it was entered and does not prejudice plaintiffs now. Courts overseeing class actions routinely establish limits on the scope and amount of discovery that a plaintiff may pursue. *See*, *e.g.*, *City of Sterling Heights Gen. Emples Ret. Sys. v. Prudential Fin., Inc.*, No. 12-05275 (MCA) (LDW), 2015 U.S. Dist. LEXIS 110712, at *7 (D.N.J. Aug. 21, 2015) (FRCP 26 amendments "added to 'confront the problem of over-discovery and to allow the court to proportion discovery, even though it may be relevant'"); *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. 12-2132 (FLW), 2014 U.S. Dist. LEXIS 13523 (D.N.J. Feb. 4, 2014) (court bifurcated discovery in class action). If plaintiffs had a good faith basis to claim that the Syndicates were liable when they filed the complaint in 2007, discovery through 2007 is sufficient for them to prove liability. Likewise, as to damages, plaintiffs have extensive data for the period through 2007 and shortly will have the data from Xchanging that they have claimed for years is essential to their case.[2]

---

[2] At most, providing through the present the Xchanging data that the Syndicates have agreed to provide through 2007, at plaintiffs' expense, will provide whatever additional damages-related information may be necessary to avoid any suggestion of prejudice to plaintiffs.

In fact, amending the September 2012 Order at this point in the litigation would severely prejudice the Syndicates. The Syndicates incurred significant time and expense to conduct the discovery done to date. Now, plaintiffs seek to have them re-do all of that discovery and more for an additional 12-year period (2008-2019). If plaintiffs have a case, they should be able to prove it based on the discovery done to date.

## IV. Plaintiffs Have No Plausible Fraud Claim for the Period After 2007

Plaintiffs contend that they require post-2007 discovery because "the conduct Plaintiffs were complaining about continued beyond the original 2007 date." Pls. Mtn. at 8. This continuing conduct is not identified in plaintiffs' submission, and for good reason. The claim that plaintiffs have alleged could not possibly be asserted for the years after 2007.

Plaintiffs' principal claim arises under RICO and is based on alleged mail and wire fraud. SAC ¶¶ 203-37, 247-78. In denying the motion to dismiss, Judge Cecchi found that plaintiffs had adequately pled a "scheme to defraud" based on two alleged misstatements: a statement on the Lloyd's website that syndicates "compete for business" and statements by the brokers that they "act in their clients' best interests." MTD Op. at 13-14 (MDL ECF 2877). These two sets of statements allegedly misled policyholders and caused them to pay higher premiums. SAC ¶ 237; MTD Op. at 19-20. Plaintiffs will face a serious challenge proving that policyholders were actually misled by these statements for the current 11-year discovery period, ending on December 31, 2007. The suggestion that this supposed fraud continued to mislead policyholders for an additional 12 years defies common sense.

The putative class, all U.S. policyholders, includes sophisticated business enterprises advised by risk management professionals to handle their insurance coverage. These businesses are not likely to be influenced by the anodyne statements that form the basis of plaintiffs' "fraud"

allegations, but if they were misled, as Plaintiffs allege, any misinformation would surely have been corrected by events that occurred before the end of 2007:

- Compensation paid to insurance brokers received wide public attention as a result of the investigation of the insurance industry by the New York Attorney General during 2004.[3] Plaintiffs rely on the alleged concealment of these payments for a substantial part of their arguments that the two sets of statements were false and misleading. SAC ¶¶ 7-9, 120-82; MTD Op. at 7-10, 15-16, 21. After 2004, few if any Lloyd's policyholders could have been unaware of these payments.

- By the end of 2006, Marsh, Aon and Willis discontinued the payment of contingent commissions worldwide, in widely publicized settlements with the State of New York.[4]

- In 2006, news reports revealed that the Financial Services Authority, the UK government agency responsible at the time for regulating the insurance industry, was pressuring the industry to address issues raised by the New York Attorney General, including brokers' conflicts of interest and the disclosure of broker compensation.[5]

- On July 13, 2007, plaintiffs filed their original complaint in this action (ECF 1), which included a RICO claim against the Syndicates (¶¶ 203-257) based on essentially the same allegations that are the foundation for the RICO claim in the current complaint: claims by brokers that they serve their clients' best interests (¶¶ 86-94); payment of contingent

---

[3] *See* "N.Y. Attorney General Spitzer Targets Insurance Broker Compensation Agreements," Ins. Journal, Apr. 23, 2004, https://www.insurancejournal.com/news/national/2004/04/23/41434.htm.

