ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN
ALEXANDRA S. BERNAY
CARMEN A. MEDICI
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINCOLN ADVENTURES, LLC, a Delaware Limited Liability Company, and MICHIGAN MULTI-KING, INC., a Michigan Corporation, on Behalf of Themselves and All Those Similarly Situated, <br><br>                              Plaintiffs,<br><br>        vs.<br><br>THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON MEMBERS OF SYNDICATES, et al.<br><br>                              Defendants. | No. 2:08-cv-00235-CCC-JAD<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT<br><br>Motion Return Date: September 18, 2019 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................1

II.   PROCEDURAL HISTORY ........................................................3

III.  APPLICABLE LEGAL STANDARD ........................................3

IV.   THE PARTIAL SETTLEMENT WARRANTS FINAL APPROVAL .........6

      A.    Plaintiffs and Class Counsel Have Adequately Represented the
            Settlement Class for over a Decade .........................................6

      B.    The Partial Settlement Is the Result of Good Faith, Arm's-
            Length Negotiations by Well-Informed, Experienced Counsel...........7

      C.    The Settlement Relief Is Fair, Reasonable, and Adequate.................10

            1.    The Risk Factors Support Final Approval ................................12

            2.    The Proposed Method of Distributing Relief Is Fair and
                  Effective ................................................................................14

            3.    The Terms of Attorneys' Fees and Expenses Are Fair.............15

            4.    The Parties Have No Other Agreements Besides Opt
                  Outs ........................................................................................17

      D.    Class Notice Satisfied Rule 23 and Due Process ................................18

      E.    The Court Should Finally Certify the Settlement Class......................21

V.    CONCLUSION........................................................................22

4849-7902-9663.v2

# TABLE OF AUTHORITIES

**Page**

## CASES

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fl. 1988) ............................................................................13

*Bredbenner v. Liberty Travel, Inc.*,
   No. 09-905, 2011 WL 1344745
   (D.N.J. Apr. 8, 2011) ............................................................................8

*Castro v. Sanofi Pasteur Inc.*,
   No. 11-7178, 2017 WL 4776626
   (D.N.J. Oct. 23, 2017)............................................................................15

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ............................................................................3, 4

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)............................................................................21

*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
   604 F. Supp. 446 (E.D. Pa. 1985)............................................................................13

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ............................................................................6, 10

*Halley v. Honeywell Int'l, Inc.*,
   861 F.3d 481 (3d Cir. 2017) ............................................................................4

*In re Aetna UCR Litig.*,
   No. 07-3541, 2013 WL 4697994
   (D.N.J. Aug. 30, 2013)............................................................................8

*In re Aggrenox Antitrust Litig.*,
   No. 3:14-md-02516, 2017 WL 4278788
   (D. Conn. Sept. 19, 2017) ............................................................................7, 8

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002)............................................................................21

4849-7902-9663.v2

**Page**

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...................................................................4

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009) ...........................................................7, 9

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) .............................................................13

*In re Genworth Fin. Sec. Litig.*,
  No. 3:14-cv-682, 2016 U.S. Dist. LEXIS 132269
  (E.D. Va. Sept. 26, 2016)........................................................................17

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ......................................................................4

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012).....................................................................12

*In re Ins. Brokerage Antitrust Litig.*,
  297 F.R.D. 136 (D.N.J. 2013)..............................................................16, 17

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ....................................................................4

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
  No. 16-md-2687 (JLL) (JAD), 2018 WL 7108059
  (D.N.J. Dec. 3, 2018) ...............................................................................16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ..............................................................10

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ....................................................................4

*In re Pet Food Prods. Liab. Litig.*,
  629 F.3d 333 (3d Cir. 2010) ....................................................................4

- iii -

**Page**

*In re Philips/Magnavox TV Litig.*,
  No. 09-3072, 2012 WL 1677244
  (D.N.J. May 14, 2012) .......................................................................9

*In re Prudential Ins. Co. Am. Sales Practice Litig.*,
  148 F.3d 283 (3d Cir. 1998) .........................................................6, 21

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  No. 2:12-cv-83, slip op. (E.D. Tenn. Sept. 24, 2014).........................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. MDL 3:07-md-1827, 2011 WL 7575004
  (N.D. Cal. Dec. 27, 2011) ................................................................17

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ...............................................................4

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................10

*Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd.*,
  No. 12-3824, 2014 WL 12778314
  (E.D. Pa. Sept. 15, 2014) ..................................................................15

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ...............................................................3

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005)..............................................................9

## STATUTES, RULES AND REGULATIONS

28 U.S.C.
  §1711...............................................................................................18

4849-7902-9663.v2

**Page**

Federal Rules of Civil Procedure

    Rule 23 ...................................................................................5, 18, 21, 22

    Rule 23(c)(2) .......................................................................................... 18

    Rule 23(e) ...........................................................................................3, 18

    Rule 23(e)(2) .................................................................................*passim*

    Rule 23(e)(2)(A) ......................................................................................6

    Rule 23(e)(2)(B) ......................................................................................7

    Rule 23(e)(2)(C) ....................................................................................11

    Rule 23(e)(2)(C)(ii) ..............................................................................14

    Rule 23(e)(2)(C)(iii) .............................................................................15

    Rule 23(e)(2)(C)(iv) .............................................................................17

    Rule 23(e)(3)......................................................................................5, 11

Plaintiffs respectfully submit this memorandum in support of their motion for final approval of the proposed Partial Class Action Settlement ("Partial Settlement") with the 13 Settling Defendants in this Action.[1]

## I.   INTRODUCTION

In the weeks and months since this Court granted preliminary approval of the proposed Partial Settlement and approved the dissemination of class notice (ECF 93) ("PAO"), the reaction of the Settlement Class has echoed with approval.  In reaction to the robust notice campaign approved by this Court and executed by the Claims Administrator[2], not one objection has been filed, and only six potential Settlement Class Members have sought exclusion, to date.  This is not for lack of interest in the Partial Settlement.  In fact, to date, there have been 28,904 unique visitors to the website, another 1,239 calls have been fielded by the Claims Administrator, 182 email inquiries have been received, and 1,900 have filed claims.[3]  These facts counsel strongly in favor of final approval of the Partial Settlement.

---

[1]      The Settling Defendants are Lloyd's Syndicates 0033, 0102, 0382, 0435, 0570, 0609, 0623, 0958, 1183, 1886, 2001, 2623, and 2987 (the "Settling Defendants").  The 10 Defendants that have not agreed to a resolution and against which the Action will continue are Lloyd's Syndicates 0510, 0727, 1003, 1084, 1096, 1245, 2003, 2020, 2488, and 2791 (the "Non-Settling Defendants").  Here, and throughout, capitalized terms have the same meaning as set forth in the Stipulation of Partial Class Action Settlement ("Agreement") (ECF 89-2).

