ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN
ALEXANDRA S. BERNAY
CARMEN A. MEDICI
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LINCOLN ADVENTURES, LLC, a Delaware Limited Liability Company, and MICHIGAN MULTI-KING, INC., a Michigan Corporation, on Behalf of Themselves and All Those Similarly Situated, | ) ) ) ) ) ) | No. 2:08-cv-00235-CCC-JAD  CLASS ACTION  JOINT DECLARATION OF RACHEL L. JENSEN AND ROBERT S. SCHACHTER IN |
| Plaintiffs, | ) ) ) | SUPPORT OF PLAINTIFFS' MOTIONS FOR: (1) FINAL APPROVAL OF PARTIAL CLASS |
| vs. | ) ) ) | ACTION SETTLEMENT; AND (2) AN AWARD OF ATTORNEYS' |
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON MEMBERS OF SYNDICATES, et al. | ) ) ) ) | FEES AND EXPENSES/CHARGES AND SERVICE AWARDS |
| Defendants. | ) ) ) | |

# TABLE OF CONTENTS

**Page**

I.      OVERVIEW ...................................................................................... 2

II.     INITIATION AND STAY OF THE ACTION ............................................ 7

III.    LAW AND DISPOSITIVE MOTION PRACTICE ...................................... 8

        A.    Defendants' Motion to Dismiss the RAC ............................... 8

        B.    Second Amended Complaint ................................................. 8

        C.    Defendants' Motions to Dismiss the Second Amended
              Complaint ............................................................................. 9

IV.     DISCOVERING THE FACTS AND PREPARING FOR TRIAL ................ 9

        A.    Factual Investigation ......................................................... 10

        B.    Document Discovery of Defendants .................................... 11

        C.    Deposition Discovery ......................................................... 12

V.      DISCOVERY MOTION PRACTICE ..................................................... 16

VI.     RESPONDING TO DEFENDANTS' DISCOVERY TO
        PLAINTIFFS ................................................................................. 19

VII.    WORKING WITH EXPERTS ............................................................. 19

VIII.   THE PARTIES' ARM'S-LENGTH SETTLEMENT
        NEGOTIATIONS ............................................................................ 20

IX.     THE BENEFITS OF THE SETTLEMENT TO CLASS MEMBERS ......... 23

X.      COMPLIANCE WITH THE COURT-APPROVED NOTICE PLAN ........ 25

XI.     THE REQUESTED ATTORNEYS' FEES AND EXPENSE
        AWARD, AND SERVICE AWARDS ARE REASONABLE .................... 26

        A.    The Requested Service Awards Are Reasonable ................ 26

        B.    The Requested Attorneys' Fees Are Reasonable ............... 27

4817-0476-0736.v1

**Page**

C.    Plaintiffs' Counsel's Litigation Expenses ..........................................30

We, Rachel L. Jensen and Robert S. Schachter, hereby jointly declare and state as follows:

1.     Rachel L. Jensen ("Jensen") is a member of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Class Counsel in the Action.[1]  Jensen is a member in good standing of the State Bar of California and admitted *pro hac vice* before this Court.

2.     Robert S. Schachter ("Schachter") is a partner in Zwerling, Schachter & Zwerling, LLP ("Zwerling Schachter") and Class Counsel in the Action. Schachter is a member in good standing of the State Bar of New York and admitted *pro hac vice* before this Court.

3.     We are over 18 years of age and have personal knowledge of the facts stated in this Declaration, unless otherwise indicated.  If called as a witness, we could and would testify competently thereto.

4.     We submit this Joint Declaration in support of: (a) Plaintiffs' Motion for Final Approval of Partial Class Action Settlement; and (b) Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses/Charges and Service Awards.

---

[1]     Hereafter, capitalized terms shall have the same meaning as set forth in the Stipulation of Partial Class Action Settlement dated April 9, 2019 ("Agreement"), which is attached as Exhibit A to the Declaration of Rachel L. Jensen in Support of Plaintiffs' Motion for Preliminary Approval of Partial Class Action Settlement.  *See* Dkt. 89-2 at 8-69.

5.     Our knowledge of the matters stated below is based on our active participation in all material aspects of the prosecution and partial settlement of this Action (the "Partial Settlement") from its commencement through the present, as well as our discussions and communications with our clients, and other Plaintiffs' Counsel.

## I.     OVERVIEW

6.     Since we brought this Action, our two firms Robbins Geller and Zwerling Schachter and our co-counsel[2] (together, "Plaintiffs' Counsel") have diligently prosecuted this Action for more than 12 years, and counting.  Plaintiffs' Counsel have represented the best interests of the Settlement Class in the face of the formidable defense mounted by Defendants, including the Settling Defendants, as is evident by the exceptional result achieved to date.

7.     A glance at the dockets[3] – with at least 430 separate entries relating to this case – demonstrates on its face the hard work and sustained effort that this litigation has required of Plaintiffs and their counsel.  All told, prior to executing the Agreement in April 2019, the Parties had briefed more than 17 motions, including 2

---

[2]     The other Plaintiffs' Counsel are: Cohn Lifland Pearlman Herrmann & Knopf LLP; Bonnett, Fairbourn, Friedman & Balint, P.C.; Foote, Mielke, Chavez & O'Neil, LLC; Cafferty Clobes Meriwether & Sprengel LLP; and David M. Foster, P.C.

[3]     The record in this Action is set out in both the docket for the Action as well as the docket in MDL 1663.

motions to dismiss and more than a dozen discovery motions (even more if you count discrete issues), both here and in the United Kingdom.

