# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINCOLN ADVENTURES LLC and MICHIGAN MULTI-KING INC., on behalf of themselves and all those similarly situated<br><br>v.<br><br>THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON MEMBERS, *et al.* | Civil Action No.: 08-00235 (CCC)<br><br>OPINION |

**CECCHI, District Judge.**

This matter comes before the Court by way of Plaintiffs' motion for final approval of partial class action settlement, ECF No. 105, and related motion for an award of attorneys' fees, expenses/charges and service awards, ECF No. 106, both filed on August 14, 2019. Plaintiffs previously filed a motion for preliminary approval of partial class action settlement on April 19, 2019. ECF No. 89. On May 23, 2019, the proposed settlement was preliminarily approved and the class was preliminarily certified for settlement purposes. ECF No. 93. The proposed settlement is with the following thirteen Lloyd's Syndicates: 0033, 0102, 0382, 0435, 0570, 0609, 0623, 0958, 1183, 1886, 2001, 2623, and 2987 (collectively referred to herein as "Defendants").[1] ECF No. 89-1 at 9 n.1. The Court has considered all of the submissions filed in connection with the two pending motions and heard argument in support of settlement at a fairness hearing on September 18, 2019, ECF No. 122. For the reasons set forth below, both motions are granted.

---

[1] The following ten Lloyd's Syndicates are not party to this settlement agreement: 0510, 0727, 1003, 1084, 1096, 1245, 2003, 2020, 2488, and 2791. ECF No. 89-1 at 9 n.4. Litigation in this matter will continue with respect to those syndicates. Id.

1

## I. MOTION FOR FINAL APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT

### A. Legal Standard

Under Rule 23 of the Federal Rules of Civil Procedure, the Court must determine first whether certification of the proposed class is appropriate under Rule 23(a) and (b), and then whether the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2). Rule 23(a) has four requirements that the Court must find are met: that (1) "the class is so numerous that joinder of all members is impracticable;" (2) "there are questions of law or fact common to the class;" (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule 23(b) has additional requirements that differ depending on the type of class action. Here, Plaintiffs seek certification under Rule 23(b)(3), which requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit identified nine factors, referred to as the *Girsh* factors, to consider when deciding whether a settlement is fair, reasonable, and adequate. These include:

- the complexity, expense, and likely duration of the litigation;
- the reaction of the class to the settlement;
- the stage of the proceedings and the amount of discovery completed;
- the risks of establishing liability;
- the risks of establishing damages;
- the risks of maintaining the class action through the trial;
- the ability of the defendants to withstand a greater judgment;
- the range of reasonableness of the settlement fund in light of the best possible recovery; &
- the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 157. Additionally, Rule 23(e)(1) requires the Court to ensure reasonable notice was given to all class members who would be bound by the settlement.

The Court considered the parties' arguments and submissions, as well as the lack of any objections.[2] The analysis will start with the four requirements of Rule 23(a), followed by the Rule 23(b)(3) factors, and lastly, the Rule 23(e) and the *Girsh* factors.

### B. Rule 23(a) Analysis

#### 1. Numerosity

The Court preliminarily certified the class as:

> [A]ll persons and entities in the United States (including its territories) who, between January 1, 1997, and March 25, 2019, purchased or renewed a Contract of Insurance with any Lloyd's Syndicates named as a Defendant in the Action. Excluded from the Settlement Class are Released Defendants, Defendants, defendants formerly named as such in the Action, all Lloyd's syndicates, Opt-outs, and judges presiding over the Action and their immediate families.

ECF Nos. 93 at 4, 89-1 at 10. Thousands of class members have been identified nationwide. ECF No. 89-1 at 31. The Court finds this is sufficient to meet the numerosity requirement because joinder of such a large group would be impracticable.

#### 2. Commonality

The Court finds there are common questions of law and fact within the class. Specifically:

- whether Defendants made false or misleading statements or omissions;
- whether Defendants' scheme was furthered by mailings or wires;
- the effect of Defendants' conduct on the price of insurance sold to insureds in the United States during the Class Period;
- whether their conduct violated RICO and/or civil conspiracy laws and/or unjustly enriched them; and
- the nature and extent of monetary damages to which Plaintiffs and Settlement Class are entitled.

