ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN
ALEXANDRA S. BERNAY
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LINCOLN ADVENTURES, LLC, a Delaware Limited Liability Company, and MICHIGAN MULTI-KING, INC., a Michigan Corporation, on Behalf of Themselves and All Those Similarly Situated, | ) ) ) ) ) ) | No. 2:08-cv-00235-CCC-ESK <br><br> CLASS ACTION <br><br> MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Motion Return Date:  December 14, 2023 |
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON MEMBERS OF SYNDICATES, et al. | ) ) ) ) | |
| Defendants. | ) ) ) | |

4869-1087-2971.v1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..........................................................................................1

II.     PROCEDURAL HISTORY ............................................................................2

III.    LEGAL STANDARD FOR ATTORNEY FEE AWARDS ...........................3

IV.     THE REQUESTED ATTORNEYS' FEE IS REASONABLE......................4

        A.      The Percentage-of-Recovery Method Is the Favored Approach
                in Common Fund Settlements................................................................4

        B.      The Fee Is Reasonable Based on the *Gunter* Factors...........................6

                1.      This Additional Partial Settlement Achieves a Favorable
                        Outcome for the Settlement Class ...............................................7

                2.      No Settlement Class Member Has Objected to the Fee.............8

                3.      Plaintiffs' Counsel Have Been Tenacious and Skilled in
                        Their Representation of the Settlement Class...........................10

                4.      This Action Presents Complex Issues......................................10

                5.      Plaintiffs' Counsel Have Represented the Settlement
                        Class on a Contingent Basis for Years.....................................11

                6.      Plaintiffs' Counsel Have Devoted a Tremendous Amount
                        of Time Representing the Settlement Class..............................13

                7.      The Requested Fee Is in Line with Similar Awards .................14

        C.      A Lodestar Cross-Check Buttresses the Reasonableness of the
                Requested Fee......................................................................................16

V.      THE LITIGATION EXPENSES ARE REASONABLE ..............................18

VI.     THE SERVICE AWARDS ARE REASONABLE.......................................20

VII.    CONCLUSION.............................................................................................22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beesley v. Int'l Paper Co.*,
  2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ......................................................19

*Blum v. Stenson*,
  465 U.S. 886 (1984)............................................................................................4

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)............................................................................................3

*Bradburn Parent Teacher Store, Inc. v. 3M*,
  513 F. Supp. 2d 322 (E.D. Pa. 2007)................................................................21

*Demmick v. Cellco P'ship*,
  2015 WL 13643682 (D.N.J. May 1, 2015)...................................................7, 15

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ...............................................................................7

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) ............................................................................6, 7

*Hall v. AT&T Mobility LLC*,
  2010 WL 4053547 (D.N.J. Oct. 13, 2010) ........................................................15

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)..........................................................................................4, 7

*In re Am. Apparel, Inc.*,
  2014 WL 10212865 (C.D. Cal. July 28, 2014)..................................................17

*In re Apollo Grp. Inc. Sec. Litig.*,
  2012 WL 1378677 (D. Ariz. Apr. 20, 2012) .....................................................17

*In re AT&T Corp.*,
  455 F.3d 160 (3d Cir. 2006) .....................................................................*passim*

*In re Cendant Corp., Derivative Action Litig.*,
  232 F. Supp. 2d 327 (D.N.J. 2002)...................................................................19

4869-1087-2971.v1

**Page**

*In re Elec. Carbon Prods. Antitrust Litig.*,
   447 F. Supp. 2d 389 (D.N.J. 2006)............................................................3, 9, 19

*In re Genta Sec. Litig.*,
   2008 WL 2229843 (D.N.J. May 28, 2008).....................................................7, 12

*In re Ikon Office Sols., Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)........................................................................16

*In re Ins. Brokerage Antitrust Litig.*,
   282 F.R.D. 92 (D.N.J. 2012)..............................................................9, 14, 19, 20

*In re Ins. Brokerage Antitrust Litig.*,
   297 F.R.D. 136 (D.N.J. 2013)................................................................6, 15, 17

*Ins. Brokerage Antitrust Litig.*,
   MDL 1663, 2007 WL 1652303 (D.N.J. June 5, 2007).......................................17

*In re Linerboard Antitrust Litig.*,
   2004 WL 1221350 (E.D. Pa. June 2, 2004)........................................................21

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
   2018 WL 7108059 (D.N.J. Dec. 3, 2018).......................................................6, 15

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   205 F.R.D. 369 (D.D.C. 2002) ..........................................................................21

*In re Lucent Techs., Inc. Sec. Litig.*,
   327 F. Supp. 2d 426 (D.N.J. 2004).......................................................3, 9, 10, 11