[4] *See* N.Y. Attorney General Press Release of Nov. 30, 2006, https://ag.ny.gov/press-release/insurers-move-away-contingent-commissions.

[5] *See* "U.K. regulator turns up head on brokers," Business Insurance, December 17, 2006, https://www.businessinsurance.com/article/20061217/story/100020584/uk-regulator-turns-up-heat-on-brokers.

commissions to brokers (¶¶ 95-98, 105-118); the use of lineslips and binding authorities and compensation to brokers under these agreements (¶¶ 99-104); the misrepresentation and non-disclosure of payments to brokers (¶¶ 119-128); and other practices that allegedly impaired competition in the Lloyd's market (¶¶ 129-134).  Plaintiffs' ability to make these allegations in 2007 eliminates the possibility that any policyholders, much less the entire class of U.S. policyholders, were misled about these matters in 2008 or later years.

Plaintiffs may contend that the Syndicates have continued since 2007 to engage in practices that they allege to be anticompetitive, practices such as subscription contracts, binding authorities and lineslips, but those practices and their effect on competition are not sufficient to establish plaintiffs' claim.  Plaintiffs no longer are asserting antitrust claims.  Rather, they are relying entirely on a RICO claim in which the alleged predicate acts are mail and wire fraud.  An essential allegation of the claim is a scheme to defraud.  MTD Op. at 12.  The compensable injury is the loss proximately caused by reliance on the fraud. MTD Op. at 20.  Given the events that unquestionably occurred before the end of 2007, there can be no plausible allegation that, after 2007, policyholders were misled by the statements attributed to the Syndicates and suffered injury as a consequence.

The Syndicates already have searched for and produced a broad range of documents from a period of eleven years.  Plaintiffs now are requesting that the Syndicates find and produce a broader range of documents from period of almost 12 additional years. In the absence of any realistic possibility that plaintiffs could establish a valid fraud claim for those additional 12 years, the cost and expense of this discovery cannot be justified under the proportionality test of Fed. R. Civ, P. 26(b)(1).

### V. Plaintiffs' Complaints Regarding Discovery Are Both Baseless and Irrelevant

Plaintiffs repeat the unfounded complaints regarding the amount of discovery that they have received. Pls. Mtn. at 2. As the Syndicates recently presented in the parties' Joint Submission for Completion of Fact Discovery, the Syndicates have met their obligations and produced extensive discovery. ECF 88 at 15-18. In any event, these complaints from plaintiffs are a smokescreen. Plaintiffs do not seek relief here with respect to the scope of discovery provided for the discovery period through 2007. They already have addressed those issues through their motions to compel, all of which are now resolved. Instead, they seek by this motion to open a new period of discovery for which the Syndicates had no obligation to produce discovery under the Court's September 2012 Order.[6]

### VI. Conclusion

In light of plaintiffs' lack of diligence and no other showing of good cause, the Syndicates respectfully request that the Court deny plaintiffs' motion and not amend the September 2012 Order.

Respectfully submitted,

/s/ Matthew M. Burke                    /s/ Thomas F. Bush

Matthew M. Burke                         Thomas F. Bush

cc:   All Counsel of Record (via ECF)

36970759.2

---

[6] While the Court instructed the parties at the May 1 status conference to address whether plaintiffs are entitled to any additional discovery for any time period after the present motion is decided by the Court, the Syndicates note that the document requests that plaintiffs propose to serve (Pls. Mtn. at Ex. 1) are incredibly broad, are duplicative of the discovery requests to which the Syndicates already have responded, and go well beyond the "controlled discovery" that the Court indicated at the May 1 status conference that it may consider.