[2]      *See* declaration of Eric J. Miller dated August 13, 2019 (the "Miller Decl.").

[3]      *Id.*, ¶¶17, 19, 20, 23.

There is little wonder why the reaction of the Settlement Class has been so positive. This Partial Settlement secures nearly $22 million in cash payments and five years of business reforms for all Settling Defendants that are still writing insurance.[4] And the Partial Settlement releases only 13 of the 23 Defendants, so the Settlement Class may well obtain additional recoveries in the future.

This proposed Partial Settlement did not come quickly or easily, as this Court knows all too well. Instead, Plaintiffs were able to reach this result only after years of diligent litigation, motions practice, discovery (albeit incomplete), and six mediation sessions on two different continents with the highly respected Court-appointed Settlement Master, Hon. Layn R. Phillips (ret.) ("Judge Phillips").[5]

This Court has already preliminarily found that the Partial Settlement is fair, adequate, and reasonable. ECF 93. Plaintiffs respectfully submit that the Court should confirm its findings and issue final approval of the Partial Settlement.

---

[4]    The terms of the Partial Settlement are reflected in the Agreement, which is attached as Exhibit A to the Declaration of Rachel L. Jensen in Support of Plaintiffs' Motion for Preliminary Approval of Partial Class Action Settlement (the "Jensen POA Decl."). *See* ECF 89-2 at 8-69.

[5]    *See* the concurrently filed Joint Declaration of Rachel L. Jensen and Robert S. Schachter in Support of Plaintiffs' Motions for: (1) Final Approval of Partial Class Action Settlement; and (2) an Award of Attorneys' Fees and Expenses/Charges and Service Awards dated August 14, 2019 (the "Joint Declaration" or "Joint Decl.") at ¶¶63-75.

## II.    PROCEDURAL HISTORY

The Court is familiar with the Action and has granted preliminary approval of the Partial Settlement, so Plaintiffs do not repeat chapter and verse of the decade-long procedural history that culminated in this Partial Settlement.  Plaintiffs respectfully refer the Court to their motion for preliminary approval (ECF 89-1 at 12-17[6]) as well as the Joint Declaration for a detailed recitation of the procedural history.  The Joint Declaration details the sustained efforts of Plaintiffs and Class Counsel since commencement of this Action in 2007 through the present, as well as the Parties' multi-year settlement negotiations, ably assisted by Judge Phillips (ret.).

## III.    APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 23(e) requires court approval of a class action settlement and a finding that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e) & (e)(2).

The Third Circuit has repeatedly emphasized there is strong presumption in favor of class action settlements "because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011)[7]; *accord Ehrheart v.*

---

[6]    Page number citations to docket entries ("ECF") refer to the page numbers generated by the electronic case filing (CM/ECF) system.

[7]    Internal citations and quotation marks are omitted, as are footnotes, and emphasis is supplied here and throughout, unless otherwise noted.

4849-7902-9663.v2

*Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 351 (3d Cir. 2010); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). Further, "[t]he ultimate decision whether to approve a proposed settlement under this standard is left to the sound discretion of the district court." *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017).

A class action settlement should be approved where, as here, it is fair, reasonable, and adequate to the class, taken as a whole. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) (citing *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009)). Since the district court is not a party to the settlement, its role is not to change or modify the settlement agreement but to review the settlement "for its fairness, adequacy, and reasonableness." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 444 (3d Cir. 2016).

This Circuit holds there is an initial "presumption of fairness" if "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).

Rule 23(e)(2), as amended in 2018, sets forth the following factors for assessing the fairness, reasonableness, and adequacy of a class action settlement:

4849-7902-9663.v2

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

     (i)   the costs, risks, and delay of trial and appeal;

     (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

     (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

     (iv)   any agreement required to be identified Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  As the Advisory Committee noted, the new (e)(2)

factors are intended to focus attention on a shorter list of factors:

> A lengthy list of factors can take on an independent life, potentially distracting attention from the central concerns that inform the settlement-review process.  A circuit's list might include a dozen or more separately articulated factors.  Some of these factors – perhaps many – may not be relevant to a particular case or settlement proposal.  Those that are relevant may be more or less important to the particular case.  Yet counsel and courts may feel it necessary to address every factor on a given circuit's list in every case.  The sheer number of factors can distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2).

> This amendment therefore directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision on whether to approve the proposal.

Fed. R. Civ. P. 23, Advisory Committee Notes, 2018 Amends., Subdivision (e)(2).

4849-7902-9663.v2

These Rule 23(e)(2) factors are similar to those set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), and *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 323-24 (3d Cir. 1998).  By any metric, the relevant factors are satisfied as to the Partial Settlement here.

## IV.  THE PARTIAL SETTLEMENT WARRANTS FINAL APPROVAL

As explained in the preliminary approval motion, and further below, the relevant factors in assessing the fairness, reasonableness, and adequacy of a class action settlement are all satisfied here and weigh in favor of final approval.

### A.  Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class for over a Decade

First, Plaintiffs and their counsel have adequately represented the Settlement Class by diligently prosecuting and resolving this Action on their behalf for the past twelve years.  *See* Rule 23(e)(2)(A).

In issuing preliminary approval of the Partial Settlement, the Court found that Plaintiffs and Co-Lead Counsel, along with the other counsel representing Plaintiffs, will fairly and adequately protect the interests of the Settlement Class.  *See* ECF 93 at 3.  And, indeed, as detailed in the Joint Declaration, Plaintiffs and their counsel have fairly and adequately protected the interests of the Settlement Class for over a decade and counting, having navigated years of motions practice, lengthy stays, international discovery disputes, and depositions and mediations on two continents, all the while

facing stiff opposition from Defendants' counsel each step of the way.  For their part, Plaintiffs have actively prosecuted the Action alongside their counsel, and have diligently and selflessly served the Settlement Class by sitting for full-day depositions; producing documents; and participating in multiple multi-day mediations with Judge Phillips on two different continents with no guarantee of success or a return on their investment of time and sweat equity.  *See* Joint Decl., ¶¶17-28 (describing efforts to lift the stay and litigate the motion to dismiss), ¶¶29-39 (documentary discovery efforts), ¶¶40-41 (testimony taken), ¶¶42-55 (discovery motion practice), ¶¶56-60 (Named Plaintiffs' efforts), ¶¶61-62 (expert work), ¶¶63-75 (mediation efforts).

The Settlement Class has been, and will remain, adequately represented.