8.     The Partial Settlement was achieved only after our firms: (a) engaged in an extensive factual investigation; (b) filed a complaint, which was twice amended, to set forth the detailed factual bases for the Claims; (c) successfully opposed dispositive motions; (d) served requests for production of documents which included 57 individual requests for production; (e) reviewed and analyzed more than 1.8 million pages of documents; (f) propounded interrogatories; (g) propounded a data request; (h) engaged in extensive meet-and-confer efforts with Defendants about their productions, electronically stored information ("ESI") and documents; (i) took and defended 45 depositions (with additional depositions tabled pending the outcome of pending discovery motions); (j) litigated (and continue to litigate) more than a dozen discovery motions; (k) retained counsel in London to assist with discovery in the United Kingdom; (l) retained experts on issues germane to the case; and (m) engaged in extensive settlement negotiations spanning seven years.

9.     Plaintiffs' Counsel negotiated the Partial Settlement under the auspices of Court-appointed Settlement Master, the Honorable Layn R. Phillips (ret.) ("Judge Phillips").   As detailed in the firm resumes of Plaintiffs' Counsel, attached as exhibits to the individual Declarations that are filed concurrently herewith, we have decades of experience in complex class actions, including those involving the

4817-0476-0736.v1

insurance industry, RICO claims, as well as unfair competition and antitrust claims. We have represented Plaintiffs and the Settlement Class by diligently litigating this Action and securing this Partial Settlement, while still litigating against the Defendants not participating in this Partial Settlement pending before the Court (the "Non-Settling Defendants").

10.     Before signing the Agreement, the Parties participated in at least six arm's-length in-person mediation sessions overseen by Judge Phillips, including: (a) a mediation session in New York City in October 2012; (b) a two-day mediation in London in September 2013; (c) a mediation session in May 2016; and (d) a two-day mediation in New York City in April 2018.  The Parties' lengthy arm's-length settlement efforts are detailed in Section VIII, below.

11.     We are aware of the risks that Plaintiffs face in this case as with any complex class action, including the potential of not being able to move forward as a class action, losing on summary judgment, and/or a loss at trial or in subsequent appeals.[4]  Under any of those scenarios, the Settlement Class would receive nothing for their Claims.  In light of the inherent risks of litigation, we believe that the Agreement is fair, adequate, and reasonable and in the best interests of Plaintiffs and

---

[4]     Given the ongoing litigation against the Non-Settling Defendants, specific risks will not be discussed here.

4817-0476-0736.v1

the Settlement Class, particularly given the possibility of a further recovery down the line from the Non-Settling Defendants.

12.     While we strongly believe in the merits of Plaintiffs' Claims, like all complex litigation, we also recognize that litigating the Claims to trial presents substantial risks.  Yet in the face of these risks, we have aggressively litigated (and continue to litigate) the Claims for years on a fully contingent basis.  In doing so, we developed substantial evidence in support of the Claims.  We are confident, therefore, that the Partial Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

13.     During the past 12 years litigating against 23 foreign Defendants, Plaintiffs' Counsel have incurred more than $1.85 million in litigation costs for the common benefit of the Settlement Class, including the pursuit of document and deposition discovery from Defendants and third parties located in the United Kingdom, conducting six mediation sessions with Judge Phillips on two continents, and engaging in substantial expert analysis.

14.     The Named Plaintiffs, Lincoln Adventures, LLC ("Lincoln Adventures") and Michigan Multi-King, Inc. ("MMK"), have expended substantial time and energy in this Action since 2007.  Throughout the pendency of this Action, they have monitored the case through discussions with counsel and reviewed important pleadings.  They have searched for, and produced relevant documents; sat

- 5 -

for full-day depositions; and traveled to, and participated in, multi-day mediation sessions with Judge Phillips in both London and New York.  Plaintiffs have, and continue to, adequately represent the interests of the Settlement Class and have no conflicts with other Settlement Class Members.

15.     Plaintiffs' Counsel have undertaken substantial work over the past decade in investigating, prosecuting, and reaching this Partial Settlement.  Robbins Geller alone has expended more than 15,000 hours in the prosecution of this Action through May 31, 2019, including thousands of hours each by Rachel Jensen and Carmen Medici.[5]  Zwerling Schachter has expended nearly 9,000 hours in the prosecution of this Action through May 31, 2019, including thousands of hours collectively by Robert Schachter, Dan Drachler and Ana M. Cabassa.[6]

16.     Other Plaintiffs' Counsel collectively expended more than 10,000 hours in the prosecution of the Action through May 31, 2019.[7]  We have expended

---

[5]     A more detailed description of the efforts, time and advancement of costs by Robbins Geller is set forth in the separate Declaration of Rachel L. Jensen dated August 14, 2019 (the "Jensen Declaration").

[6]     A more detailed description of the efforts, time and advancement of costs by Zwerling Schachter is set forth in the separate Declaration of Robert S. Schachter dated August 6, 2019 (the "Schachter Declaration").

[7]     A more detailed description of the efforts, time and advancement of costs by other Plaintiffs' Counsel is set forth in the separate Declarations of Van Bunch (dated August 7, 2019); Ellen Meriwether (dated August 7, 2019); Robert Foote (dated July 25, 2019); Peter S. Pearlman (dated July 18, 2019); and David M. Foster (dated July 18, 2019) (the "Other Plaintiffs' Counsel Declarations").