---

[2] One conditional objection was submitted, however on the morning of the fairness hearing, a stipulation withdrawing that conditional objection was filed. *See* ECF No. 108, 117.

3

*Id.* at 31-32. The Court finds these common questions sufficient to meet the commonality requirement. *See generally Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

### 3. Typicality

The Court finds that the named Plaintiffs' claims are typical of the proposed class. "Plaintiffs allege that Defendants engaged in a scheme to conceal the lack of competition in the Lloyd's Market. The claims of Plaintiffs, like those of other Settlement Class Members, arise out of the same alleged conduct by Defendants and are based on the same legal theories." ECF No. 89-1 at 33. The Court finds this sufficient to meet the typicality requirement.

### 4. Adequacy of Representation

Adequacy of representation has two components: that the named Plaintiffs' interests are sufficiently aligned with the rest of the class, and that class counsel is qualified to represent the class. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995).

First, the Court finds no indication that there is a conflict between the named Plaintiffs and the rest of the class. As discussed previously for the typicality requirement, the named Plaintiffs' claims are representative of the class as a whole. Under the terms of the settlement, named Plaintiffs receive the same remedy as the rest of the class, with the exception of the request for a service award for named Plaintiffs.

Second, just as the Court found for the purposes of the preliminary settlement approval, the Court finds the law firms of Robbins Geller Rudman & Dowd LLP, and Zwerling, Schachter & Zwerling, LLP are capable of adequately representing the class, both based on their prior experience in class action lawsuits and based on their capable advocacy on behalf of the class in this action. Therefore, the Court finds the requirement of adequacy of representation to be met.

### C. Rule 23(b)(3) Analysis

1. Predominance

The Court finds that questions of law or fact common to class members predominate over questions affecting only individual class members. The most significant questions in this case concern the fact that "Plaintiffs and the Settlement Class allegedly paid supra-competitive prices for insurance" and as a result, "Plaintiffs and the Settlement Class have the same interest in establishing liability, and they all seek damages for the ensuing overcharges." ECF No. 89-1 at 35. Moreover, "[t]hey all will rely on the same evidence of Defendants' violations of law and will rely on class-wide damages models offered by their experts to show the fact and amount of harm that they incurred." Id. at 35-36. The settlement agreement provides for the resolution of these individual questions through (1) a monetary relief fund of $21,950,000, which will be distributed to "Settlement Class Members who submit timely and valid Claim Forms to the Claims Administrator" and (2) the implementation of business reforms "in the Lloyd's Market for five years." Id. at 17. Thus, the Court is satisfied that the common questions predominate over the individual ones.

2. Superiority

The Court also finds certifying this class is a superior option compared to other available methods for fairly and efficiently adjudicating the controversy. Class certification here will provide the class members with a faster, more efficient, more uniform resolution to their claims than they could achieve through individual lawsuits. Because the class is being certified for the purpose of settlement, not trial, certification will also save time, effort, and costs of litigation that all parties would otherwise have to bear, and the Court does not have to be concerned about any logistical difficulties a class-wide trial may or may not create.

**D. Rule 23(e) and *Girsh* Factor Analysis**

The Court has considered the nine *Girsch* factors and finds that they weigh in favor of finding the settlement to be fair, reasonable, and adequate.

1. Complexity, Expense, and Likely Duration

This case is very complex, involving thousands of nationwide class members. Proving liability and damages raises complicated issues for which expert analysis has already been provided. ECF No. 105-1 at 15. If the case went forward, the Court might still need to hear another class certification motion, summary judgment motions, pre-trial motions, and a trial, which could continue for several more years. Each of these stages involves time, expense, and risk to all parties. A certain result now, rather than an uncertain result potentially years from now, weighs in favor of settlement.

2. Reaction of the Class to the Settlement

In determining the reaction of the class to the settlement, this second factor "attempts to gauge whether members of the class support the settlement." *In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 643 (D.N.J. 2004).