*In re Merck & Co., Inc., Vytorin ERISA Litig.*,
   2010 WL 547613 (D.N.J. Feb. 9, 2010)....................................................6, 15, 18

*In re Remeron Direct Purchaser Antitrust Litig.*,
   2005 WL 3008808 (D.N.J. Nov. 9, 2005)................................................9, 10, 16

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001).................................................................15

- iii -

**Page**

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ........................................................................*passim*

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001)................................................................17, 19

*In re Suprema Specialties, Inc. Sec. Litig.*,
   2008 WL 906254 (D.N.J. Mar. 31, 2008) .........................................................17

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007)...................................................................17

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) .............................................................................12

*Milliron v. T-Mobile USA, Inc.*,
   2009 WL 3345762 (D.N.J. Sept. 10, 2009), *aff'd*,
   423 F. App'x 131 (3d Cir. 2011) ........................................................12, 15, 18

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .........................................................................13

*Saint v. BMW of N. Am., LLC*,
   2015 WL 2448846 (D.N.J. May 21, 2015)...................................................19, 20

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005)..........................................................................5, 19

*Vincent v. Reser*,
   2013 WL 621865 (N.D. Cal. Feb. 19, 2013) .....................................................20

## SECONDARY AUTHORITIES

American Law Institute,
   *Principles of the Law of Aggregate Litigation* (2010)
   §3.13(b) ...............................................................................................................5

*Court Awarded Attorney Fees*, Report of the Third Circuit Task Force,
   108 F.R.D. 237 (1985) ..........................................................................................5

4869-1087-2971.v1

**Page**

*Selection of Class Counsel*, Report of the Third Circuit Task Force,
208 F.R.D. 340 (2002) ............................................................................5

## I.  INTRODUCTION

Through this Partial Settlement, four additional Defendant Lloyd's Syndicates 510, 1084, 1096, and 1245 ("Settling Defendants") have agreed to pay $7.9 million for the benefit of the Settlement Class, in addition to nearly $22 million recovered in the 2019 Partial Settlement.[1]  Plaintiffs' Counsel fought long and hard to secure this additional recovery for the Settlement Class, and all on a contingency basis.

As the Court knows, Plaintiffs have persisted through years of discovery and litigation battles here and abroad for the benefit of the Settlement Class.  For this additional recovery, Class Counsel seek one-third of the Settlement Amount as partial payment for their attorneys' fees since the last settlement.[2]  Class Counsel also seek payment of litigation expenses capped at $1.6 million, including expert costs, and $5,000 each in service awards for the named Plaintiffs.  These requests are fair and

---

[1]   The Court granted final approval of the prior partial settlement ("2019 Partial Settlement") on October 3, 2019.  ECF 124-125.  There is a pending proposed order before the Court related to distribution of the prior settlement.  Plaintiffs respectfully request the Court approve the request to distribute the 2019 Partial Settlement by entering the proposed order filed on November 1, 2022.  *See* ECF 231-4.  Here, and throughout, capitalized terms have the same meaning as set forth in the Stipulation of Partial Class Action Settlement (ECF 273-2).

[2]   This includes one-third of the Settlement Amount, including interest earned thereon.  *See* accompanying Joint Declaration of Rachel L. Jensen and Robert S. Schachter in Support of Plaintiffs' Motions for: (1) Final Approval of Partial Class Action Settlement; and (2) an Award of Attorneys' Fees and Expenses and Service Awards (the "Joint Decl."), ¶91.  Both for the 2019 Partial Settlement and this one, Plaintiffs are seeking less than their counsel's total lodestar in attorneys' fees and thus will seek the balance in future settlements with the Remaining Defendants.

reasonable in light of the applicable legal standards, counsel's extensive litigation efforts, and the results achieved to date.

For all the reasons discussed herein and in the concurrently filed declarations, Plaintiffs respectfully request that the Court grant this motion in its entirety.

## II.   PROCEDURAL HISTORY

The Court is familiar with the lengthy procedural history of this Action and has granted preliminary approval of the Partial Settlement, so Plaintiffs do not repeat the many proceedings that culminated in this Partial Settlement.  Plaintiffs respectfully refer the Court to their preliminary approval memorandum (ECF 273-1)[3] and the concurrently filed Joint Declaration for a detailed recitation of the litigation history and Partial Settlement, and incorporate these documents by reference.[4]

As detailed in the Joint Declaration, Plaintiffs' Counsel have, and continue to, marshal considerable resources and time to the successful prosecution of this Action. They have litigated this case for over a decade both in this Court and abroad.  Since

---

[3]   Page number citations to docket entries ("ECF") refer to the page numbers generated by the electronic case filing (CM/ECF) system.