**B.     The Partial Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed, Experienced Counsel**

Second, this Partial Settlement is entitled to a presumption of fairness as it was reached at arm's – or more – length.  This factor also favors final approval of the Partial Settlement.  *See* Fed. R. Civ. P. 23(e)(2)(B); *see, e.g.*, *In re Aggrenox Antitrust Litig.*, No. 3:14-md-02516, 2017 WL 4278788, at *3 (D. Conn. Sept. 19, 2017) (settlement resulting from arm's-length negotiations between experienced counsel entitled to a presumption of fairness); *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) ("Where a settlement is the product of arm's

- 7 -

length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the negotiation enjoys a presumption of fairness.").

Here, in issuing preliminary approval of the Partial Settlement, the Court found that "the Settlement Agreement resulted from extensive arm's-length negotiations conducted with the assistance of the Hon. Layn R. Phillips" after substantial discovery. *See* ECF 93 at 4. Indeed, Judge Phillips' participation throughout years of negotiations ensures the Partial Settlement is collusion-free. *See Bredbenner v. Liberty Travel, Inc.*, No. 09-905, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). Thus, this Partial Settlement is entitled to a presumption of fairness. *See, e.g.*, *Aggrenox*, 2017 WL 4278788, at *3; *see also, e.g.*, *In re Aetna UCR Litig.*, No. 07-3541, 2013 WL 4697994, at *11 (D.N.J. Aug. 30, 2013) ("[S]essions with a respected and experienced mediator, gave counsel on both sides ample opportunity to adequately assess the strengths of their respective positions and facilitated serious and informed negotiations.").

Further, the negotiations collectively spanned years and required not only ingenuity but also countless hours spent in meetings and on calls, lengthy mediation sessions in the United States and the United Kingdom, and dozens of draft agreements. *See* Joint Decl., ¶¶63-75. Throughout the negotiations, Plaintiffs and

their counsel were mindful of the risks of continued litigation that inhere in any complex litigation as well as the unique strengths and weaknesses of the claims and defenses here in light of a decade of investigation, discovery conducted to date, expert analysis, and this Court's able guidance. *See* Joint Decl., ¶¶11-12, 94; *see, e.g.*, *In re Philips/Magnavox TV Litig.*, No. 09-3072, 2012 WL 1677244, at *11 (D.N.J. May 14, 2012) ("Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent.").

Class Counsel's mindfulness was also informed by more decades of collective experience than we care to say in prosecuting complex class actions, including claims concerning anti-competitive conduct, fraudulent schemes,[8] and the insurance industry. *See* Joint Decl., ¶¶92-96. Bringing this experience and knowledge to bear, counsel believe that the Partial Settlement is in the best interests of the Settlement Class. *See id.*, ¶¶11-12. This judgment is entitled to considerable weight. *See Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *Currency Conversion*, 263 F.R.D. at 122 (citing the "extensive" class action experience of counsel). Counsel's views are even weightier where, as here, many of the attorneys

---

[8]     The experience and qualifications of Class Counsel are described in the concurrently filed Declaration of Rachel L. Jensen dated August 14, 2019 (the "Jensen Declaration"), Exhibit H and Declaration of Robert S. Schachter dated August 6, 2019 (the "Schachter Declaration"), Exhibit D.

representing Plaintiffs and the Settlement Class have been involved in the investigation and discovery since the start. *See, e.g.*, *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 662 (S.D.N.Y. 2015) (settlement procedurally fair where, due to experienced counsel and extensive discovery, "counsel on both sides were well-situated to thoughtfully assess the potential outcomes of the case and the likelihoods of each occurring"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts give "great weight . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").

### C.    The Settlement Relief Is Fair, Reasonable, and Adequate

Third, this Partial Settlement provides fair, reasonable, and adequate relief to the Settlement Class.  Indeed, in preliminarily approving the Partial Settlement, the Court found that "the Settlement is sufficiently fair, reasonable and adequate to warrant sending out [Class Notice]." ECF 93 at 4-5.  Nothing has changed to alter the Court's conclusion.  All applicable factors point toward finding the Partial Settlement relief to be fair, reasonable, and adequate.

Amended Rule 23(e)(2), like the Third Circuit's decision in *Girsh*, considers the adequacy of the settlement relief taking into account certain factors, including

(i)     the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

- 10 -

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).

Here, the Partial Settlement provides for significant monetary relief and five years of business reforms to the Settlement Class.  The Settlement Amount of nearly $22 million, with interest earned thereon, less attorneys' fees and expenses, service awards, notice and administration expenses, and taxes and associated expenses, will be distributed to those Settlement Class Members who submit timely and valid Claim Forms to the Claims Administrator.  *See* ECF 89-2 at 33-38.  In addition, the Settling Defendants have agreed to implement business reforms in the Lloyd's Market for the next five years for the benefit of Settlement Class Members and future insureds. Specifically, each Settling Defendant[9] has agreed to:

1.    comply with any applicable requirements of the Corporation of Lloyd's or any U.K. regulatory authority on competition law, compensation to producers, and anti-bribery and corruption compliance, including treating customers fairly and paying due regard to their interests and managing conflicts of interest fairly;

2.    adhere to the requirements of the U.K. Bribery Act applicable to it;

3.    adhere to the applicable regulations regarding whistleblowing as set by the appropriate U.K. regulatory authority, including maintenance of internal procedures for handling reports made by whistleblowers, education of U.K.-based employees, and appointment of a senior-level employee or director to oversee the integrity, independence and

---

[9]    Syndicate 0102 no longer sells insurance in the London Market and thus will not be implementing these reforms.

effectiveness of each of the Settling Defendant's policies and procedures on whistleblowing, as may be required by these regulations; and

4.      comply with all regulatory and legal requirements relating to the information it is permitted to share with any other syndicate regarding the placement of insurance in the Lloyd's market by U.S. policyholders.

*See* ECF 89-2 at 38-39.

These are significant and meaningful benefits for the Settlement Class, the adequacy of which only become more obvious once weighed against the risk factors.

## 1.      The Risk Factors Support Final Approval

There is no disputing that nearly $22 million in monetary relief and five years of business reforms, with an opportunity for further relief from the Non-Settling Defendants, is an exceptional outcome, particularly when the risk factor of delay is taken into account.  Indeed, this Action was filed over a decade ago, stayed for five years, and could take years more to complete fact discovery, obtain class certification for litigation purposes, defeat summary judgment, conduct expert discovery, and prevail at trial and the appeals that would inevitably follow.  *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 103 (D.N.J. 2012) ("By reaching a favorable Settlement with most of the remaining Defendants prior to the disposition of Defendants' renewed dismissal motions or even an eventual trial, Class Counsel have avoided significant expense and delay, and have also provided an immediate benefit to the Settlement Class.").