- 6 -

valuable resources to litigate this Action where appropriate, including staffing senior and junior partners, associates, staff attorneys, law clerks, paralegals, investigators, and information technology personnel.

## II.   INITIATION AND STAY OF THE ACTION

17.   In July 2007, Robbins Geller and Zwerling Schachter filed this nationwide class action on behalf of Lincoln Adventures and MMK on behalf of purchasers of Contracts of Insurance purchased on the Lloyd's Insurance Market, which insured risks in the United States.

18.   Shortly thereafter, the Action was "tagged" by certain Defendants to Multidistrict Litigation ("MDL") 1663, then pending in this District before former District Judge Garrett Brown Jr. (ret.), as a tag-along action.

19.   On December 11, 2007, the Judicial Panel on Multidistrict Litigation transferred this case to MDL 1663 (MDL Dkt. 232).

20.   Upon transfer of the Action to this District, former District Judge Brown stayed this case.  Despite Plaintiffs' efforts (*see, e.g.*, MDL Dkts. 1606, 1658), requests to lift the stay were denied (*see, e.g.*, MDL Dkts. 1142, 1625, 1681).

21.   It was not until October 20, 2011, after the case was transferred to this Court, that the stay in this case was finally lifted (MDL Dkt. 1922).

## III.    LAW AND DISPOSITIVE MOTION PRACTICE

22.    On November 14, 2012, at the Court's direction, Plaintiffs filed a Revised First Amended Class Action Complaint ("RAC") (MDL Dkt. 2312).

### A.    Defendants' Motion to Dismiss the RAC

23.    On December 4, 2012, Defendants filed motions to dismiss the RAC (MDL Dkts. 2334, 2500, 2501), Plaintiffs opposed on March 25, 2013 (MDL Dkts. 2441, 2442, 2502), and Defendants replied on April 30, 2013 (MDL Dkt. 2503).

24.    While Defendants' motions to dismiss the RAC were pending before the Court, and after the Parties reached impasse at the conclusion of their two-day September 2013 mediation in London, Plaintiffs filed a motion for leave to amend the RAC on November 4, 2013 (MDL Dkt. 2603).

### B.    Second Amended Complaint

25.    On November 17, 2015, the Court directed Plaintiffs to submit a revised proposed second amended complaint and, in February 2016, the Court granted leave for Plaintiffs to file it.

26.    On February 12, 2016, Plaintiffs filed their SAC on behalf of themselves and a putative class (MDL Dkt. 2737).  The SAC brought violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c)-(d); civil conspiracy; and unjust enrichment alleging that Defendants and other co-conspirators operating in the Lloyd's Market exploited the structure of

4817-0476-0736.v1

Lloyd's Corporation in order to collaborate rather than compete in the pricing of insurance products sold to U.S. insureds.

### C. Defendants' Motions to Dismiss the Second Amended Complaint

27.    On March 28, 2016, Defendants filed motions to dismiss the SAC (MDL Dkts. 2762-2770), Plaintiffs opposed on April 22, 2016 (MDL Dkt. 2775) and Defendants replied on May 13, 2016 (MDL Dkts. 2784-2788).  The Court heard oral argument on the motions on January 19, 2017 (MDL Dkt. 2847).

28.    On August 23, 2017, the Court denied Defendants' motions (MDL Dkts. 2877-2878).

## IV.  DISCOVERING THE FACTS AND PREPARING FOR TRIAL

29.    From June 2012 to September 2013, the Parties conducted fact discovery.

30.    During the discovery period, Defendants produced over 1.8 million pages of documents, and Plaintiffs took 45 depositions of the Defendants (with more noticed pending the outcome of outstanding discovery motions), including the Settling Defendants, and third parties, including brokers.

31.    The Parties were unable to resolve a number of discovery disputes regarding the scope of discovery and outstanding documents and depositions, which resulted in the filing of discovery motions in 2013 (*see, e.g.*, MDL Dkts. 2495, 2513,

2530, 2537, 2544, 2548, 2553, 2579, 2586, and 2591), some of which remain pending, *see also* Section V below (detailing discovery disputes).

32.    Discovery will continue as to the Non-Settling Defendants, pending decisions on discovery motions *sub judice* before Magistrate Judge Dickson.[8]

### A.    Factual Investigation

33.    Prior to commencing this Action, Class Counsel engaged in a thorough investigation of the claims, including review of the law, as well as the civil and criminal proceedings and government witness interviews.

34.    Throughout the litigation, Class Counsel have continued to develop the factual record for summary judgment and trial.  We have scoured publicly available information, conducted witness interviews, and spoken with industry experts.  These efforts assisted us in crafting the complaint, formulating Plaintiffs' formal discovery requests, and targeting certain documents and witnesses for fact depositions.  To protect Class Counsel's work product in light of the continuing litigation against the Non-Settling Defendants, we do not itemize all of our investigatory efforts here, but will provide further details to the Court *in camera* upon request.

---

[8]    As part of the Agreement, Plaintiffs agreed to stay discovery of the Settling Defendants pending this Court's approval of the Partial Settlement.

**B.     Document Discovery of Defendants**

35.     On May 30, 2012, the Parties served Rule 26 disclosures.  The Parties supplemented their Rule 26 disclosures on October 16, 2017.

36.     On June 8, 2012, Plaintiffs served discovery demands, including interrogatories, document requests and data requests.  Defendants responded to the discovery on July 23, 2012 and have since produced thousands of documents. Defendants also served 26 privilege and redactions logs, spanning over 770 pages and 5,300 entries, spurring discovery motions practice before Judge Dickson.