No member of the class objected to the partial settlement and only fourteen members requested exclusion.[3] Id. at 7; ECF No. 116 at 9. As the Third Circuit articulated in *In re Rite Aid Corporation Securities Litigation*, 396 F.3d 294, 305 (3d Cir. 2005), "a low level of objection is a

---

[3] Stephen G. and Luciana J. Aquilina and Audra M. and Scott K. Lane, parties to related lawsuits in the District of Hawaii and Hawaii State Court, filed a conditional objection. ECF No. 108. Their conditional objection was "pending clarification" to confirm that the "definition of the Release contained in the Settlement . . . does not release the claims pending in *Aquilina* and the Hawaii State Court Actions." Id. at 4-5; *see also Aquilina v. Certain Underwriters at Lloyd's London*, No. 18-cv-00496 (D. Haw.). However, on the morning of the fairness hearing, the conditional objection was withdrawn due to confirmation that the allegations and claims in the Hawaii federal and state court lawsuits "were not within the scope of the claims released." ECF No. 105 at 2, Ex. 1. Therefore, no objections remain.

'rare phenomenon.'" Consequently, the Court concludes that the lack of any objections to the settlement weighs in favor of approval. *See In re Ins. Brokerage Antitrust Litig.*, Nos. 04-5184 and 05-1079, 2007 WL 2589950, at *5 (D.N.J. Sept. 4, 2007), *aff'd*, 579 F.3d 241 (3d Cir. 2009).

### 3. Stage of Proceedings and Amount of Discovery Completed

This factor weighs in favor of approval. The case is more than ten years old and was related to a larger Multi-District Litigation comprising various class actions. *See* ECF No. 89-1 at 12-13. Motions to dismiss the Second Amended Complaint were unsuccessful and the parties have spent significant time negotiating settlement terms and engaging in large amounts of discovery. *See id.* at 13-15. The discovery conducted to date includes the production and review of millions of pages of documents, contention interrogatories, taking and defending depositions, engaging in "extensive meet-and-confer efforts" about document productions and electronically stored information, and the pursuit of various other miscellaneous discovery motions. ECF Nos. 89-1 at 14, 105-1 at 36-37, 106-1 at 17-18. Thus, at this stage, the Court is confident the parties have a sufficient understanding of the strengths and weaknesses of the case to reach an informed and fair settlement.

### 4. Risks of Establishing Liability

This factor weighs in favor of approval. Plaintiffs "believe their Claims are strong" but nonetheless "acknowledge, as always, there are risks to recovery." Id. at 19. Defendants dispute liability. *See* id. Those risks and points of contention would likely continue to be disputed through summary judgment and/or trial if required. Thus, resolution helps all parties avoid exposure to the risk of an adverse judgment or verdict.

### 5. Risks of Establishing Damages

This factor weighs in favor of approval. In addition to liability, damages are in dispute in this case. "Defendants have argued that damages are zero or a *de minimus* amount for various reasons." ECF No. 105-1 at 18-19. Thus, this settlement provides a fair and efficient method to minimize the risks to all parties.

### 6. Risks of Maintaining the Class Action Through Trial

This factor weighs in favor of approval. If the partial settlement were not approved, it "could take years more to complete fact discovery, obtain class certification for litigation purposes, defeat summary judgment, conduct expert discovery, and prevail at trial and the appeals that would inevitably follow." Id. at 18. Settlement avoids such logistical difficulties that may otherwise prevent Plaintiffs from maintaining this class due to significant delays and expenses.

### 7. Ability of Defendants to Withstand a Greater Judgment

In *In re Cendant Corporation Litigation*, the Third Circuit interpreted this factor as concerning "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." 264 F.3d 201, 240 (3d Cir. 2001). While Plaintiffs might concede that Defendants could withstand a larger judgment, this is only a partial settlement and there is an opportunity for further relief from the ten Lloyd's Syndicates that are not parties to this settlement, as litigation will continue against those entities. ECF No. 105-1 at 18-19. In light of this consideration, the Court concludes that this factor weighs in favor of approval.

### 8. Range of Reasonableness of Settlement Fund in Light of Best Possible Recovery and Range of Reasonableness of Settlement Fund to a Possible Recovery in Light of Attendant Risks of Litigation

The eighth and ninth factors, the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation, also weigh in favor of settlement.