[4]   Class Counsel and other Plaintiffs' Counsel are also submitting declarations concerning their respective firms' lodestars and expenses.  *See* accompanying Declaration of Alexandra S. Bernay ("Bernay Decl."), Declaration of Robert S. Schachter ("Schachter Decl.") (the Bernay and Schachter Declarations are referred to collectively as "Class Counsel Declarations"); Declaration of Dan Drachler ("Drachler Decl."), Declaration of Van Bunch ("Bunch Decl."); Declaration of Robert Foote ("Foote Decl."); Declaration of Peter S. Pearlman ("Pearlman Decl.") (the Drachler, Bunch, Foote, and Pearlman Declarations are referred to collectively as "Other Plaintiffs' Counsel Declarations").

the last request for fees and expenses in the 2019 Partial Settlement, Plaintiffs'
Counsel have incurred more than $7.3 million in lodestar and over $2 million in
expenses, all on a contingency basis, in addition to the balance of the attorneys' fees
not reimbursed as part of the 2019 Partial Settlement.  *See* Joint Decl., ¶¶92 n.8, 93.
The Joint Declaration details the sustained efforts of Plaintiffs and their counsel in the
litigation since the 2019 Partial Settlement.

## III.   LEGAL STANDARD FOR ATTORNEY FEE AWARDS

It is well established that "a litigant or a lawyer who recovers a common fund
for the benefit of persons other than himself or his client is entitled to a reasonable
attorney's fee from the fund as a whole."[5]  *Boeing Co. v. Van Gemert*, 444 U.S. 472,
478 (1980).  The rationale is that "persons who obtain the benefit of a lawsuit without
contributing to its costs are unjustly enriched."  *Id.* at 472.  In addition, such an award
encourages skilled counsel to seek redress for damages inflicted on entire classes of
persons, and to discourage future misconduct of a similar nature.  *See, e.g.*, *In re Elec.
Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 405 (D.N.J. 2006).

The ultimate decision as to the proper amount of attorneys' fees and expenses
rests with the sound discretion of this Court after conducting a thorough judicial
review of the fee application.  *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300
(3d Cir. 2005); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 431 (D.N.J.

---

[5]   Here, and throughout, citations and internal quotation marks are omitted, and
emphasis is supplied, unless otherwise noted.

2004).  The standard for evaluating fee awards is reasonableness.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Here, the requested fee is eminently reasonable under the circumstances.

## IV.   THE REQUESTED ATTORNEYS' FEE IS REASONABLE

On July 10, 2023, the Court granted preliminary approval of the Partial Settlement, and the class notice, which informed Settlement Class Members that Class Counsel would seek attorneys' fees not to exceed one-third of the Settlement Amount (including interest earned thereon) and payment of their litigation expenses not to exceed $1.6 million and service awards of $5,000 for each named Plaintiff.  *See* ECF 280; *see also* ECF 273-2 at 98.  In the over 1,300 claims received to date (the claims deadline is not until December 21, 2023), not one has objected to the requested fee, expenses, or service award.  *See* Joint Decl., ¶78.  Plaintiffs respectfully ask the Court to exercise its discretion to award the full amounts requested here.

### A.   The Percentage-of-Recovery Method Is the Favored Approach in Common Fund Settlements

The Supreme Court has long held that, in common-fund settlements, class counsel is entitled to a reasonable fee based "on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).  Consistent with this rule, the Third Circuit approves awards of attorneys' fees using the percentage-of-recovery method, although district courts have the discretion to award fees based on either this

- 4 -

method or the lodestar method.[6]  *See, e.g.*, *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) (percentage-of-recovery method has long been used in common-fund cases); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 248-49 (D.N.J. 2005). In recent years, the percentage-of-recovery method has emerged as the favored one, with the lodestar method subject to criticism.  *See, e.g.*, American Law Institute, *Principles of the Law of Aggregate Litigation* §3.13(b) (2010) ("[A] percentage-of-the-fund approach should be the method utilized in most common-fund cases."); *see Court Awarded Attorney Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237, 254-59 (1985) (concluding that fees in traditional common fund cases should be awarded based on a percentage of the recovery); *see also Selection of Class Counsel*, Report of the Third Circuit Task Force, 208 F.R.D. 340 (2002).[7]  Regardless of whether the percentage-of-recovery or the lodestar method is used in this instance, Plaintiffs' fee request is reasonable.