Further, while Plaintiffs believe their Claims are strong, they acknowledge, as always, there are risks to recovery – and enduring wisdom to the old proverb "one bird in the hand is worth two in the bush." *See* Henry G. Bohn, Handbook of Proverbs 72 (1860). Given the ongoing litigation against the Non-Settling Defendants, we will not flesh out the specific litigation risks here. It is worth pointing out, however, that Defendants have argued that damages are zero or a *de minimus* amount for various reasons. *See, e.g.*, MDL Dkt. 2763-1 at 42.

Here, as explained in Plaintiffs' preliminary approval motion, the Partial Settlement provides 22% of reasonably recoverable damages (minus the ice-breaker settlement with Syndicate 2001) based on data produced in discovery and expert analysis, not even including the value of five years of business reforms to the Settlement Class. *See* ECF 89 at 17. This estimated recovery falls well within the approvable range of settlements, particularly where the case has been so hard fought for so long. *See Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 451 (E.D. Pa. 1985) (2.4% of sales within the reasonable range of recoveries); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 324-25 (N.D. Ga. 1993) (12.7% - 15.3% of total damages was "well above the lowest point in the zone of reasonableness"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fl. 1988) (approving settlement of 5.7% of damages).

In sum, the relief provided under the Partial Settlement is more than adequate under all the circumstances.  This resolution with the Settling Defendants balances the risks, costs, and delay inherent in complex cases, and carries the possibility of a further recovery from the Non-Settling Defendants at a later time.  Considering the time and expense that would be incurred to prosecute this Action against the 13 Settling Defendants through the remainder of discovery, class certification, summary judgment, trial and appeal, balanced against the immediate relief offered to Settlement Class Members, this Partial Settlement is clearly in the best interests of the Settlement Class.  Final approval is, therefore, warranted.

### 2. The Proposed Method of Distributing Relief Is Fair and Effective

The Partial Settlement also warrants final approval because the proposed methods for processing claims and distributing relief to Settlement Class Members are fair and reasonable.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).

First, the claims process is streamlined and designed to be as convenient as possible.  The Claim Form is straight forward, and Settlement Class Members may simply submit such forms online through the Settlement Website.  *See* Miller Decl., ¶15.

Second, the Plan of Allocation describes the equitable distribution of the Net Settlement Fund to Settlement Class Members that submit valid Claims.  *See* ECF 89-2 at 122-124 (Ex. F).  Specifically, the Net Settlement Fund will be allocated on a *pro*

*rata* basis based on the total dollar value of each Claimant's premium paid for the policies included in the description of the Settlement Class in proportion to the total dollar value of all valid Claims submitted. *See id.* Further, the Plan of Allocation treats all Settlement Class Members equally and ensures that each claimant will receive a share of the Net Settlement Fund based on their eligible premiums. *See id.* This type of allocation methodology has been approved in similar cases. *See, e.g.*, *Castro v. Sanofi Pasteur Inc.*, No. 11-7178, 2017 WL 4776626, at *2, *7 (D.N.J. Oct. 23, 2017) (approving plan of distribution which determined *pro rata* shares of settlement fund based on class members' purchases of Menactra); *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd.*, No. 12-3824, 2014 WL 12778314, at *5 (E.D. Pa. Sept. 15, 2014); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-cv-83, slip op. at ¶9 (E.D. Tenn. Sept. 24, 2014) (ECF 800) (same) (attached as Ex. 1 hereto).

Importantly, the Agreement does not release any claims against any Non-Settling Defendant, nor does it release any claim arising after the Class Period. *See* ECF 89-2 at 45-48, 95-97. For these reasons, the Plan of Allocation is fair and reasonable and warrants the Court's final approval.

### 3.    The Terms of Attorneys' Fees and Expenses Are Fair

This Partial Settlement warrants final approval for the additional reason that the proposed terms of the attorneys' fees and expenses for Plaintiffs' Counsel for achieving this result are fair. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

4849-7902-9663.v2

Class Counsel are concurrently filing a separate application for attorneys' fees and expenses detailing the terms of the requested fee and expense award. By way of overview, however, as explained in the Class Notices, Plaintiffs will request attorneys' fees not to exceed one-third of the Settlement Amount – and not seeking any additional amount based on the value of the business reforms achieved through the Partial Settlement. Plaintiffs will also request payment of litigation expenses of $1.85 million, the amount set forth in the Class Notices.

Plaintiffs' fee request is in line with settlements approved by this Court in MDL 1663 and this District in other recent cases. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) (awarding 33% of $10.5 million partial settlement fund in attorneys' fees and $1,023,188.76 in expenses); *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687 (JLL) (JAD), 2018 WL 7108059, at *1 (D.N.J. Dec. 3, 2018) (awarding 33.3% of $10,796,800 settlement fund). Further, the requested expenses reflect the substantial costs reasonably incurred by Plaintiffs for over a decade of litigation against 23 separate foreign defendants. This undertaking has necessitated the outlay of hundreds of thousands of dollars for the common benefit of Settlement Class Members in the pursuit of document and deposition discovery from nearly two dozen foreign defendants and numerous third parties located in the UK, four separate mediations with Judge Phillips on two continents, and substantial expert analysis. *See generally* Joint Decl.

- 16 -

Plaintiffs will also ask that any award of fees and expenses be paid at the time the Court makes its award, consistent with settlements in MDL 1663 and other class action cases. *See In re Ins. Brokerage Antitrust*, 297 F.R.D. 136; *see also In re Genworth Fin. Sec. Litig.*, No. 3:14-cv-682, 2016 U.S. Dist. LEXIS 132269, at \*28 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and [l]itigation [e]xpenses awarded above may be paid to Lead Counsel immediately upon entry of this Order"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07-md-1827, 2011 WL 7575004, at \*1 (N.D. Cal. Dec. 27, 2011) ("Federal courts . . . routinely approve settlements that provide for payment of attorneys' fees prior to final disposition in complex class actions.").

Plaintiffs respectfully submit that the Court should approve the requested attorneys' fees to compensate them for their hard work and skill in obtaining this result with respect to the Settling Defendants, and the many hours of work that remain going forward with respect to this Partial Settlement until every last Settlement Class Member cashes his or her check.

### 4. The Parties Have No Other Agreements Besides Opt Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement made in connection with the proposal. Here, the Agreement constitutes the entirety of the Settling Parties' agreement, except for the customary "blow provision" that specifies the threshold number of individual opt outs to trigger the Settling Defendants'

termination rights under the Agreement.  *See* ECF 89-2 at 60.  This factor also weighs in favor of final approval.