37.     Plaintiffs also served third-party subpoenas on Marsh & McLennan Companies ("Marsh"), Aon Corporation ("Aon"), and Willis North America, Inc. ("Willis" and together with Marsh and Aon the "Third-Party Brokers").  During 2013, the Third-Party Brokers responded to the subpoenas and produced documents.

38.     Plaintiffs also sought to obtain documents from the Lloyd's Market Association through a Letter of Request granted by this Court.  We hired UK Counsel to assist us in pursuing the documents, however, on June 6, 2014, the UK High Court of Justice Queen's Bench set aside the Letter of Request.

39.     Class Counsel spent many hours preparing for meet-and-confer conferences with counsel for Defendants and third parties, conducting those conferences, and preparing correspondence memorializing those conversations. This meet-and-confer process was necessary to address Defendants' numerous

objections to Plaintiffs' requests, numerous ESI and data issues, issues relating to the collection and search for responsive documents, and issues relating to the vast claims of privilege. Defendants produced privilege logs asserting claims of privilege to thousands of documents which required further review and analysis of these privilege claims as well as an additional meet and confer process. All told, the meet-and-confer processes included dozens of telephone conferences and formal written communications. And where the parties were unable to reach agreement, Plaintiffs brought motions to compel before the Court as detailed below in Section V.

### C.   Deposition Discovery

40.   In December 2012, Plaintiffs commenced taking depositions and continued until September 2013. The following is a schedule of those depositions:

| Party | Date | Witness Name | Type of Depo | Location |
|---|---|---|---|---|
| Syndicate 0435 | December 12, 2012 | Ian Bridge | 30(b)(6) | Ropes & Gray – London, UK |
| Syndicate 0435 | December 12, 2012 | Paul Cuervorst | 30(b)(6) | Ropes & Gray – London, UK |
| Syndicate 0435 | December 12, 2012 | Gerald Lynch, | 30(b)(6) | Ropes & Gray – London, UK |
| Syndicate 0102 | December 13, 2012 | Paul Leonard Toomey | 30(b)(6) | Ropes & Gray – London, UK |
| Syndicate 0033 | January 16, 2013 | Robert Britton | 30(b)(6) | Ropes & Gray – London, UK |
| Syndicates 1003 & 2003 | January 17, 2013 | Paul Brand | 30(b)(6) | Ropes & Gray – London, UK |
| Syndicate 0382 | January 22, 2013 | Mervyn Sudgen, | 30(b)(6) | Ropes & Gray – London, UK |
| Syndicate 0510 | January 24, 2013 | Tim Prifti | 30(b)(6) | Ropes & Gray – London, UK |

| Party | Date | Witness Name | Type of Depo | Location |
|---|---|---|---|---|
| Syndicates 0623 & 2623 | January 25, 2013 | Sian Coope | 30(b)(6) | Ropes & Gray – London, UK |
| Syndicate 2987 | February 7, 2013 | Nicholas Davies | 30(b)(6) | Ropes & Gray – Chicago, IL |
| Syndicate 1183 | April 9, 2013 | Mark Johnson | 30(b)(6) | Ropes & Gray – London, UK |
| Syndicates 1084 & 1096 | April 10, 2013 | Robert Stuchbery | 30(b)(6) | Ropes & Gray – London, UK |
| Syndicate 2020 | April 11, 2013 | David Foreman | 30(b)(6) | Ropes & Gray – London, UK |
| Syndicates 0570 & 0609 | May 1, 2013 | James Lee | 30(b)(6) | Opus2 International 10 London, UK |
| Syndicate 2001 | May 2, 2013 | Tony Holt | 30(b)(6) | Phelps Dunbar, London, UK |
| Syndicate 2791 | May 23, 2013 | Adrian Duggleby | 30(b)(6) | Edwards Wildman, London, UK |
| Syndicate 2791 | May 24, 2013 | Sibohan McAuley | 30(b)(6) | Edwards Wildman, London, UK |
| Syndicate 2488 | June 28, 2013 | Peter Seymour | 30(b)(6) | International Dispute Resolution Centre, London, UK |
| Syndicate 2488 | June 28, 2013 | Maxwell Gibbs | 30(b)(6) | International Dispute Resolution Centre, London, UK |
| Syndicates 1084 & 1096 | July 3, 2013 | Edward R. Lines | 30(b)(1) | Ropes & Gray – London, UK |
| Syndicates 1003 & 2003 | July 9, 2013 | Nicolas Burkinshaw | 30(b)(1) | Ropes & Gray – London, UK |
| Syndicate 0033 | July 10, 2013 | Stephen Quick | 30(b)(1) | Ropes & Gray – London, UK |
| Syndicate 2791 | July 11, 2013 | Bill Katesmark | 30(b)(1) | Edwards Wildman, London, UK |