"The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. The percentage recovery, rather 'must represent a material percentage recovery to plaintiff' in light of all the risks considered under *Girsh*." *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000), *aff'd*, 264 F.3d 201 (3d Cir. 2001). Plaintiffs argue that:

> [T]he partial settlement provides 22% of reasonably recoverable damages (minus the ice-breaker settlement with Syndicate 2001) based on data produced in discovery and expert analysis, not even including the value of five years of business reforms to the Settlement Class. ECF [No.] 89 at 17. This estimated recovery falls well within the approvable range of settlements, particularly where the case has been so hard fought for so long.

(ECF No. 105-1 at 19 (citing *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 451 (E.D. Pa. 1985) (2.4% of sales within the reasonable range of recoveries); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 324-25 (N.D. Ga. 1993) (12.7% - 15.3% of total damages was "well above the lowest point in the zone of reasonableness"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fl. 1988) (approving settlement of 5.7% of damages)). Therefore, the Court finds that these factors favor settlement.

### E. Rule 23 Notice Analysis

Finally, the Court finds that the notice provided to potential class members complies with Rule 23 and due process and was the best notice practicable under the circumstances. Class Notices were mailed out to 197,000 addresses. ECF No. 105-1 at 24-25. 35,926 were returned as undeliverable, but the Claims Administrator subsequently located updated addresses for 7,319 of the returned notice recipients. Id. In addition, a "robust print publication and online media campaign" served to notify potential class members through ten national print ads and "more than 20 million internet advertisements," which in combination had "an estimated reach of approximately 71.6% of U.S. adults who are involved in the purchase of business insurance." Id. As of August 13, 2019, a website launched by the Claims Administrator received 28,904 unique

visitors, a related toll-free number received 1,239 calls, and the Claims Administer directly received correspondence via email and letters from 182 individuals. Id. at 26. By August 13, 2019, "more than 1,900 Settlement Class Members have completed a Claim Form online using the Settlement Website." Id at 27. Therefore, the Court certifies the class for settlement purposes and approves the settlement.

## II. MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES/CHARGES AND SERVICE AWARDS

Next, the Court will analyze the motion for fees, expenses, and a service award for each of the class representatives for reasonableness pursuant to Fed. R. Civ. P. 23(h). Under the settlement agreement, class counsel would receive "one-third of the cash component of the Partial Settlement," which is $21,950,000, and would therefore result in fees of $7,317,000. *See* ECF No. 106-1 at 7-8, 25. Moreover, class counsel seeks partial reimbursement for litigation expenses in the amount of $1,850,000 and a $15,000 service award for each class representative. Id. at 7-8, 25. The Court will first examine the reasonableness of the requested attorneys' fees, followed by a review of the expenses and service awards.

### A. Attorneys' Fees Reasonableness Standard

"Relevant law evidences two basic methods for evaluating the reasonableness of a particular attorneys' fee request—the lodestar approach and the percentage-of-recovery approach. Each has distinct attributes suiting it to particular types of cases." *Varacallo*, 226 F.R.D. at 248. "A district court has discretion to determine which type of case the settlement most closely resembles and which calculation method to apply." *Dungee v. Davison Design & Dev. Inc.*, 674 F. App'x 153, 156 (3d Cir. 2017). Here, the District Court chooses the percentage-of-recovery method because it is a favored approach for traditional common fund settlements such as this one. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (class counsel entitled to a reasonable fee based "on a

percentage of the fund bestowed on the class"); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) ("In common fund cases . . . the percentage-of-recovery method is generally favored").

1. Percentage-of-Recovery Method

The percentage-of-recovery method is applied by selecting a reasonable percentage that takes the case circumstances into account. That percentage is then multiplied by the gross settlement amount, and the resulting amount is the attorneys' fees awarded to counsel. Courts in the Third Circuit, including this one, have viewed fee percentages of 33% as reasonable. *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) (approving 33% fee award in MDL 1663); *see also In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687 (JLL)(JAD), 2018 WL 7108059, at *1 (D.N.J. Dec. 3, 2018) (awarding attorney fee of one-third (plus expenses) in common fund of $10.7 million); *In re Merck & Co., Inc., Vytorin ERISA Litig.*, No. 08-cv-285 (DMC), 2010 WL 547613, at *9-*11 (D.N.J. Feb. 9, 2010) (awarding attorney fee of one-third (plus expenses) in RICO common fund of $41.5 million); *Stoner v. CBA Info. Servs.*, 352 F. Supp. 2d 549, 553 (E.D. Pa. 2005) ("most fees awarded in this court under the percentage-of-recovery method in settlements under $100 million have ranged from 15% to 40%").