In applying the percentage-of-recovery method, courts select a reasonable percentage that takes into account all the circumstances of the case, then multiplies the

---

[6]   The lodestar method calculates fees by multiplying the number of hours by hourly rates determined to be suitable for the region and experience of counsel.  The lodestar figure may be adjusted upward or downward to reflect the particular circumstances of the case.  *See Rite Aid*, 396 F.3d at 305.

[7]   In the cited Task Force Reports, the Third Circuit analyzed the percentage-of-the-fund approach to compensating attorneys who achieve a common fund recovery on behalf of a class.  Both Task Force Reports support the percentage-of-the-fund approach as the preferable method of awarding fees in common fund cases due in part to the shortcomings and difficulties inherent in the lodestar approach.

gross settlement amount by that percentage, and awards counsel the resulting amount. Courts in this Circuit routinely approve attorneys' fees of 33%, including this Court in connection with the 2019 Partial Settlement in this case and MDL 1663. *See* ECF 126 at 3 (awarding attorney fee of one-third (plus expenses)); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) (Cecchi, J., presiding) (approving 33% fee award in MDL 1663); *see also In re Liquid Aluminum Sulfate Antitrust Litig.*, 2018 WL 7108059, at *1 (D.N.J. Dec. 3, 2018) (awarding attorney fee of one-third (plus expenses) in common fund of $10.7 million); *In re Merck & Co., Inc., Vytorin ERISA Litig.*, 2010 WL 547613, at *9-*11 (D.N.J. Feb. 9, 2010) (awarding attorney fee of one-third (plus expenses) in RICO common fund of $41.5 million). As explained below, the requested attorney fee of one-third is fair and reasonable here under all the circumstances.

### B.   The Fee Is Reasonable Based on the *Gunter* Factors

In *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000), the Third Circuit set forth the factors for assessing the reasonableness of an attorney fee award under the percentage-of-fund method. The *Gunter* factors include: (1) size of the fund created and number of persons benefiting from the settlement; (2) presence/absence of substantial objections to the fee; (3) skill of plaintiffs' counsel; (4) complexity and duration of the litigation; (5) risk of nonpayment; (6) amount of time devoted to the

litigation; and (7) awards in similar cases. *Id.* at 195 n.1.[8] The Third Circuit has since emphasized that the *Gunter* factors "need not be applied in a formulaic way" because each case is different, and in certain cases, one factor may outweigh the rest. *See AT&T*, 455 F.3d at 166. As described below, the *Gunter* factors warrant awarding the full requested fee here.

### 1. This Additional Partial Settlement Achieves a Favorable Outcome for the Settlement Class

The result achieved for the benefit of the class is one of the primary factors for assessing a requested fee award. *See Hensley*, 461 U.S. at 436 ("[T]he most critical factor is the degree of success obtained.").

As the Court found preliminarily, the Partial Settlement provides a fair, reasonable, and adequate result for the Settlement Class. *See* ECF 280. Indeed, this Partial Settlement of $7.9 million is significant, especially given that Plaintiffs' Counsel have already secured nearly $22 million for the Settlement Class and may well secure additional recoveries from the handful of Remaining Defendants. This result is not only favorable substantively but procedurally as well, given the time value of money. The Partial Settlement provides immediate benefits to the Settlement Class (on a partial basis) without further delay, further fees and expenses, the

---

[8] The *Gunter* factors overlap with the *Girsh* factors used to assess the appropriateness of the Partial Settlement. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also In re Genta Sec. Litig.*, 2008 WL 2229843, at \*9 (D.N.J. May 28, 2008); *Demmick v. Cellco P'ship*, 2015 WL 13643682, at \*15 (D.N.J. May 1, 2015).

uncertainty of ongoing litigation in this Court, and the appeals would be likely to follow.

Further, while the exact number of persons benefiting from the Partial Settlement is not yet known, the number is expected to be substantial.  One relevant metric is the class notice.  In accordance with this Court's preliminary approval order (ECF 280), the Claims Administrator mailed direct notice to more than 238,500 potential Settlement Class Members.  *See* Declaration of Mark Cowen Regarding Notice Administration, ¶6, submitted herewith.  The class notice has generated a substantial amount of interest from the Settlement Class.  For example, to date, the Settlement Website has been visited more than 46,900 times by more than 23,200 unique visitors. *See id.*, ¶17.  Considering the number of Lloyd's insureds who will be benefited by this Partial Settlement and the size of the common fund created on their behalf, this factor weighs in favor of approval of the fee request.