### D.     Class Notice Satisfied Rule 23 and Due Process[10]

In granting preliminary approval of the Partial Settlement, the Court approved the comprehensive Notice Plan for dissemination to the Settlement Class.  *See* ECF 93 at 8-11; *see also* ECF 89-4 (Affidavit of Linda V. Young).  In doing so, the Court found that such notice, which combines individual, direct notice (via mail and/or email), publication notice, internet advertising through a digital media campaign and website notice, together with a toll-free telephone number, email and postal address, "constitute due, adequate and sufficient notice to all persons or entities entitled to be provided with notice, and meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e))" and due process.  ECF 93 at 11.

Pursuant to the Court's PAO, and in compliance with Rule 23, the Court-appointed Claims Administrator, A.B. Data, Ltd., has implemented the Notice Plan, which included direct notice to all known Settlement Class Members and a robust print publication and online media campaign.  *See* Miller Decl.[11]  Starting on June 17,

---

[10]     The Settling Defendants complied with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. §1711, *et seq.  See* Declarations of Matthew Burke and Duvol Thompson, both dated May 2, 2019 (ECFs 91 and 92).

[11]     For a detailed explanation as to how addresses were obtained for Settlement Class Members, *see* Affidavit of Linda V. Young (the "Young Aff.") (ECF 89-4) and Miller Decl., ¶¶3-11.

- 18 -

2019, the Claims Administrator mailed the Summary Notice to all Settlement Class

Members for whom valid and accurate addresses could be obtained, totaling more

than 197,000 mailings. *See id.*, ¶10.  For the 35,926 notices returned as undeliverable,

the Claims Administrator located 7,319 updated addresses, and coordinated remailing

of the Summary Notices to the updated addresses. *Id.*, ¶11.

In addition, the Claims Administrator published the Summary Notice in the

nationwide print versions of the following publications:

| Publication | Dates Published |
|---|---|
| *Wall Street Journal* (2 national print ads) | June 17 and 21, 2019 |
| *The New York Times* (2 national print ads) | June 19 and 26, 2019 |
| *USA Today* (2 national print ads) | June 17 and 24, 2019 |
| *Business Insurance* (1 national print ad) | July |
| *Risk Management* (1 national print ad) | July/August |
| *Risk & Insurance* (1 national print ad) | August |
| *PR Newswire* | June 17, 2019 |

Miller Decl., ¶12.

Then, beginning on June 17, 2019, the Claims Administrator launched an

ongoing digital media campaign. *Id.*, ¶13.  To date, more than 20 million internet

advertisements have been purchased and disseminated over desktop and mobile

devices via the Google Display Network, AdWords (Search) and LinkedIn. *Id.*  The

consumer publication and internet advertising alone has an estimated reach of

approximately 71.6% of U.S. adults who are involved in the purchase of business insurance. *Id.*, ¶14. That does not include the additional reach of the Claims Administrator's direct notice efforts.

The Claims Administrator has also launched a website (www.SyndicateSettlement.com) and a toll-free hotline and email address to provide all the information that Settlement Class Members need to know about the Partial Settlement, including downloadable copies of the Summary Notice, Long-Form Notice, Claim Form and the Agreement. *Id.*, ¶¶15-20. Settlement Class Members are advised of the Action, the terms of the Partial Settlement, their rights and options in connection with the Partial Settlement, and the method and dates by which they may: (i) object to the Partial Settlement, Plan of Allocation, the award of attorneys' fees and expenses or service awards, (ii) request exclusion from the Settlement Class, and (iii) submit a Claim Form to participate in the Partial Settlement. Additionally, Settlement Class Members are advised of the date and time of the Fairness Hearing to heard with respect to any objection. The Settlement Website also provides a straightforward process for submitting Claim Forms online. *Id.*, ¶15.

As of August 13, 2019, the Settlement Website had received 28,904 unique visitors; the toll-free number had received 1,239 calls; and the Claims Administrator had received 182 emails and letter correspondence. *Id.*, ¶¶17, 19-20. As of

- 20 -

August 13, 2019, more than 1,900 Settlement Class Members have completed a Claim Form online using the Settlement Website.

As the Court found in the PAO, the Notice Plan constitutes "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Prudential*, 148 F.3d at 326-27; *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 119 (D.N.J. 2002) ("In order to satisfy due process, notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

Plaintiffs respectfully ask the Court to conclude that the Notice Plan was implemented in accordance with its PAO and confirm its finding that the Notice Plan was adequate and satisfied Rule 23 and Due Process.

### E.    The Court Should Finally Certify the Settlement Class

In presenting the Partial Settlement for preliminary approval, Plaintiffs requested the Court's certification of the Settlement Class for settlement purposes so that the Notice Plan could be implemented.  In the PAO, the Court preliminarily certified the Settlement Class for settlement purposes.  *See* ECF 93 at 3.

Again, nothing has changed to alter the propriety of the Court's certification of the Settlement Class.  Accordingly, for all the reasons stated here and in the

- 21 -

Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Partial Class Action Settlement (ECF 89-1), incorporated herein by reference, Plaintiffs respectfully request that the Court affirm its certification of the Settlement Class, as well as its appointment of the Class Representatives and Class Counsel, for purposes of carrying out this Partial Settlement.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) find the Notice Plan complies with Rule 23 and due process and was the best notice practicable under the circumstances; (2) grant final approval of the Partial Settlement; (3) confirm final certification of the Settlement Class for purposes of effectuating the Partial Settlement and the appointment of Plaintiffs as Class Representatives and Co-Lead Counsel as Class Counsel; and (4) approve the Plan of Allocation.