- 13 -

| Party | Date | Witness Name | Type of Depo | Location |
|---|---|---|---|---|
| Syndicate 2791 | July 12, 2013 | Jane Poland | 30(b)(1) | Edwards Wildman, London, UK |
| Syndicate 2791 | July 22, 2013 | David Shipley | 30(b)(1) | Edwards Wildman, London, UK |
| Syndicate 2791 | July 24, 2013 | Ben Garston | 30(b)(1) | Edwards Wildman, London, UK |
| Syndicate 1183 | July 24, 2013 | Jane Clouting | 30(b)(1) | 5 New St. Square – London, UK |
| Syndicate 2791 | July 25, 2013 | Andrew Groom | 30(b)(1) | Edwards Wildman, London, UK |
| Syndicate 0382 | July 26, 2013 | Tim Griffin | 30(b)(1) | 5 New St. Square – London, UK |
| Syndicates 1003 & 2003 | August 14, 2013 | Lorraine Mullins | 30(b)(1) | 5 New St. Square – London, UK |
| Syndicate 0033 | August 16, 2013 | Jason Jones | 30(b)(1) | 5 New St. Square – London, UK |
| Syndicate 2001 | August 23, 2013 | James Illingworth | 30(b)(1) | Phelps Dunbar, London, UK |
| Marsh & McLennan Cos. (third party) | August 29, 2013 at 9:00am | Tom Davies | 30(b)(6) | Willkie Farr & Gallagher LLP, London, UK |
| Marsh & McLennan Cos. (third party) | August 30, 2013 at 9:00am | Aaron Cray | 30(b)(6) | Willkie Farr & Gallagher LLP, London, UK |
| Syndicates 0623 & 2623 | September 3, 2013 | Neil Maidment | 30(b)(1) | Ropes & Gray – London, UK |
| Syndicates 0623 & 2623 | September 5, 2013 | Chris Warrior | 30(b)(1) | Ropes & Gray – London, UK |
| Syndicate 2020 | September 6, 2013 | Nigel Guillaume-Smith | 30(b)(1) | Ropes & Gray – London, UK |

- 14 -

| Party | Date | Witness Name | Type of Depo | Location |
|---|---|---|---|---|
| Syndicates 1084 & 1096 | September 12, 2013 | Chris Wood | 30(b)(1) | Ropes & Gray – London, UK |
| Syndicate 0033 | September 13, 2013 | Simon Williams | 30(b)(1) | Ropes & Gray – London, UK |
| Aon | September 16, 2013 | Andrew Laing | 30(b)(6) | US Legal Video Conference Center, London, UK |
| Syndicate 2001 | September 20, 2013 | James Nugent | 30(b)(1) | Phelps Dunbar, London, UK |
| Syndicates 0570 & 0609 | September 24, 2013 | Anil Vaidya | 30(b)(1) | International Dispute Resolution Center, London, UK |
| Syndicates 0570 & 609 | September 26, 2013 | Nick Marsh | 30(b)(1) | International Dispute Resolution Center, London, UK |
| Syndicates 0570 & 609 | September 27, 2013 | Christine Dandridge | 30(b)(1) | International Dispute Resolution Center, London, UK |
| Willis | September 30, 2013 | John Robert | 30(b)(6) | Sullivan & Cromwell, London UK |
| Willis | September 30, 2013 | Edwin Muir | 30(b)(6) | Sullivan & Cromwell, London UK |

41.     Defendants took the deposition of the Plaintiffs in December 2012.

| Party | Date | Witness Name | Type of Depo | Location |
|---|---|---|---|---|
| Lincoln Adventures | December 18, 2012 | Conrad Schuberth | 30(b)(6) | Robbins Geller – Boca Raton FL |

- 15 -

| Party | Date | Witness Name | Type of Depo | Location |
|-------|------|-------------|--------------|----------|
| MMK | December 19, 2012 | Robert Nicolai | 30(b)(6) | Robbins Geller – Boca Raton FL |

## V.    DISCOVERY MOTION PRACTICE

42.    When the meet-and-confer process broke down, Class Counsel vigorously represented the interests of the Settlement Class by filing discovery motions.  Class Counsel also defended discovery motions brought by Defendants.

43.    In total, the Parties filed more than a dozen substantive discovery motions spanning hundreds of pages.

44.    On September 12, 2012, after Defendants refused to provide any class-wide discovery, Plaintiffs were forced to file a motion to compel Defendants to participate in discovery (MDL Dkt. 2158). This motion was ruled on in Plaintiffs' favor on September 26, 2012 (MDL Dkt. 2201).

45.    Also on September 12, 2012, Syndicate 2791 moved to compel the answer to its contention interrogatories (MDL Dkts. 2157, 2169).  Plaintiffs defended against this motion, but ultimately were ordered to answer the contention interrogatories with information then currently available (MDL Dkt. 2190).

46.    On April 26, 2013, Plaintiffs moved to compel Defendants to provide basic information related to lineslip agreements, binding authorities and other information, including data referred to in the RAC (MDL Dkt. 2495). This was the

subject of dozens of emails and letters between the parties and with the Court. This motion was granted on August 23, 2018 (Dkt. 64).

47.    On May 10, 2013, Plaintiffs filed a motion to compel the production of documents that Plaintiffs contended were improperly withheld on privilege grounds (MDL Dkt. 2513). This motion has not yet been decided, but Plaintiffs have taken steps to prepare to update the motion when it arises again as to the Non-Settling Defendants.

48.    On May 10, 2013, Plaintiffs also moved to compel Defendants to provide the definitions of certain data fields they had produced so Plaintiffs could understand the data that was produced in the litigation (MDL Dkt. 2513).  This motion became moot when an agreement for Xchanging data was reached which included definitions of data fields.  *See* ¶53 below.

49.    On May 10, 2013, Plaintiffs also moved to compel Defendants to search the files of custodians Plaintiffs alleged would have responsive documents to their requests (MDL Dkt. 2513).  This motion has not yet been resolved.

50.    On May 10, 2013, Plaintiffs also moved to compel Defendants to search relevant custodians' files using search terms that would be calculated to gather responsive documents to Plaintiffs' requests (MDL Dkt. 2513). This motion has not yet been resolved.