The Third Circuit set forth a non-exhaustive list of factors that a district court should consider when assessing reasonableness under a percentage-of-recovery method. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 199 (3d Cir. 2000). Those factors are:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter*, 223 F.3d at 195 n.1.

## 2. Lodestar Method

Even when applying the percentage-of-recovery method, the "Third Circuit has recommended that district courts perform a lodestar cross-check to ensure the reasonableness of the requested attorneys' fees." ECF No. 106-1 at 23; *see also In re AT&T*, 455 F.3d at 164. The lodestar analysis is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid*, 396 F.3d at 305. Courts are not required to review the actual billing records and may instead rely on summaries submitted by attorneys. *Id.* at 306-07. When performing a lodestar cross-check, the proposed fee award is divided by the lodestar calculation, which yields a lodestar multiplier. *In re AT&T*, 455 F.3d at 164. Multiplier numbers ranging from one to four have been awarded in this Circuit when the lodestar method is applied to common fund cases. *See e.g., id.* at 172-173 (approving a multiplier of 1.28); *see also In re Safety Components Int'l Sec. Litig.*, 166 F. Supp. 2d 72, 104 (D.N.J. 2001) (a multiplier of 2.81 was reasonable).

The Court will first examine the proposed attorneys' fees award based on a percentage-of-recovery method using the *Gunter* factors, and will then perform a lodestar cross-check to confirm the reasonableness of the amount requested.

### B. Attorneys' Fees Percentage-of-Recovery Reasonableness Analysis

The Court finds that the *Gunter* factors weigh strongly in favor of approval of the fee award. Given the similarity and overlap of the *Gunter* and *Girsh* factors, the Court incorporates by reference the reasons given for approval of the partial class action settlement agreement.

### 1. The Size of the Fund Created and the Number of Persons Benefitted

The partial settlement consists of a fund of nearly $22 million and five years of business reforms, as well as the possibility of future additional recovery from the defendants not party to this settlement agreement. *See* ECF No. 106-1 at 14. While the specific number of class members is not currently known, "the Claims Administrator mailed direct notice to more than 197,000 potential Settlement Class members" and the "notice has generated a substantial amount of interest in the Settlement Class" with more than 37,500 visits to the Settlement Website "by more than 28,000 unique visitors." Id. Given the size of the fund, as well as the number of class members entitled to benefits, this factor weighs in favor of approval.

### 2. Presence or Absence of Substantial Objections by Members of the Class to Settlement Terms and/or Fees Requested by Counsel

No settlement class members objected to the terms of the settlement or the fees requested by class counsel. Id. at 15. Such lack of any objections strongly supports approval. As noted above, notice was sent directly to more than 197,000 potential class members and only fourteen potential members requested exclusion from the agreement. The notice properly advised potential class members of the proposed attorneys' fees, litigation expenses, and service awards, and "invited Settlement Class Members to voice any objection" to them. Id. As such, this factor weighs in favor of approval.

### 3. Skill and Efficiency of Attorneys

As previously discussed with class certification, class counsel are experienced in litigating and settling consumer class actions. "Class counsel have extensive experience in antitrust and RICO litigation and have also been actively involved in many cases involving the insurance industry." Id. at 16. Defendants' motion to dismiss was ultimately unsuccessful and class counsel were able to successfully obtain substantial benefits for the class members despite vigorous

13

representation on behalf of Defendants by "counsel from prominent, national firms." Id. The favorable settlement negotiated by class counsel under these conditions is "the clearest reflection of counsel's skill and evidence of Plaintiffs' Counsel's hard work and sustained efforts." Id. Thus, this factor also weighs in favor of approval of the fee award.