### 2.    No Settlement Class Member Has Objected to the Fee

In addition, courts consider the class's reaction in awarding fees.  As mentioned above, the class notices advised potential Settlement Class Members that:

> Class Counsel will request to be awarded attorneys' fees in an amount not to exceed one-third of the Settlement Amount and not more than $1.6 million in expenses.  In addition, Class Counsel will seek a service award of $5,000 for each of the two Plaintiffs for their many years of time and effort in this Lawsuit, which will be paid out of the Settlement Fund.

ECF 273-2 at 98.

The class notices also invited Settlement Class Members to voice any objection to the "application for attorneys' fees and expenses or the requested service awards to the class representatives."[9]

To date, however, no Settlement Class Member has objected to the requested fee award, requested expenses, or service awards.  *See* Joint Decl., ¶78.  Courts find the lack of objections to be strong evidence that the fee request is reasonable.  *See* ECF 126 at 4 (noting the absence of any objectors in approving the fee award in connection with the 2019 Partial Settlement); *Lucent Techs.*, 327 F. Supp. 2d at 435; *In re Elec. Carbon*, 447 F. Supp. 2d at 406 ("The absence of objections to a fee request, or the imposition of minimal objections, is seen as an indicator that the fee request is fair."); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *13 (D.N.J. Nov. 9, 2005) ("*Remeron DP*").

Here, the absence of objections to date weighs strongly in favor of awarding the entire amount requested by Class Counsel here.  *See, e.g.*, *Rite Aid*, 396 F.3d at 305 (awarding fee over two objections); *AT&T*, 455 F.3d at 170 (awarding fee over eight objections); *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 121 (D.N.J. 2012) (awarding fee over one objection).

---

[9]   The Notices and Settlement Website advise Settlement Class Members that the deadline for any objection is November 23, 2023.  If any objections are timely filed, Class Counsel will respond in their reply brief, due December 7, 2023.

### 3.   Plaintiffs' Counsel Have Been Tenacious and Skilled in Their Representation of the Settlement Class

The skill of the attorneys representing Plaintiffs and the Settlement Class also weighs in favor of the fee request.  Plaintiffs' Counsel include some of the preeminent class-action firms in the country, with decades of relevant experience.[10]  Through protracted, hard-fought and creative negotiations, Class Counsel successfully obtained this additional partial recovery from the Settling Defendants, with the possibility of future recoveries from the Remaining Defendants.  *See generally* Joint Decl., ¶¶18-66 (detailing efforts since 2019); *id.*, ¶¶67-68 (detailing mediation efforts); *see Lucent Techs.*, 327 F. Supp. 2d at 436; *Remeron DP*, 2005 WL 3008808, at *13.

The quality of opposing counsel is also relevant to the evaluation of class representation.  *See Lucent Techs.*, 327 F. Supp. 2d at 437.  Here, the Settling Defendants have been represented vigorously by able counsel.  The fact that Class Counsel negotiated such a favorable settlement sitting across the table of those counsel also weighs in favor of awarding the requested fees.  *See id.*

### 4.   This Action Presents Complex Issues

As this Court is aware, this case involves nationwide civil RICO, conspiracy, and other state law claims against foreign defendants.  The excellent result obtained by Class Counsel against the Settling Defendants was no *fait accompli*.

---

[10]  Plaintiffs' Counsel respectfully submit their current firm resumes concurrently herewith.  *See* Bernay Decl., Ex. G; Schachter Decl., Ex. C; Bunch Decl., Ex. D; Foote Decl., Ex. C; Pearlman Decl., Ex. E; Drachler Decl., Ex. E.

In the years this case has been pending, Plaintiffs' Counsel have done significant work on behalf of the Settlement Class. *See* Joint Decl., ¶¶18-66. And since the 2019 Partial Settlement, Plaintiffs' Counsel have continued to move this case forward, including *inter alia*: (a) obtaining critical centralized data from the XChanging system; (b) successfully challenging Defendants' assertions of privilege; (c) preparing for and taking 12 additional depositions; (d) litigating class certification, which is supported by detailed and lengthy expert reports; and (e) engaging in additional settlement negotiations. *See id.*

Plaintiffs' Counsel will continue vigorously prosecuting this case against the Remaining Defendants to a successful conclusion, of course, but the Partial Settlement will provide the Settlement Class with a substantial benefit right now. This factor also weighs in favor of approval of the fee request.