DATED:  August 14, 2019                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN
ALEXANDRA S. BERNAY
CARMEN A. MEDICI


                              s/Rachel L. Jensen
                         RACHEL L. JENSEN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

4849-7902-9663.v2

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ZWERLING, SCHACHTER
  & ZWERLING, LLP
ROBERT S. SCHACHTER
DAN DRACHLER
ANA M. CABASSA
41 Madison Avenue
New York, NY  10010
Telephone:  212/223-3900
212/371-5969 (fax)

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
H. SULLIVAN BUNCH
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602/274-1199 (fax)

FOOTE, MIELKE, CHAVEZ
  & O'NEIL, LLC
ROBERT M. FOOTE
KATHLEEN C. CHAVEZ
10 West State Street, Suite 200
Geneva, IL  60134
Telephone:  630/232-7450
630/232-7452 (fax)

- 23 -

CAFFERTY CLOBES MERIWETHER
  & SPRENGEL LLP
ELLEN MERIWETHER
1101 Market Street, Suite 2650
Philadelphia, PA  19107
Telephone:  (215) 864-2800
215/864-2810 (fax)

DAVID M. FOSTER, P.C.
DAVID M. FOSTER
30833 Northwestern Hwy., Suite 209
Farmington, MI  48334
Telephone:  248/855-0940
248/855-0987 (fax)

Attorneys for Plaintiffs

4849-7902-9663.v2

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: SKELAXIN (METAXALONE) ANTITRUST LITIGATION | MDL No. 2343<br><br>Lead Case No: 2:12-cv-83<br><br>Consolidated Cases. 1:12-cv-181; 1:12-cv-185; and 1:12-cv-163 |
| This Document Relates To:<br>All Direct Purchaser Class Actions | |

## FINAL JUDGMENT APPROVING
## DIRECT PURCHASER CLASS ACTION SETTLEMENT

Direct Purchaser Class Plaintiffs Professional Drug Company, Inc., Meijer, Inc. and Meijer Distribution, Inc., Rochester Drug Co-Operative, Inc., Ahold USA, Inc., and Stephen L. LaFrance Holdings, Inc. and its wholly-owned subsidiary Stephen L. LaFrance Pharmacy, Inc. d/b/a SAJ Distributors (collectively "Direct Purchaser Class Plaintiffs") executed a Settlement Agreement with Defendants King Pharmaceuticals LLC and Mutual Pharmaceutical Company, Inc. ("Defendants") to fully resolve this direct purchaser class action antitrust case.

On April 30, 2014, this Court granted preliminary approval of the parties' proposed settlement ("Preliminary Approval Order") (Doc. 628).  The Preliminary Approval Order authorized Direct Purchaser Class Plaintiffs to disseminate notice of the settlement, the fairness hearing, and related matters to members of the direct purchaser class.  Notice was provided to the class in accordance with the Preliminary Approval Order, and the Court held a final fairness hearing on September 9, 2014 to further consider the proposed settlement.

**AND NOW,** this 9th day of September, 2014, having considered Direct Purchaser Class Plaintiffs' Motion for Final Approval of Class Action Settlement, oral argument presented at the

fairness hearing, and the complete record in this matter, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

The Class

1.     This case has been certified for settlement purposes, on behalf of the following class: all persons or entities in the United States and its territories who purchased Skelaxin directly from King at any time during the period November 4, 2005 through and until April 30, 2014 (the "Class Period"). Excluded from the Class are Defendants and their officers, directors, management, employees, subsidiaries, and affiliates, and all federal governmental entities. As set forth in the Preliminary Approval Order (at ¶ 5), notice of the settlement was provided to class members in full compliance with the requirements of Fed. R. Civ. P. 23 and due process. No class member, other than those direct purchasers that are on file and continuing to prosecute their own individual actions in this MDL in *Rite Aid Corporation et al v. King Pharmaceuticals, Inc. et al* (C.A. 1:13-cv-00005) and *Walgreen Co. et al v. King Pharmaceuticals, Inc. et al* (C.A. 1:12-cv-00203) requested exclusion from the class by the July 30, 2014 deadline.[1]

Jurisdiction

2.     This Court has jurisdiction over the claims of Direct Purchaser Class Plaintiffs, the class, and Defendants.

---

[1] These entities are:
- Rite Aid Corporation and Rite Aid Hdqtrs Corp. ("Rite Aid") and McKesson Corp. only with respect to goods resold to Rite Aid;
- The Jean Coutu Group (PJC) USA, Inc., Maxi Drug, Inc., d/b/a Brooks Pharmacy and Eckerd Corporation ("Brooks/Eckerd") and McKesson Corp. only with respect to goods resold to Brooks/Eckerd;
- Walgreen Co. ("Walgreen"), Cardinal Health, Inc. only with respect to goods resold to Walgreen, and AmerisourceBergen Corporation only with respect to goods resold to Walgreen;
- The Kroger Co. ("Kroger") and Cardinal Health, Inc. only with respect to goods resold to Kroger;
- Supervalu Inc. ("Supervalu") and McKesson Corp. only with respect to 75% of goods resold to Supervalu;
- Safeway Inc. ("Safeway"), McKesson Corp. only with respect to goods resold to Safeway, and Cardinal Health, Inc. only with respect to goods resold to Safeway; and
- HEB Grocery Company LP ("HEB"), McKesson Corp. only with respect to goods resold to HEB, and Cardinal Health, Inc. only with respect to goods resold to HEB.

Notice

3.      The Preliminary Approval Order directed the substance, form, and manner by which Direct Purchaser Class Plaintiffs would provide the class with notice of the proposed settlement with Defendants; the date, time, and location of the fairness hearing; and related matters, such as how class members could object to the settlement or otherwise be heard.  The notice program included individual notice to class members and the establishment of a website (www.skelaxindirectsettlement.com), through which notice and other information could be obtained.  The notice constituted the most effective and best notice practicable under the circumstances and was due and sufficient notice for all other purposes to all potential class members entitled to receive notice.

4.      Class Counsel provided first class mail notice to fifty-seven potential members of the class on or about June 13, 2014.  Although nine of the original notices were returned as undeliverable, Class Counsel and the Settlement Administrator performed additional outreach efforts and contacted all remaining members of the class via overnight mail and telephone.

Approval of the Settlement and Plan of Distribution

5.      The parties' settlement resulted from a detailed investigation of the facts, extensive discovery, expert analysis and reports, and motion practice.  It was reached only after arm's-length negotiations, undertaken in good faith by counsel for the parties.

6.      The settlement provides a recovery from Defendants of $73 million in cash.

7.      The Court has evaluated the proposed settlement under Rule 23 of the Federal Rules of Civil Procedure, as well as relevant Sixth Circuit jurisprudence, including the factors set forth in *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW) v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007), finding as follows:

a.     *The likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement.*  "The fairness of each settlement turns in large part on the strength of the parties' legal dispute."[2]  When considering the fairness of a class action settlement, courts assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"[3]  This case involved numerous, complex legal issues and Direct Purchaser Class Plaintiffs' success was not certain.  The risk of the class ultimately receiving nothing was not insignificant.  Had Direct Purchaser Class Plaintiffs been unable to prove even one element of each claim, Defendants would have prevailed and the class would have recovered nothing.  "All litigation poses risks of course, but antitrust litigation especially so."[4]  These risks must be weighed against the settlement consideration: $73 million in cash, which is plainly valuable to the class members.  Weighing the risk and uncertainty of litigation against the settlement benefits tilts the scale toward approval.

b.     *The complexity, expense, and likely duration of further litigation.*  "Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'"[5]  "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery."[6]  This is

---

[2] *In re Southeastern Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 U.S. Dist. LEXIS 70163, at *12 (E.D. Tenn. May 17, 2013).