4817-0476-0736.v1

51.     On June 24, 2013, Defendants moved for a protective order seeking to limit the number of depositions that could be taken (MDL Dkt. 2544). This motion was tabled by agreement of the parties.

52.     On June 24, 2013, Defendants moved for a protective order seeking to prevent so-called "apex depositions" (MDL Dkts. 2544, 2548, 2553). This motion was tabled by agreement of the parties.

53.     On September 26, 2013, Plaintiffs moved the Court for certain data held by a Defendant-vendor, Xchanging (MDL Dkts. 2579, 2586, 2591). This motion was the subject of several letters to the Court, multiple rounds of oral argument, discovery related to the Xchanging agreements, and countless correspondence. *See, e.g.*, Dkts. 52, 54, 55, 63, 64, 65, 66, 67, 69, 70, 71, 72, 73, 74, 76, 77, 78, 79, 80, 83, 90.  On August 2, 2019, the Non-Settling Defendants provided the Xchanging data, which Plaintiffs are in the process of reviewing.

54.     On March 20, 2018, certain Defendants moved to compel Plaintiffs to provide a damages analysis (Dkts. 46, 50, 51). This motion was mostly granted (Dkt. 90), and has been the subject of current analysis of Xchanging data.

55.     All of these motions were fully briefed and argued where applicable. Each was hard fought to get the discovery Plaintiffs need to prove their Claims on behalf of themselves and the Settlement Class at trial.

## VI.   RESPONDING TO DEFENDANTS' DISCOVERY TO PLAINTIFFS

56.   On June 8, 2012, Defendants served discovery demands on Plaintiffs, including 79 interrogatories and 67 document requests.

57.   On July 23, 2012, Plaintiffs responded with their responses and objections and began the process of producing documents responsive to Defendants' requests and answering their interrogatories.

58.   Both Lincoln Adventures and MMK searched through years of financial records, policy purchase information and insurance policies in response to Defendants' document requests.

59.   On December 17-18, 2012, a corporate representative of Lincoln Adventures (Conrad Schuberth) spent two days preparing for and sitting for a full-day deposition.

60.   On December 18-19, 2012, a corporate representative of MMK (Robert Nicolai) spent two days preparing for and sitting for a full-day deposition.

## VII.  WORKING WITH EXPERTS

61.   Since the outset of the litigation, Plaintiffs have retained the services of economic and insurance-industry experts. The experts have assisted Plaintiffs in drafting targeted discovery demands and in analyzing Defendants' relevant productions.  The experts have also had significant involvement in the identification of documents and data necessary for conducting a damage analysis and in identifying

4817-0476-0736.v1

the shortfalls in Defendants' productions.  They have assisted Plaintiffs with the presentation and resolution of various discovery motions.  The experts also contributed to the preparation of mediation presentations.

62.    We do not here detail all of our work with Plaintiffs' experts because the litigation is continuing against the Non-Settling Defendants.  We will provide further detail to the Court *in camera* upon request.

## VIII.  THE PARTIES' ARM'S-LENGTH SETTLEMENT NEGOTIATIONS

63.    Before signing the Agreement, the Parties participated in at least six arm's-length in-person mediation sessions overseen by Judge Phillips, including: (a) a mediation session in New York City in October 2012; (b) a two-day mediation in London in September 2013; (c) a mediation session in May 2016; and (d) a two-day mediation in New York City in April 2018.  All Defendants attended at least part of each of the mediations with Judge Phillips.

64.    On October 25, 2012, the Parties engaged in arm's-length negotiations at a mediation session in New York City with Judge Phillips, but were unable to reach any resolution with any Defendant at the time.

65.    On September 23-24, 2013, the Parties engaged in a two-day mediation in London, U.K., under the auspices of Judge Phillips, but were again unable to reach any resolution at that time.

66.     On May 17, 2016, the Parties engaged in a mediation session in New York City with Judge Phillips, which led to months of negotiations between Plaintiffs and Defendant Syndicate 2001 ("Syndicate 2001") and culminated in a conditional "ice breaker" Term Sheet on January 10, 2017 (the "2017 Conditional Term Sheet").

67.     On April 23-24, 2018, after the denial of Defendants' motion to dismiss the SAC, the Parties engaged in a two-day mediation overseen by Judge Phillips in New York City.

68.     As a result of the negotiations at the April 2018 mediation, Plaintiffs reached agreement to resolve the Action with Defendant-Syndicates 0102 ("Syndicate 0102"), 0382 ("Syndicate 0382"), 0435 ("Syndicate 0435") and 1886 ("Syndicate 1886") and entered into a Term Sheet on April 24, 2018 (the "April 24 Term Sheet").

69.     At the conclusion of the two-day session, certain of the Parties continued settlement negotiations via telephone and with the assistance of Judge Phillips.   Because of those continued negotiations, Plaintiffs and Defendant Syndicates 0623 ("Syndicate 0623"), 2623 ("Syndicate 2623"), 2987 ("Syndicate 2987"), 0033 ("Syndicate 0033") and 1183 ("Syndicate 1183") entered into a Term Sheet on May 14, 2018 (the "May 14 Term Sheet").

70.     Because of negotiations at the mediation and in the months that followed, Plaintiffs and Defendant Syndicates 0570 ("Syndicate 0570") and 0609 ("Syndicate 0609") agreed in principal on October 15, 2018, to resolve this Action against Syndicates 0570 and 0609.