### 4. The Complexity and Duration of the Litigation

As explained in the Court's discussion of the *Girsh* factors, this case has been litigated for more than a decade and involves uncertain legal issues. The parties reached the partial settlement agreement after mediation and "extensive settlement negotiations spanning seven years." Id. at 18. The complexity of the litigation is further evidenced by the fact that only a partial settlement agreement was reached, and litigation will remain pending against defendants not party to the current resolution. Thus, this factor weighs in favor of approval.

### 5. The Risk of Non-Payment

Class counsel undertook this action entirely on a contingent fee basis, assuming a substantial risk that they "would have to devote a significant amount of time and incur substantial expenses without any assurance of compensation for all their hard work and efforts." Id. at 18. This Court observed that "Courts recognize the risk of non-payment as a major factor in considering an award of attorney[s'] fees." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 122 (D.N.J. 2012). Class counsel invested substantial effort and resources spanning more than a decade to obtain this favorable settlement. On a contingent basis, class counsel "advance[d] their time, expertise, work product, and expenses to subsidize litigation that faces heightened pleading standards and many substantive challenges." ECF No. 106-1 at 19. Accordingly, this factor weighs in favor of approval.

### 6. The Amount of Time Devoted to the Case by Plaintiffs' Counsel

Class counsel reports more than 35,000 hours of contingent work on this case through May 31, 2019, "for an aggregate lodestar of approximately $20 million and have incurred over $1.85 million in expenses." ECF No. 106-1 at 21. Based on the amount of time expended on this matter, this factor weighs in favor of approval.

### 7. Awards in Similar Cases

The Court must also take into consideration amounts awarded in similar actions when approving attorneys' fees. Specifically, the Court must: (1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market. *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 122-23. The Court has reviewed similar cases in this Circuit and finds a range of awards. As previously noted, awards of one third the amount of the settlement fund are considered reasonable. The Court concludes that the fee award in this case, which is exactly one-third of the settlement fund amount, is consistent with complex fee litigation awards in similar cases.

The second part of the analysis addresses whether the requested fee is consistent with a privately negotiated contingent fee in the marketplace for comparable litigation. *See In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-cv-0085 (FSH), 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005). "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation." *Id.*; *see also In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). Class counsel's requested fee amount of one-third of the settlement fund is therefore within the range of privately negotiated contingent fees.

### C. Attorneys' Fees Lodestar Cross-Check Analysis

The lodestar cross-check confirms the reasonableness of the fee requested. "Plaintiffs' Counsel's lodestar totals $20,096,471.80, which reflects more than 35,000 hours of professional time during a period of over a dozen years." ECF No. 106-1 at 25. The requested fees of $7,317,000 (one-third of the settlement fund) therefore result in a negative lodestar multiplier of 0.36 the lodestar amount. Id. The negative multiplier of 0.36 is much lower than lodestar multipliers of between one and four that have been found to be reasonable in this Circuit. The Court therefore finds that the fees are fair and reasonable.

### D. Litigation Expenses Reasonableness

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001). While Plaintiffs' Counsel have spent a total of $1,874, 797.34 in litigation expenses through May 31, 2019, they seek only the $1,850,000 stated in class notices at this time. ECF No. 106-1 at 26. Counsel has adequately documented and reasonably incurred these expenses in the prosecution of this class action, and no objections were made to these expenses. *See id.* and related declarations. Therefore, costs in the amount of $1,850,000 are granted.

### E. Service Award Reasonableness

Finally, the Court finds the proposed $15,000 service awards to each of the two named plaintiffs to be fair and reasonable, and not excessive. The class representatives "have diligently and patiently monitored this case for over a decade; provided documents and information requested by Defendants; reviewed with their counsel important pleadings; sat for full-day depositions; and

traveled to, and participated in, several multi-day mediation sessions here and abroad." ECF No. 106-1 at 28-29. Therefore, the Court finds these service awards to be reasonable.

## III. CONCLUSION

The Court grants both the motion for final approval of partial class action settlement, ECF No. 105, and the motion for an award of attorneys' fees, expenses/charges and service awards, ECF No. 106. Appropriate orders accompany this Opinion.

Dated: October 3, 2019

/s/ Claire C. Cecchi
CLAIRE C. CECCHI, U.S.D.J.