### 5.     Plaintiffs' Counsel Have Represented the Settlement Class on a Contingent Basis for Years

Plaintiffs' Counsel undertook prosecuting the Class claims on an entirely contingent fee basis, assuming substantial risk that they would have to devote a significant amount of time and incur substantial expenses without any assurance of compensation for all their hard work and efforts. Courts in this District have consistently recognized that the risk of non-payment is an important factor in assessing the requested fee. *See, e.g.*, *Lucent Techs.*, 327 F. Supp. 2d at 438 ("[T]he intrinsically speculative nature of this contingent fee case enhances the risk of non-

- 11 -

payment and bolsters the Court's analysis under this factor."); *In re Genta*, 2008 WL 2229843, at *10 ("The contingent fee agreement further substantiates the propriety of the attorneys' fees award."); *see, e.g.*, *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *11 (D.N.J. Sept. 10, 2009) (awarding 33 1/3% fee (plus expenses) in recognition, *inter alia*, of contingent nature of representation), *aff'd*, 423 F. App'x 131 (3d Cir. 2011).

Likewise, sister Circuits have held that contingency representation and the burden carried by counsel may warrant an upward adjustment for fee awards:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

The risk of non-payment in contingency fee representation is even more pronounced in complex class actions, like this one, as they are highly technical, expert-intensive, and protracted. Contingent counsel advance their time, expertise, work product, and expenses to subsidize litigation that faces heightened pleading standards and many substantive challenges. In fact, there are many class actions in which counsel expend thousands of hours, incur substantial expenses, and yet receive

no remuneration despite their diligence and expertise.  Plaintiffs' Counsel are aware of many hard-fought lawsuits in which, because of the discovery of facts unknown when case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, or excellent legal services on the plaintiff's side of the "v" result in zero fees.  Even obtaining a favorable jury verdict is not a guarantee of success, as it may be reversed on appeal.  *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (verdict of $81 million for plaintiffs reversed on appeal and judgment entered for defendant).

The risk of non-payment in this case was high.  The risk existed since the outset, particularly given that the case was stayed for five years and Defendants delayed this case for years (while memories faded) before Plaintiffs received one shred of paper in discovery.  Notwithstanding this very real specter of non-payment, Plaintiffs' Counsel have committed enormous resources of both time and money to the vigorous and successful prosecution of this Action.  Accordingly, the risk of non-payment in this case weighs heavily in favor of awarding the requested fees.

**6.      Plaintiffs' Counsel Have Devoted a Tremendous Amount of Time Representing the Settlement Class**

Through October 15, 2023, Plaintiffs' Counsel have spent more than 44,00 hours prosecuting this case against the 23 Lloyd's Syndicate Defendants,

including these Settling Defendants, for an aggregate lodestar of approximately $27.4 million and have incurred more than $3.8 million in expenses.[11]

The complexity of this case required a significant amount of work. Through effective leadership, Class Counsel have managed this case in an efficient manner. Given the number of remaining Defendants, work has been allocated to specific firms to avoid duplication, and discrete teams of lawyers were designated to deal with specific areas of the litigation and with specific Defendants or third parties. In addition, where appropriate, work has been assigned to associates and paraprofessionals with lower billing rates. These decisions evidence an appropriate allocation of resources. This commitment of time and effort by Class Counsel weighs in favor of approval of the fee request.

### 7. The Requested Fee Is in Line with Similar Awards

The Court must take into consideration amounts awarded in similar actions when approving attorney fees. Specifically, the Court must: (1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market. *See In re Ins. Brokerage*, 282 F.R.D. at 122-23; *see*

---

[11]   These figures represent the total lodestar and expenses from inception. The current period time and expenses are detailed in the following declarations: Bernay Decl., Exs. A-F; Schachter Decl., Exs. A-B; Bunch Decl., Exs. A-C; Foote Decl., Exs. A-B; Pearlman Decl., Exs. A-D; Drachler Decl., Exs. A-D.

*also Demmick*, 2015 WL 13643682, at *17.  Considering both factors, the requested fee award is clearly fair, reasonable, and appropriate.

First, the comparison of the fee sought here with fees awarded in other class actions militates strongly in favor of granting the fee requested.  Courts in this Circuit have awarded 33 1/3% of the common fund as attorneys' fees, including this Court in connection with the 2019 Partial Settlement.  *See* ECF 126 at 3; *see also Ins. Brokerage*, 297 F.R.D. at 155 (awarding one-third of the common fund for attorneys' fee); *Liquid Aluminum Sulfate*, 2018 WL 7108059, at *1 (attorneys' fee of one-third (plus expenses) awarded on a common fund amount of $10.7 million); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71%" with a median value that "turns out to be one-third"); *Hall v. AT&T Mobility LLC*, 2010 WL 4053547, at *21 (D.N.J. Oct. 13, 2010) (attorneys' fee of one-third (plus expenses) awarded on a common fund amount of $18 million); *Merck & Co.*, 2010 WL 547613, at *9-*11 (in a RICO action, attorneys' fee of one-third (plus expenses) awarded on a common fund amount of $41.5 million); *Milliron*, 2009 WL 3345762, at *14 (attorneys' fee of one-third (plus expenses) awarded on a common fund amount of $13.5 million).  Accordingly, the fee request is consistent with these other complex fee litigation awards.