[3] *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *10 (E.D. Mich. Dec. 13, 2011).

[4] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS 70163, at *14.

[5] *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003) (quoting *Williams*, 720 F.2d at 922).

[6] *Id.*

particularly true for class actions, which are "inherently complex."[7]  "[S]ettlement avoids the costs, delays, and multitude of other problems associated with them."[8]  In the absence of this settlement, litigation and mediation would have continued for several more years at significant additional expense.  This settlement ensures that class members will receive their recoveries without further delay and without incurring further expense.

    c.  *The opinions of Class Counsel and class representatives.*  In deciding whether a proposed settlement warrants approval, Class Counsel's judgment "that the settlement is in the best interest of the Class 'is entitled to significant weight, and supports the fairness of the class settlement.'"[9]  Class Counsel have extensive experience in handling pharmaceutical antitrust and other complex litigation.[10]  They negotiated this settlement at arm's-length over a period of months with well-respected and experienced counsel for Defendants.  Each class representative also has experience in litigating pharmaceutical antitrust cases and evaluated the strength of the settlement, finding that it was fair and reasonable.

    d.  *The amount of discovery engaged in by the parties.*  The discovery process was intense and nearly complete at the time of settlement.[11]  Ultimately, Defendants

---

[7] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS 70163, at *14 (citing *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)).

[8] *Id.*

[9] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS 70163, at *15-16.; *In re Packaged Ice Antitrust Litig.,* 2011 WL 717519, at *11 (quoting *Sheick v. Auto. Component Carrier LLC,* Case No. 2:09-cv-14429, 2010 WL 4136958, at *18 (E.D. Mich. Oct. 18, 2010).

[10] *See* Memorandum of Law in Support of Class Counsel's Motion for an Award of Attorney Fees, Reimbursement of Expenses, and Awards for the Named Plaintiffs, filed June 6, 2014, at 32-33 (Doc. No. 722); Declaration of Thomas J. Sobol in support of Motion for Attorney Fees at ¶ 50, filed June 6, 2014 (Doc. No. 722-3) ("Sobol Decl. in Support of Motion for Attorney Fees").

[11] For a lengthy discussion of all of the discovery taken in this case, see Motion for Attorney Fees at 12-16; Sobol Decl. in Support of Motion for Attorney Fees at ¶¶ 10-26.

produced approximately 315,000 documents, containing nearly 4.5 million pages.[12] Direct Purchaser Class Plaintiffs (in coordination with other plaintiff groups) analyzed over half of those documents in a short period of time.[13] Direct Purchaser Class Plaintiffs were involved in an intensive deposition preparation process at the time of settlement and planned to take at least twenty depositions of Defendants' employees in November and December of 2013.[14] Direct Purchaser Class Plaintiffs also responded to Defendants' discovery requests, producing thousands of pages of documents and sitting for multiple depositions on both merits and document production issues. Additionally, Direct Purchaser Class Plaintiffs responded to a detailed set of contention interrogatories served by Defendants. Class Counsel's thorough analysis of the documents produced by Defendants fully informed the decision to enter into the settlement and Class Counsel had sufficient information to allow them to evaluate the fairness of the settlement.[15]

       e.    *The reaction of absent class members.* The absent class members also support the settlement. After receiving individual, mailed notice and follow-up calls from Lead Counsel for the Direct Purchaser Class, no member of the class objected to the settlement and no member of the class opted out, with the exception of those direct purchasers who filed their own individual lawsuits and are coordinated in this litigation.[16] "[T]he scarcity of objections-relative to the number of class members overall-indicates

---

[12] Sobol Decl. in Support of Motion for Attorney Fees at ¶ 16.

[13] *Id.*

[14] *Id.* at ¶ 19.

[15] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS 70163, at 17 ("Counsel's recommendation and that of the class representatives is clearly supported by an incredibly extensive base of data and this gives added weight and deference to the judgment of trial counsel and the class representatives.").

[16] *See* Declaration of Thomas M. Sobol in Support of Final Approval of Class Action Settlement, filed August 21, 2014, at ¶¶ 10-11 (explaining that the only opt-outs were those that Direct Purchaser Class Plaintiffs expected – those that filed their own lawsuits and are engaged in this coordinated litigation on their own behalves).

broad support for the settlement among Class Members."[17]

      f.    *The good faith of settlement negotiations.*  There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion, unless there is evidence to the contrary.[18]  Here, settlement came after several years of hard-fought litigation and the negotiations were conducted over a lengthy period of time.  Class Counsel have extensive experience in proper management of pharmaceutical antitrust class actions and they negotiated this settlement at arm's length with Defendants' counsel.

      g.    *The public interest.*  "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."[19]  The settlement also "ends potentially long and protracted litigation among these parties and frees the Court's valuable judicial resources."[20]  "Society's interests are clearly furthered by the private prosecution of civil cases which further important public policy goals, such as vigorous competition by marketplace competitors."[21]  This litigation, which sought to

---

[17] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS, at *19; *Sheick*, 2010 WL 4136958, at *22; *In re Cardizem*, 218 F.R.D. at 527 ("[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement").

[18] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS, at *20; *Telectronics*, 137 F. Supp. 2d at 1018 (citing Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11.51 (3d ed. 1992) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered."); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW) v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at *26 (E.D. Mich. July 13, 2006); *Sheick*, 2010 WL 4136958, at **19-20.

[19] *In re Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs. Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).

[20] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS 70163, at *21 (citing *In re Broadwing, Inc., ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006)).

[21] *In re Southeastern Milk*, 2013 U.S. Dist. LEXIS 70163, at *23 (citing *Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983) ("This court has emphasized the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws.")).  *See also Cardizem*, 218 F.R.D. at 534 ("Society also benefits from the prosecution and settlement of private antitrust litigation.").

hold Defendants accountable for their allegedly anticompetitive scheme, serves the greater good.  The resolution of the case through settlement further benefits the public by providing prompt compensation to those directly injured by Defendants' alleged actions.

8.      Upon consideration of the above factors and the record in this case, the Settlement Agreement and each of its terms are finally approved as fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and the parties are directed to consummate the settlement according to its terms.