71.     Finally, as a result of negotiations at the mediation and in the months that followed, on February 26, 2019, Plaintiffs and Defendant Syndicate 0958 ("Syndicate 0958") reached an agreement to settle this Action as to it.

72.     All of the negotiations, most of which were in front of Judge Phillips or following a mediation in front of him, were hard-fought and time-consuming and at arm's length.

73.     Following the execution of the 2017 Conditional Term Sheet with Syndicate 2001, the April 24 Term Sheet, the May 14 Term Sheet, and the agreements in principal with Syndicates 0570, 0609, and 0958, Plaintiffs and the Settling Defendants (the "Settling Parties") negotiated the Agreement and its nine exhibits memorializing the terms of the Settling Parties' agreement.  Before the Settling Parties came to final agreement on the Partial Settlement, dozens of drafts of these documents were exchanged and conference calls conducted over months to iron out the differences in documenting the Partial Settlement.

74.     The lengthy procedural record in this Action allowed Class Counsel to evaluate the Partial Settlement's consideration and its reasonableness to the Settlement Class.

75.     This record includes fact discovery, including depositions, and extensive motion practice, as the Court is aware.  Because of this extensive record, Plaintiffs have a keen understanding of the factual and legal issues involved in this Action as well as the relative strengths and weaknesses of Plaintiffs' Claims.

## IX.    THE BENEFITS OF THE SETTLEMENT TO CLASS MEMBERS

76.     The Partial Settlement provides for significant monetary relief and five years of business reforms to the Settlement Class.

77.     The Settlement Amount of $21,950,000, together with interest earned, less court-approved attorneys' fees and litigation expenses, Service Awards (if any), Notice and Administration Expenses, Taxes and Tax Expenses (the "Net Settlement Amount"), will be distributed to those eligible Settlement Class Members who submit timely and valid Claim Forms to the Claims Administrator.

4817-0476-0736.v1

78.    In addition, the Settling Defendants agreed to implement business reforms in the Lloyd's Market for five years.  Specifically, each Settling Defendant[9] agrees to:

(a)    comply with any applicable requirements of the Corporation of Lloyd's or any U.K. regulatory authority on competition law, compensation to producers, and anti-bribery and corruption compliance, including treating customers fairly and paying due regard to their interests and managing conflicts of interest fairly;

(b)    adhere to the requirements of the U.K. Bribery Act applicable to it;

(c)    adhere to the applicable regulations regarding whistleblowing as set by the appropriate U.K. regulatory authority, including maintenance of internal procedures for handling reports made by whistleblowers, education of U.K.-based employees, and appointment of a senior-level employee or director to oversee the integrity, independence and effectiveness of each of the Settling Defendant's policies and procedures on whistleblowing, as may be required by these regulations; and

---

[9]    Syndicate 0102 has not agreed to implement these reforms, as it no longer sells insurance.

(d)    comply with all regulatory and legal requirements relating to the information it is permitted to share with any other syndicate regarding the placement of insurance in the Lloyd's market by U.S. policyholders.

These are significant and meaningful benefits for the Settlement Class.

## X.    COMPLIANCE WITH THE COURT-APPROVED NOTICE PLAN

79.    Pursuant to its May 2, 2019 Preliminary Approval Order ("PAO"), the Court appointed A.B. Data as the Claims Administrator for "the purpose of assisting in the implementation of the Settlement," which included dissemination of the Notices and processing Claim Forms.

80.    The PAO also directed that Claims Administrator establish a website dedicated to the Partial Settlement providing Settlement Class Members with information concerning the Partial Settlement and the important dates and deadlines in connection therewith, as well as access to downloadable copies of the Notices and Claim Form and other Settlement documents.  The website also provides Settlement Class Members the ability to submit a Claim online.

81.    Additionally, pursuant to the PAO, the Claims Administrator maintains a Settlement-specific toll-free telephone number to respond to inquiries regarding the Partial Settlement.

82.     Based on our best understanding, the Claims Administrator timely completed these tasks.  *See* generally Declaration of Eric J. Miller dated August 13, 2019 (the "Miller Decl."), submitted herewith.

83.     The PAO also required that the Notices be posted on our Firms' websites, which was done in May 2019.

84.     The Court-ordered deadline for Settlement Class Members to file objections to the Partial Settlement, Plan of Allocation, an Attorneys' Fees and Expense Award, Service Awards, or to submit a request for exclusion from the Settlement Class, is August 28, 2019.  To date, there have been no objections of any kind, and only six Settlement Class Members have requested exclusion.  Miller Decl., ¶22.  Objections or requests for exclusion after the date of this Declaration will be addressed in Plaintiffs' reply papers on or before September 11, 2019.

## XI.    THE REQUESTED ATTORNEYS' FEES AND EXPENSE AWARD, AND SERVICE AWARDS ARE REASONABLE

### A.    The Requested Service Awards Are Reasonable

85.     Plaintiffs request service awards of $15,000 each for both Lincoln Adventures and MMK (an aggregate of $30,000).  The Action has been ongoing for more than 12 years. The hard work of the Plaintiffs in: (a) bringing the Claims; (b) consulting with counsel to protect the interests of the Settlement Class; (c) providing counsel with information in support of the Claims; (d) responding to Defendants' discovery requests; (e) preparation for and participation in full-day

depositions with intensive questioning by defense counsel; and (f) attending four days of mediation sessions in New York City and London, supports these awards.