Second, the percentage-of-the-fund method of awarding attorneys' fees in class actions should approximate the fee that would be negotiated if the lawyer were offering his or her services in the private marketplace. *See Remeron DP*, 2005 WL 3008808, at *16. "The object . . . is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation." *Id.* (ellipsis in original). A one-third fee request reflects commonly negotiated fees in the private marketplace. *See id.* ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation."); *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases . . . plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."). For these reasons, as well, the requested fee is reasonable.

### C.   A Lodestar Cross-Check Buttresses the Reasonableness of the Requested Fee

The Third Circuit has recommended that district courts perform a lodestar cross-check to ensure the reasonableness of the requested attorneys' fees awarded based on a percentage of the recovery. *AT&T*, 455 F.3d at 164 ("The lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method."); *Rite Aid*, 396 F.3d at 300, 305.

To perform a lodestar cross-check, courts divide the proposed fee award by the lodestar calculation[12] to yield a lodestar multiplier.  *See AT&T*, 455 F.3d at 164. When the lodestar is used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys."  *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007).[13]

The lodestar multiplier "attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work."  *Rite Aid*, 396 F.3d at 305-06.  In this Circuit, multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.  *See AT&T*, 455 F.3d at 172-73 (approving a multiplier of 1.28); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 104 (D.N.J. 2001) (approving multiplier of 2.81); *In re Suprema Specialties, Inc. Sec. Litig.*, 2008 WL 906254, at *11-*12 (D.N.J. Mar. 31,

---

[12]   The lodestar calculation need not entail mathematical precision or "bean counting"; instead, the Court may rely on summaries submitted by the attorneys rather than the underlying billing records.  *See Rite Aid*, 396 F.3d at 306-07; *Ins. Brokerage Antitrust Litig.*, MDL 1663, 2007 WL 1652303, at *9 (D.N.J. June 5, 2007).  When performing this analysis, the court should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter.  *See Rite Aid*, 396 F.3d at 306.

[13]   *See also In re Am. Apparel, Inc.*, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014) ("In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours."); *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 n.2 (D. Ariz. Apr. 20, 2012) ("[A]n itemized statement of legal services is not necessary for an appropriate lodestar cross-check.").

2008) (multiplier of 1.1 was reasonable); *In re Merck & Co.*, 2010 WL 547613, at *13 (award of one-third of the common fund, with the resulting multiplier of 2.786 "is reasonable under the circumstances"); *Milliron*, 2009 WL 3345762, at *14 (attorneys' fee of one-third amounted to a 2.21 multiplier, which was "well within the range of reasonableness").

Here, a lodestar cross-check confirms the reasonableness of the fee requested. Plaintiffs' Counsel's lodestar totals $7,314,764.60, which reflects more than 9,600 hours of professional time from June 1, 2019 through October 15, 2023. *See* Joint Decl., ¶92. Thus, the requested fee of $2,630,699.00 represents a negative multiplier of the lodestar amount. *Id.* Thus, the fee will only partially compensate Plaintiffs' Counsel for their time expended to date. This is certainly fair and reasonable to the Settlement Class.[14]

## V.     THE LITIGATION EXPENSES ARE REASONABLE

As set forth in the class notice, Plaintiffs' Counsel request an award of $1.6 million in litigation expenses necessarily incurred to prosecute and resolve this Action on behalf of the Settlement Class. ECF 273-2 at 98.

It is well established that "[c]ounsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and

---

[14]   As aforementioned, Plaintiffs will seek to recover the remainder of their attorneys' fees in any future settlement and/or at the successful conclusion of the Action against the Remaining Defendants.

4869-1087-2971.v1

appropriately incurred in the prosecution of the case." *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002); *In re Safety Components*, 166 F. Supp. 2d at 108. This includes expenses that are reasonable, necessary, directly related to the litigation, and normally charged to a fee-paying client. *See In re Ins. Brokerage*, 282 F.R.D. at 124-25 (approving expenses); *Saint v. BMW of N. Am., LLC*, 2015 WL 2448846, at *19 (D.N.J. May 21, 2015) (same); *In re Safety Components*, 166 F Supp. 2d at 108 (same); *In re Elec. Carbon*, 447 F. Supp. 2d at 412 (same); *Varacallo*, 226 F.R.D. at 256-57 (same).