9.      The plan of distribution, including the proposed claim form, for the Settlement Fund is also fair and reasonable.  The Settlement Fund will be distributed to class members based on their purchases of Skelaxin during the Class Period.  Each class member that files a claim for will receive its *pro rata* share of the Settlement Fund, ensuring that no class member receives preferential treatment.  This plan of distribution is similar to those approved in other antitrust cases.[22]

Direct Purchaser Class Plaintiffs' Lead Counsel Shall Allocate the Attorney Fee Award Using Standardized Hourly Rates

10.      When this Court granted Class Counsel's motion for attorney fees on June 30, 2014, it granted a single aggregate fee award.[23]  "Ideally, allocation is a private matter to be handled among class counsel."[24]  Lead Counsel has directed this case from its inception and are

---

[22] *See, e.g., In re Packaged Ice,* 2011 WL 6209188, at **65-68; *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27013, at *29-30 (D.N.J. Nov. 9, 2005) (finding plan to allocate settlement funds in proportion to the overcharge incurred by each class member to be "inherently reasonable"); *In re Ready-Mixed Concrete Antitrust Litig.*, No. 1:05-cv-00979-SEB-JMS, 2009 U.S. Dist. LEXIS 132343, at *17-18 (S.D. Ind. Mar. 31, 2009); *In re Terazosin Hydrochloride Antitrust Litig.*, Case No. 99-MDL-1317, 2005 U.S. Dist. LEXIS 43082 at *17 (S.D. Fla. Apr. 19, 2005); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 752 (E.D. Pa. 2013).

[23] Order Granting Class Counsel's Motion for Attorney Fees, Reimbursement of Expenses, and Awards for the Named Plaintiffs, filed June 30, 2014 (Doc. No. 747).

[24] *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357 (N.D. Ga. 1993)

the attorneys "better able to describe the weight and merit of each [counsel's] contribution."[25] From an efficiency standpoint, leaving the allocation to Lead Counsel makes good sense because it relieves the Court of the "difficult task of assessing counsels' relative contributions."[26]  Lead Counsel is hereby authorized to allocate the fee award.

11.     Should any disputes arise that cannot be resolved by counsel, this Court retains jurisdiction to resolve them.[27]  Any such disputes must be brought to the Court's attention via letter motion within ten (10) calendar days after Lead Counsel makes the fee allocation.

12.     In undertaking the allocation, Lead Counsel shall employ the same test applicable in the Sixth Circuit in ensuring the reasonableness of fees.  *See Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (factors include "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.").

Final Reimbursement of Expenses

13.     In the Motion for Final Approval, Class Counsel provided updated information on the expenses incurred in the prosecution of this case.  This Court hereby modifies its previous grant of reimbursement of expenses and approves reimbursement of $89,580.15 in expenses, which expenses were reasonable and necessary to the representation of the Class.

Entry of Final Judgment Binding on the Class and Dismissal of the Case With Prejudice

---

[25] *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at **17-18 (E.D. Pa. June 2, 2004) (citation omitted, alteration in original); *see also In re Copley Pharm., Inc.*, 50 F. Supp. 2d 1141, 1148 (D. Wy. 1999).

[26] *In re Prudential Ins. Co.*, 148 F.3d 283, 329 n.96 (3d Cir. 1998); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173 (3d Cir. 2005) (lead counsel given authority to allocate fees awarded by Court).

[27] *In re Automotive Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2008 WL 63269, at *8 (E.D. Pa. Jan. 3, 2008) (Co-Lead Counsel shall allocate fees, but the Court retains jurisdiction to address any disputes).

14.     No class member timely and validly requested exclusion from the class, other than those already on file in *Rite Aid Corporation et al v. King Pharmaceuticals, Inc. et al* (C.A. 1:13-cv-00005) and *Walgreen Co. et al v. King Pharmaceuticals, Inc. et al* (C.A. 1:12-cv-00203) and specified in footnote 1.  With those exceptions, the rest of the class therefore is, and will forever remain, bound by this Order and Final Judgment.

15.     This class action is dismissed with prejudice and in its entirety, on the merits, as to Defendants.  This dismissal shall not affect, in any way, Direct Purchaser Class Plaintiffs' or class members' rights to pursue any claims other than those released, as set forth in the Settlement Agreement.

16.     Direct Purchaser Class Plaintiffs and all members of the class are permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any released claims, as set forth in the Settlement Agreement, against any released party, either directly, individually, representatively, derivatively, or in any other capacity, by whatever means, in any local, state, or federal court, or in any agency or other authority or arbitral or other forum wherever located.

17.     In no event shall Defendants be obligated to pay anything in addition to the $73 million settlement fund created pursuant to the Settlement Agreement, including without limitation, attorney fees, awards to the named class representatives for their efforts on behalf of the class, escrow costs, taxes, or any other cost or expense arising from or to be paid as part of the settlement.

18.     This Order and Final Judgment does not settle or compromise any claims by Plaintiffs or the class against persons or entities other than the released parties, as set forth in the Settlement Agreement.  All rights against any other person or entity are specifically reserved.

19.     The settlement, this Order and Final Judgment, and/or any and all negotiations, documents, and discussions associated with it shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any kind, including without limitation of any violation of any statute or law or any liability or wrongdoing by Defendants or an acknowledgement of defenses by Direct Purchaser Class Plaintiffs, or the truth of any of the claims or allegations contained in any pleading in this case or the standing of any party to assert claims against Defendants or defenses against Direct Purchaser Class Plaintiffs, and evidence thereof shall not be discoverable or used directly or indirectly, by any party or any third party, in any way, whether in this class action or in any other action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, tribunal, administrative agency, regulatory body or other similar entity, provided, however, that nothing contained herein shall preclude use of the Settlement Agreement or this Order and Final Judgment in any proceeding to enforce the Settlement Agreement.

20.     Without affecting the finality of this Order and Final Judgment, this Court retains exclusive and continuing jurisdiction for two years from the entry of this Order over the settlement and the Settlement Agreement, including the Settlement Fund and the administration, consummation, and interpretation of the settlement and Settlement Agreement.

21.     The escrow account established by the parties is hereby approved by the Court. Defendants have deposited $73 million as the settlement fund into that escrow account pursuant to the Settlement Agreement, and that escrow fund, including any accrued interest, is approved as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder.

22.     Pursuant to Federal Rule of Civil Procedure 54, the Court finds that there is no

just reason for delay and hereby directs the entry of final judgment of dismissal forthwith as to Defendants.

23.     There being no other issues remaining in these case, the Court **DIRECTS** the Clerk of Court to CLOSE the Direct Purchaser Class cases: Nos 2:12-cv-83 (Lead Case); 1:12-cv-181; 1:12-cv-185; and 1:12-cv-163.

**SO ORDERED.**

**ENTER:**


**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**


**ENTERED AS A JUDGMENT**
    **s/ Debra C. Poplin**
    **CLERK OF COURT**