86.     Prior to, and throughout, this Action, we have personally worked with the Plaintiffs to gather documents, review pleadings and discovery responses and to prepare for depositions and mediations.  From our interactions with them, we can attest to the time and effort that each undertook to represent the best interests of the Settlement Class.

87.     Based on our involvement in the Action and interactions with the Plaintiffs over the course of the past 12 years, we know that they each contributed dozens if not hundreds of hours to the success of this Action.

88.     Throughout the Action, the Plaintiffs made themselves available for meetings and calls with counsel and provided authorization for Class Counsel to enter into the Partial Settlement on behalf of them and the Settlement Class.

### B.     The Requested Attorneys' Fees Are Reasonable

89.     Plaintiffs' Counsel vigorously prosecuted this Action and continue to prosecute it against the Non-Settling Defendants.  Plaintiffs' Counsel have devoted substantial time and advanced the funds necessary to prosecute this case with no assurance of compensation or repayment.  Their compensation and the award of expenses are entirely contingent upon obtaining a recovery.

4817-0476-0736.v1

90.     Here, Plaintiffs' Counsel diligently and skillfully prosecuted the Action for more than 12 years. As detailed above, these efforts include, among others: (a) conducting a thorough investigation into the Settlement Class's claims; (b) drafting a detailed SAC; (c) successfully opposing Defendants' motions to dismiss; (d) conducting fact discovery, including the review of more than 1.8 million pages; (e) responding to Defendants' discovery; (f) briefing and arguing discovery motions; and (g) working with experts and other consultants.

91.     The quality of the work performed by Plaintiffs' Counsel in achieving the Partial Settlement should also be evaluated in light of the quality of opposing counsel.

92.     We were (and are) opposed by nationally renowned law firms and experienced counsel who spared no expense or argument in the defense of their clients.   In the face of this formidable defense team, Plaintiffs' Counsel were nonetheless able to develop a case that was sufficiently strong to persuade the Court to defeat the motion to dismiss the SAC and to settle with the Settling Defendants on terms that we view as very favorable to the Settlement Class.

93.     Plaintiffs' Counsel will continue to perform legal work on behalf of the Settlement Class through the Fairness Hearing and beyond.   Additional resources will be expended assisting Settlement Class Members with their Claims and related

inquiries and working with the Claims Administrator to ensure the smooth progression of Claim Form processing and distribution of the Net Settlement Fund.

94.     Plaintiffs' Counsel are comprised of some of the preeminent plaintiffs' class action firms in the country, with decades of experience prosecuting such complex actions.  Plaintiffs' Counsel applied their knowledge and experience to obtain a favorable result for the Settlement Class, taking into consideration the risks of further litigation against the Settling Defendants.

95.     Plaintiffs' Counsel's efforts against the Defendants to date have required a substantial investment of time.  Plaintiffs' Counsel have necessarily expended thousands of hours over more than 12 years of litigation, including negotiating the Partial Settlement.[10]

96.     Given the complexity and uniquely challenging nature of this nationwide RICO class action, the responsibility and risk undertaken by Plaintiffs' Counsel, the experience of Plaintiffs' Counsel and counsel for Defendants, and the contingent nature of Plaintiffs' Counsel's agreement to prosecute the case, we respectfully submit that the requested fee award is reasonable and should be approved.

---

[10]     *See* Jensen Declaration, Schachter Declaration and the Other Plaintiffs' Counsel Declarations.

97.     The substantial amount of time (and resulting lodestar) devoted to this Action through May 31, 2019 supports a fee request of one-third of the Settlement Amount.

98.     Plaintiffs' Counsel's time is more than 35,000 hours and is far in excess of what we are seeking in fees relating to the Partial Settlement.  Thus, Plaintiffs' Counsel's lodestar results in a "negative multiplier."[11]

### C.      Plaintiffs' Counsel's Litigation Expenses

99.     The Jensen Declaration, Ex. B; Schachter Declaration, Ex. B; Bunch Declaration, Ex. B; Meriwether Declaration, Ex. B; Foote Declaration, Ex. B; Pearlman Declaration, Ex. B; and Foster Declaration, Ex. B detail expenses – $1,874,797 taken together – incurred by each Plaintiffs' Counsel Firm.[12]

100.    In connection with the Partial Settlement, Plaintiffs' Counsel seek an award of only a portion of their litigation expenses that were reasonably incurred by Plaintiffs' Counsel in the Action for $1,850,000.  Plaintiffs' Counsel incurred these expenses and an award of such expenses was fully contingent.

101.    In addition to the time and expenses incurred by Plaintiffs' Counsel, Robbins Geller also maintained a dedicated account to pay for certain expenditures

---

[11]     The total lodestar of Plaintiffs' Counsel is $20,096,471.  The requested fees, if granted, will result in a multiplier of 0.36 based on current rates.

[12]     *See* Jensen Declaration, Schachter Declaration and the Other Plaintiffs' Counsel Declarations.

directly related to this case (the "Litigation Fund").  Plaintiffs' Counsel contributed

to the Litigation Fund. As demonstrated in the Jensen Declaration, more than

$1 million was contributed to the Litigation Fund and all but $709 was disbursed for

expenses from the Litigation Fund.

I declare under penalty of perjury that the foregoing is true and correct and

this Declaration is executed at San Diego, California, on August 14, 2019.

RACHEL L. JENSEN

I declare under penalty of perjury that the foregoing is true and correct and

this Declaration is executed at Boca Raton, Florida on August 14, 2019.

ROBERT S. SCHACHTER

4817-0476-0736.v1