In the prosecution of this complex case, Plaintiffs' Counsel have expended a total of $2,006,962.52 in litigation expenses from June 1, 2019 to October 15, 2023. *See* Joint Decl., ¶93. These expenses exceed the $1.6 million amount stated in the class notices, so Plaintiffs' Counsel only seek that amount and will seek payment of any additional litigation expenses as part of any future application.

Plaintiffs' Counsel have understood throughout that, even if Plaintiffs were ultimately successful, any award of litigation expenses would not compensate them for the lost use of funds advanced to prosecute this Action. *See id.* As such, Plaintiffs' Counsel were sufficiently motivated to, and did, take significant steps to minimize expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of this Action. *See, e.g., Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014) ("Class Counsel had a strong incentive to keep

- 19 -

expenses at a reasonable level due to the high risk of no recovery when the fee is contingent.").

Here, Plaintiffs' Counsel's expenses are detailed in the accompanying fee and expense declarations with the specific categories incurred and amount for each. Bernay Decl., Ex. B; Schachter Decl., Ex. B; Bunch Decl., Ex. B; Foote Decl., Ex. B; Pearlman Decl., Ex. B; Drachler Decl., Ex. B.  Each of these expenses was necessarily incurred and of the type routinely charged to clients billed by the hour, including the cost of experts and consultants, service of process, online legal and factual research, travel, and mediation.  *See also Vincent v. Reser*, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013) (awarding expenses for "three experts and the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation related expenses").  These expenses were all necessary and of the types routinely approved. *See In re Ins. Brokerage*, 282 F.R.D. at 124-25 (approving these categories of expenses); *Saint*, 2015 WL 2448846, at *19 (same).  The Court should award the requested litigation expenses.

## VI.    THE SERVICE AWARDS ARE REASONABLE

Class Counsel also request that the Court award $5,000 each to the two named Plaintiffs (an aggregate of $10,000) in recognition of their many years of service and diligence in protecting the interests of the Settlement Class Members.  Courts routinely approve awards to compensate named plaintiffs for the service they provide,

and the risk incurred during the course of the class litigation.  *See, e.g.*, *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 342 (E.D. Pa. 2007) ("It is particularly appropriate to compensate named representative plaintiffs with incentive awards when they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of the class."); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.").

Here, the named Plaintiffs – Lincoln Adventures, LLC and Michigan Multi-King, Inc. – have diligently and patiently monitored this case through all its twists and turns; and were available and active in the discovery efforts and settlement negotiations.  *See* Joint Decl., ¶¶79-82.  As courts have held:  "Like the attorneys in this case, the class representatives have conferred benefits on all other class members[,] and they deserve to be compensated accordingly."  *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *18 (E.D. Pa. June 2, 2004).  As the named Plaintiffs have actively and effectively fulfilled their obligations as representatives of the Settlement Class, the requested service awards are both appropriate and reasonable.

4869-1087-2971.v1

## VII.   CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court award attorneys' fees in the amount of one-third of the Settlement Amount, including interest earned thereon; litigation expenses of $1.6 million; and service awards of $5,000 each to Plaintiffs Lincoln Adventures and Michigan Multi-King.

DATED:  November 9, 2023          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
RACHEL L. JENSEN
ALEXANDRA S. BERNAY


s/ Rachel L. Jensen
RACHEL L. JENSEN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ZWERLING, SCHACHTER
  & ZWERLING, LLP
ROBERT S. SCHACHTER
JUSTIN M. TARSHIS
41 Madison Avenue
New York, NY  10010
Telephone:  212/223-3900
212/371-5969 (fax)

LIEFF CABRASER HEIMANN
  & BERNSTEIN, LLP
DAN DRACHLER
1215 Fourth Avenue, Suite 1350
Seattle, WA 98161
Telephone:  206/895-5005
206/895-3131 (fax)

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
H. SULLIVAN BUNCH
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  602/274-1100
602/274-1199 (fax)

FOOTE, MIELKE, CHAVEZ
  & O'NEIL, LLC
ROBERT M. FOOTE
KATHLEEN C. CHAVEZ
10 West State Street, Suite 200
Geneva, IL  60134
Telephone:  630/232-7450
630/232-7452 (fax)

CAFFERTY CLOBES MERIWETHER
  & SPRENGEL LLP
ELLEN MERIWETHER
205 N. Monroe Street
Media, PA  19063
Telephone:  (215) 864-2800
215/864-2810 (fax)

Attorneys for Plaintiffs

4869-1087-2971.v1