COHN LIFLAND PEARLMAN
 HERRMANN & KNOPF LLP
MATTHEW F. GATELY
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LINCOLN ADVENTURES, LLC, a Delaware Limited Liability Company, and MICHIGAN MULTI-KING, INC., a Michigan Corporation, on Behalf of Themselves and All Those Similarly Situated, | ) ) ) ) ) ) | No. 2:08-cv-00235-CCC-JSA <br><br> CLASS ACTION <br><br> MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON MEMBERS OF SYNDICATES, et al. | ) ) ) ) | |
| Defendants. | ) ) | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   PROCEDURAL HISTORY ..................................................................... 5

      A.    Filing and Stay of the Action ................................................. 5

      B.    Denial of the Motions to Dismiss........................................... 5

      C.    Discovery to Date................................................................... 6

      D.    Pending Motions Before the Court ........................................ 7

      E.    Arm's Length Settlement Negotiations................................... 7

III.  OVERVIEW OF THE PARTIAL SETTLEMENT BENEFITS .................. 8

IV.   FRAMEWORK FOR CLASS ACTION SETTLEMENTS........................... 8

V.    THE PARTIAL SETTLEMENT SHOULD BE PRELIMINARILY
      APPROVED ........................................................................................ 9

      A.    The Partial Settlement Is the Result of Arm's-Length
            Negotiations by Well-Informed and Experienced Counsel ...............11

      B.    The Benefits Under the Partial Settlement Are Adequate .................14

      C.    The Other Amended Rule 23(e)(2) Factors Are Met ..........................16

            1.    The Proposed Method for Distributing Relief Is Effective ......16

            2.    Attorneys' Fees and Expenses ...................................................17

            3.    The Settling Parties Have No Side Agreements .......................18

            4.    Settlement Class Members Are Treated Equitably...................18

VI.   THE COURT SHOULD CERTIFY A SETTLEMENT CLASS FOR
      SETTLEMENT PURPOSES...........................................................................19

      A.    The Settlement Class Satisfies Rule 23(a) .........................................19

            1.    The Settlement Class Is Sufficiently Numerous......................20

**Page**

2.    Common Questions of Law and Fact Bind the Settlement Class ........................................................................20

3.    Plaintiffs' Claims Are Typical ..................................................21

4.    Plaintiffs and Class Counsel Are Adequate ............................22

B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ........................................................................23

1.    Common Legal and Factual Questions Predominate................24

2.    A Class Action Is Superior to Other Methods of Adjudication................................................................25

3.    The Court Should Appoint Plaintiffs as Class Representatives and Appoint Class Counsel ............................27

VII.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS................................................................27

VIII.    PROPOSED SCHEDULE OF EVENTS ....................................29

IX.    CONCLUSION................................................................31

4911-7884-3442.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..........................................................................19, 23, 24, 26

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)..........................................................................................24

*Bogosian v. Gulf Oil Corp.*,
561 F.2d 434 (3d Cir. 1977) .............................................................................22

*Bredbenner v. Liberty Travel, Inc.*,
2011 WL 1344745 (D.N.J. Apr. 8, 2011) .........................................................13

*Capps v. Law Offices of Peter W. Singer*,
2016 U.S. Dist. LEXIS 161137 (S.D. Cal. Nov. 21, 2016)...............................27

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).............................................................................................24

*Curiale v. Lenox Group, Inc.*,
2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) .....................................................9

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ...............................................................................8

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ..................................................................10, 13, 15

*Grunin v. Int'l House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) .............................................................................27

*Hart v. Colvin*,
2016 WL 6611002 (N.D. Cal. Nov. 9, 2016) ......................................................8

*In re Aggrenox Antitrust Litig.*,
2017 WL 4278788 (D. Conn. Sept. 19, 2017)...................................................11

*In re Bulk (Extruded) Graphite Antitrust Litig.*,
2006 WL 891362 (D.N.J. Apr. 4, 2006)............................................................20

4911-7884-3442.v1

**Page**

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ....................................................................9

*In re Currency Conversion Fee Antitrust Litig.*,
  263 F.R.D. 110 (S.D.N.Y. 2009) ......................................................11, 12

*In re Gen. Instrument Sec. Litig.*,
  209 F. Supp. 2d 423 (E.D. Pa. 2001) ......................................................12

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .......................................................................9

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................19

*In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*,
  2013 WL 504857 (E.D. Pa. Feb. 12, 2013) ............................................19

*In re Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012) ............................................................10, 14

*In re Ins. Brokerage Antitrust Litig.*,
  297 F.R.D. 136 (D.N.J. 2013) ..................................................................17

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ...................................................................25

*In re: Liquid Aluminum Sulfate Antitrust Litig.*,
  2018 WL 7108059 (D.N.J. Dec. 3, 2018) ...............................................17

*In re Mercedes-Benz Antitrust Litig.*,
  213 F.R.D. 180 (D.N.J. 2003) ..................................................................24

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................13, 14

*In re NFL Players Concussion Injury Litig.*,
  775 F.3d 570 (3d Cir. 2014) ...................................................................18

4911-7884-3442.v1

**Page**

*In re NFL Players' Concussion Injury Litig.*,
961 F. Supp. 2d 708 (E.D. Pa. 2014)....................................................15

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) .........................................................15

*In re Pet Food Prods. Liab. Litig.*,
2008 WL 4937632 (D.N.J. Nov. 18, 2008) ........................................18

*In re Philips/Magnavox Television Litig.*,
2012 WL 1677244 (D.N.J. May 14, 2012)...........................................11

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ..........................................20, 22, 24, 25

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) ...............................................................24

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ...................................................................9

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) .........................................................20, 21

*McDonough v. Horizon Blue Cross Blue Shield of N.J.*,
641 F. App'x 146 (3d Cir. 2015) ...........................................................8

*Meredith Corp. v. SESAC, LLC*,
87 F. Supp. 3d 650 (S.D.N.Y. 2015) ...................................................12

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)..............................................................................27

*Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) .....................................................................21

*Parker v. City of New York*,
2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017)......................................10

**Page**

*Sanders v. CJS Solutions Grp., LLC*,
    2018 WL 1116017 (S.D.N.Y. Feb. 28, 2018) ....................................................13

*Singleton v. First Student Management LLC*,
    2014 WL 3865853 (D.N.J. Aug. 6, 2014) ........................................................14

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) .............................................................................20

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) .......................................................................23, 24

*Varacallo v. Mass Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005)....................................................................12, 24

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..........................................................................................20

4911-7884-3442.v1

Page

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure

Rule 23 ....................................................................................4, 9, 19, 30
Rule 23(a)...............................................................................18, 19, 22
Rule 23(a)(2)...............................................................................20, 21
Rule 23(a)(3)...............................................................................21, 22
Rule 23(a)(4).....................................................................................22
Rule 23(b)(3)................................................................18, 23, 24, 25
Rule 23(c)(2).....................................................................................27
Rule 23(c)(2)(B)(v)............................................................................2
Rule 23(e)..................................................................................3, 4, 8, 9
Rule 23(e)(1)......................................................................................9, 10
Rule 23(e)(2)......................................................................10, 13, 16, 29
Rule 23(e)(2)(A)...............................................................................10
Rule 23(e)(2)(B)...............................................................................10
Rule 23(e)(2)(C)(ii)..........................................................................16
Rule 23(e)(2)(C)(iii).........................................................................16
Rule 23(e)(2)(C)(iv).........................................................................16
Rule 23(e)(3).....................................................................................10
Rule 23(g).........................................................................................26

## SECONDARY AUTHORITIES

*Manual for Complex Litigation (Fourth)* (2004)
    §21.63...........................................................................................29

William Rubenstein, Alba Conte & Herbert Newberg (4th ed. 2010)
    *Newberg on Class Actions* §4:25 .................................................23

Plaintiffs submit this memorandum in support of their motion for preliminary approval of the partial class action settlement ("Partial Settlement").

## I.    INTRODUCTION

Following the successful partial settlement given final approval by the Court in 2019 ("2019 Partial Settlement"), and after more hard-fought litigation, including a significant number of depositions and an all-day mediation in New York under the auspices of the Court-appointed mediator, Plaintiffs reached settlements with an additional four Lloyd's Syndicate-Defendants in 2023 (Syndicates 510, 1084, 1096, and 1245) for $7.9 million ("2023 Partial Settlement"). The Court granted final approval of that settlement on December 18, 2023.

Now, the parties seek approval of a third partial settlement with Syndicates 727, 2791, 1003, 2003, and 2020. Under the terms of this additional proposed Partial Settlement,[1] the Settling Defendants will provide $3.57 million in monetary relief in exchange for dismissal of the Second Amended Class Action Complaint (MDL 2737) (the "SAC")[2] as against those defendants only. As to the remaining Defendant Syndicate 2488 (the "Remaining Defendant"), the litigation will continue and, with

---

[1]    The terms of the Partial Settlement are reflected in the Stipulation of Partial Class Action Settlement, which, along with its exhibits, is referred to as the "Agreement" and is attached as Exhibit A to the Declaration of Alexandra S. Bernay ("Bernay Declaration"), submitted herewith.

[2]    Hereafter, capitalized terms shall have the same meaning as set forth in the Agreement, unless otherwise noted.

it, the potential for additional relief either in the form of an additional partial settlement or a judgment in favor of the Settlement Class.

The proposed Partial Settlement is the product of extensive arm's-length negotiations by highly experienced counsel with multiple Syndicate-Defendants and their counsel with the assistance of the Court-appointed mediator, the Honorable Layn R. Phillips (ret.) (hereafter "Judge Phillips"). The Settling Parties' negotiations were informed with the benefit of this Court's ruling on the motions to dismiss, the investigation and discovery conducted to date, Magistrate Judge Dickson's and Magistrate Judge Kiel's guidance on the various discovery motions, expert analysis and insights, and the extensive procedural history that preceded them.

As part of the Partial Settlement, the Settling Parties agree, for settlement purposes only, to the certification of the following proposed Federal Rule of Civil Procedure ("Rule") 23(b)(3) class:

> [A]ll persons and entities in the United States (including its territories) who, from January 1, 1997, through the Execution Date of the Agreement ("Class Period"), purchased or renewed a Contract of Insurance with any Lloyd's Syndicates named as a Defendant in the Action. Excluded from the Settlement Class are Released Defendants, Defendants formerly named as such in the Action, all Lloyd's syndicates, Opt-outs, and judges presiding over the Action and their immediate families (the "Settlement Class").

Pursuant to the terms of the Agreement and Rule 23(c)(2)(B)(v), all members of the Settlement Class will have an opportunity to opt out or object.

- 2 -

Under the Agreement, each Settlement Class Member is being treated equitably – entitled to claim a *pro rata* share of the monetary relief based on the premium they paid for insurance. Importantly, the Agreement does not release any claims against the Remaining Defendant, nor does it release any claim arising before or after the Class Period.

This Partial Settlement satisfies Rule 23(e). The Partial Settlement is a fair, reasonable, and adequate resolution for the Settlement Class with respect to the Settling Defendants and balances the objective of securing the highest possible recovery with recognition of the risks and costs of continued litigation, including the possibility that, as with any complex case, the Settlement Class could receive nothing. Accordingly, Plaintiffs and their counsel believe that the Partial Settlement is in the best interests of the Settlement Class.

Plaintiffs seek the Court's preliminary approval so that notice may be disseminated to the Settlement Class, and a Fairness Hearing may be set to consider final approval. At the Fairness Hearing, the Court will make a final determination as to whether the Partial Settlement is fair, reasonable, and adequate as a whole. In the interim, Plaintiffs request entry of the Settling Parties' proposed Preliminary Approval Order, which will commence the approval process by, among other things:

- preliminarily approving the terms of the Partial Settlement;

- certifying the Settlement Class and preliminarily certifying Plaintiffs as class representatives and Co-Lead Counsel as Class Counsel for purposes of the Partial Settlement only;

- approving the continued retention of A.B. Data, Ltd. ("A.B. Data") as the Claims Administrator;

- approving the form and content of the Claim Form, Long-form Notice, and Summary Notice, attached as Exhibits A, D, and E to the Agreement;

- approving the plan for disseminating notice to the Settlement Class, attached as Exhibit H to the Agreement, as the best notice practicable pursuant to Rule 23, due process, and all other applicable law and rules; and

- setting a schedule for: (i) disseminating notice to the Settlement Class; (ii) submitting any requests for exclusion from the Settlement Class; (iii) filing any objections to the Partial Settlement; (iv) submitting Claim Forms to participate in the Partial Settlement; (v) submitting papers in support of final approval of the Partial Settlement; (vi) submitting papers in support of Plaintiffs' Counsel's application for attorneys' fees and expenses, and Service Awards to Plaintiffs; and (vii) the Fairness Hearing.

The provisions of the requested Preliminary Approval Order will set in motion the steps necessary to obtain final approval of the proposed Partial Settlement as required by Rule 23(e). At this time, the Court need only determine that the proposed Partial Settlement is sufficiently fair, reasonable, and adequate to support the conclusion that "the court will likely be able to" approve the Partial Settlement and certify the Settlement Class for settlement purposes such that notice to the members of the proposed Settlement Class is warranted. Fed. R. Civ. P. 23(e). Plaintiffs

submit that the proposed Partial Settlement satisfies the applicable standards, and respectfully request that the Court enter the proposed Preliminary Approval Order.[3]

## II.    PROCEDURAL HISTORY

### A.    Filing and Stay of the Action

This case was filed years ago.  On July 13, 2007, Plaintiffs filed their lawsuit in the Southern District of Florida (the "Action"), which was "tagged" by certain Defendants to Multidistrict Litigation ("MDL") 1663, then pending in this District before District Judge Garrett Brown Jr. (ret.), as a potential tag-along action.

On December 11, 2007, the Judicial Panel on Multidistrict Litigation transferred this case to MDL 1663 (MDL 232).  Upon transfer of the Action to this District, Judge Brown (ret.) immediately stayed this case for years, until October 20, 2011, when MDL 1663 was transferred to this Honorable Court, which lifted the stay (MDL 1922).

### B.    Denial of the Motions to Dismiss

On November 14, 2012, at the Court's direction, Plaintiffs filed a Revised First Amended Class Action Complaint ("FAC") (MDL 2312).  On December 4, 2012, Defendants filed motions to dismiss the FAC, which motions were fully briefed as of April 30, 2013 (MDL 2503).  While these motions were pending before

---

[3]  Here, and throughout, internal citations and quotation marks are omitted and emphasis is supplied unless otherwise noted.

the Court, and after the parties to the Action were unable to resolve the Action at the conclusion of their two-day September 2013 mediation in London, on November 4, 2013, Plaintiffs filed a motion for leave to amend the FAC (MDL 2603). On November 17, 2015, the Court directed Plaintiffs to submit a revised proposed second amended complaint and, in February 2016, the Court granted leave for Plaintiffs to file it.

On February 12, 2016, Plaintiffs filed their SAC on behalf of themselves and a putative class for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962(c)-(d), civil conspiracy, and unjust enrichment, alleging that Defendants and other co-conspirators operating in the Lloyd's Market exploited the structure of Lloyd's Corporation in order to collaborate rather than compete in the pricing of insurance products sold to U.S. insureds.

On March 28, 2016, Defendants filed motions to dismiss the SAC (MDLs 2762-2770), which motions were fully briefed and argued. On August 23, 2017, the Court denied Defendants' motions (MDLs 2877-2878).

## C.    Discovery to Date

Following the previous partial settlement, the remaining parties re-engaged in extensive discovery, including taking and defending 13 fact depositions from summer 2022 through winter 2023. Magistrate Judge Kiel also granted in part

Plaintiffs' motion to compel the production of certain documents that Defendants

had withheld for years based on assertions of privilege.

### D.    Pending Motions Before the Court

Several substantive motions are currently pending before the Court.  As of

July 2023, Plaintiffs' motion for class certification was fully briefed.  Plaintiffs filed

their Renewed Motion for Class Certification on June 12, 2023.  Defendants opposed

on July 7, 2023, and Plaintiffs filed their Revised Reply on July 28, 2023.

Defendants filed a motion for summary judgment as to the named plaintiffs

on June 2, 2023.  Plaintiffs opposed this motion on September 22, 2023.  Defendants

filed their reply on November 6, 2023.

### E.    Arm's Length Settlement Negotiations

On September 25, 2012, this Court entered an Order Appointing Mediator,

referring MDL 1663, including this Action, to mediation and appointing Judge

Phillips as the mediator (MDL 2198).  Since that time, all the parties in this Action,

including the Settling Parties, have engaged in extensive arm's length settlement

negotiations under the auspices of Judge Phillips.  The history of prior mediations is

set forth in the Declaration of Rachel L. Jensen filed on April 19, 2019 (ECF 89-2)

in support of the 2019 Partial Settlement.  Another partial settlement, the 2023

Partial Settlement was reached after the parties re-engaged in settlement talks with

Judge Phillips, in April 2023 in New York.  The settlement that is presented to the

Court in this motion was reached following acceptances of mediator's proposals issued by Judge Phillips.

## III.    OVERVIEW OF THE PARTIAL SETTLEMENT BENEFITS

The proposed Partial Settlement provides for additional monetary relief to the Settlement Class in addition to the 2019 Partial Settlement and 2023 Partial Settlement.  The Settlement Amount of $3.57 million, together with interest earned thereon, less court-approved attorneys' fees and litigation expenses, settlement administration expenses, Taxes and Tax Expenses (the "Net Settlement Amount"), will be distributed to those Settlement Class Members who submit timely and valid Claim Forms to the Claims Administrator.

## IV.    FRAMEWORK FOR CLASS ACTION SETTLEMENTS

Rule 23(e) requires court approval for any compromise of claims brought on a class basis.  It is well established in this Circuit that the settlement of class action litigation is both favored and encouraged.  *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts.").  A class settlement is to be approved if, "'taken as a whole,'" it is fair, reasonable, and adequate to the class.  *See Hart v. Colvin*, 2016 WL 6611002, at *5 (N.D. Cal. Nov. 9, 2016).  In reviewing the proposed Partial Settlement, the Court should consider that "'there is an overriding

public interest in settling class action litigation, and it should therefore be encouraged.'" *McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 F. App'x 146, 150 (3d Cir. 2015) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)); *see also Curiale v. Lenox Group, Inc.*, 2008 WL 4899474, at *5 (E.D. Pa. Nov. 14, 2008). The Third Circuit has held that an initial "presumption of fairness" exists if this Court finds that: "(1) the negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).

## V.    THE PARTIAL SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Amended Rule 23(e) provides that the Court's task at preliminary approval is to determine whether class notice is warranted as it will likely be able to grant final approval and certify the class. *See* Rule 23(e)(1). As made clear by the 2018 amendments to Rule 23 governing the settlement of class actions, the court considers the likelihood that the proposed settlement will ultimately achieve approval, taking into account whether:

(a)    the class representatives and class counsel have adequately represented the class;

4911-7884-3442.v1

(b)    the proposal was negotiated at arm's length;

(c)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(d)    the proposal treats class members equitably relative to one another.

Fed. R. Civ. P. 23(e)(1) and (2). If, taking these factors and the showings made regarding class certification into account, the court concludes that the proponents have shown that "the court will likely be able to: (i) approve the proposal [for settlement] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal," the court "must direct notice in a reasonable manner to all class members who would be bound." Fed. R. Civ. P. 23(e)(1).

These factors also overlap with those set forth by the Third Circuit in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) (granting final approval after review of *Girsh* factors). These factors all favor preliminary approval here.

- 10 -

## A.    The Partial Settlement Is the Result of Arm's-Length Negotiations by Well-Informed and Experienced Counsel

The first two factors that this Court considers are the adequacy of representation for the class and the arm's length nature of the settlement negotiations.  *See* Rule 23(e)(2)(A)-(B); *Parker v. City of New York*, 2017 WL 6375736, at *5 (E.D.N.Y. Dec. 11, 2017) (the court "determine[s] if the settlement was achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests").  A proposed settlement resulting from arm's-length negotiations between experienced, capable counsel at an advanced stage of the case is entitled to a presumption of fairness.  *In re Aggrenox Antitrust Litig.*, 2017 WL 4278788, at *3 (D. Conn. Sept. 19, 2017).[4]

Here, the Partial Settlement is the result of extensive arm's-length negotiations by well-informed and experienced counsel.  The negotiations – collectively spanning the course of years – involved many in-person meetings, an all-day mediation session with the assistance of the Court-appointed mediator Judge Phillips, and dozens of follow-up calls and email communications.  They were only reached after mediator's proposals were issued.  Bernay Decl., ¶3.

---

[4]    *See also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009) ("Where a settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the negotiation enjoys a presumption of fairness.").

- 11 -

Throughout the negotiations, Plaintiffs and their counsel were mindful of the strengths and weaknesses of the claims and defenses in light of a decade of investigation, extensive proceedings, discovery conducted to date, expert analysis, and the Court's rulings and guidance. *See* Bernay Decl., ¶5; *In re Philips/Magnavox Television Litig.*, 2012 WL 1677244, at *11 (D.N.J. May 14, 2012) ("Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent.").

Moreover, the attorneys representing Plaintiffs are highly experienced in prosecuting complex class actions, including claims concerning anti-competitive conduct, fraudulent scheme, RICO,[5] and the insurance industry.[6] *See* Bernay Decl., ¶6 & Ex. B; Schachter Decl., ¶9 & Ex. A.

Bringing this experience and knowledge to bear, counsel believe that the Partial Settlement is in the best interests of the Settlement Class. *See* Bernay Decl., ¶5; Schachter Decl., ¶6. Counsel's judgment is entitled to considerable weight. *See Varacallo v. Mass Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's

---

[5]    The experience and qualifications of proposed Class Counsel are described in the Bernay Decl., Exhibit B and in the accompanying Declaration of Robert S. Schachter ("Schachter Decl."), Exhibit A.

[6]    Class Counsel and certain other Plaintiffs' Counsel played significant roles on behalf of the plaintiffs in *Insurance Brokerage*, MDL 1663; Schachter Decl., ¶9.

4911-7884-3442.v1

fairness."); *Currency Conversion*, 263 F.R.D. at 122 (citing the "extensive" class action experience of counsel); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) ("Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interests of the class."). These views are even weightier where, as here, many of the attorneys have been involved in the investigation and discovery since the start. *See, e.g.*, *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 662 (S.D.N.Y. 2015) (settlement procedurally fair where, due to experienced counsel and extensive discovery, "counsel on both sides were well-situated to thoughtfully assess the potential outcomes of the case and the likelihoods of each occurring"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts give "great weight . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").

Judge Phillips' participation further ensures that negotiations were non-collusive and conducted at arm's length. *See* Bernay Decl., ¶3; Schachter Decl., ¶¶3-4; *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *see also Sanders v. CJS Solutions Grp., LLC*, 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018) ("[T]he settlement was negotiated for at

- 13 -

arm's length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement.").

### B.    The Benefits Under the Partial Settlement Are Adequate

Amended Rule 23(e)(2), like *Girsh*, considers the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal would impose. These factors weigh in favor of approval.

Even without considering these factors, a Partial Settlement providing $3.57 million in monetary relief with an opportunity for further relief from the Remaining Defendant, is a good outcome, particularly when delay is taken into account. This case was filed over a decade ago, stayed for five years, and could take years more to complete expert discovery, obtain class certification for litigation purposes, defeat summary judgment, and prevail at trial and the appeals that would inevitably follow. *See Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 103 ("By reaching a favorable Settlement with most of the remaining Defendants prior to the disposition of Defendants' renewed dismissal motions or even an eventual trial, Class Counsel have avoided significant expense and delay, and have also provided an immediate benefit to the Settlement Class.").

Further, the relief is fair, reasonable, and adequate considering the risks of litigation. *See Singleton v. First Student Management LLC*, 2014 WL 3865853, at *6 (D.N.J. Aug. 6, 2014); *Ins. Brokerage Antitrust Litig.*, 282 F.R.D. at 105

- 14 -

(approving settlement "reached after arm's-length negotiations between experienced counsel after completion of a significant amount of discovery and motion practice," in light of "the substantial risks Plaintiffs face and the immediate benefits provided by the Settlement").  Plaintiffs believe their case is strong but acknowledge, as always, there are inherent risks to recovery in litigation.  *Cf. NASDAQ*, 187 F.R.D. at 475-76 ("[T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.").  Given the ongoing litigation against the Remaining Defendant, Plaintiffs will not detail the specific risks but are willing to provide them *in camera* if this Court wishes.

At bottom, a settlement is a compromise.  "[T]he dollar amount of the settlement by itself is not decisive in the fairness determination, and the fact that the settlement fund may equal only a fraction of the potential recovery at trial does not render the settlement inadequate."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 131 (S.D.N.Y. 1997); *In re NFL Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 715-16 (E.D. Pa. 2014); *Girsh*, 521 F.2d at 156-57.

Here, Defendants have argued throughout this case that damages are zero or a *de minimus* amount because the payments were not hidden or passed on to insureds.

4911-7884-3442.v1

*See, e.g.*, MDL 2763-1 at 42. Plaintiffs vigorously disagree.[7] The Court should find that the relief provided under the Partial Settlement is adequate, given the risks, posture of the case, and the damages alleged.

## C.   The Other Amended Rule 23(e)(2) Factors Are Met

### 1.   The Proposed Method for Distributing Relief Is Effective

The 2018 amendments to Rule 23(e)(2) enumerate three additional factors that a court considers in approving a settlement: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees; and (iii) the existence of any so-called "side agreements."   Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) (am. 2018). These factors will also be readily met.

As set forth in the concurrently filed declaration of the proposed Claims Administrator, the Notice Program includes mailing or emailing the Summary Notice to all potential Settlement Class Members who can be reasonably identified by the Settling Defendants and for whom the Claims Administrator is able to determine valid mailing or email addresses. *See* Declaration of Mark Cowen Regarding Notice to Settlement Class Members (the "Cowen Decl."), ¶¶3-6. The Claims Administrator will also access the databases utilized in the settlement administrations in *In re: Insurance Brokerage Antitrust Litigation*, Civil Action No.

---

[7]   *See, e.g.*, MDLs 2495, 2530; No. 2:08-cv-00235-CCC-JAD, ECFs 55, 57, 58, 60, 61, 64, 67-69, 72, 74.

05-1079 ("*Brokers*") to identify any instances where a claim in *Brokers* included information relating to the purchase of a Lloyd's policy and those persons or entities will receive a Summary Notice by mail or email. The 2019 Partial Settlement database and the 2023 Partial Settlement database will be used as well, further ensuring notice comports with due process. *See id.* This mail/email notice will be followed up by publication of the Summary Notice in different publications and a Digital Notice Program utilizing the Google Display Network and LinkedIn. *See id.*, ¶¶8-10. In addition, a website dedicated to the Settlement will include all of the important Settlement documents, including the Notices. *See id.*, ¶14.

## 2. Attorneys' Fees and Expenses

The Agreement provides that Plaintiffs' Counsel will apply to this Court for an award of attorneys' fees and expenses no later than 35 days prior to the Fairness Hearing. *See* Agreement, §XIII.1. As set forth in the proposed Long-form Notice, Class Counsel will request attorneys' fees not to exceed one-third of the Settlement Amount and no more than $200,000 in expenses. This fee request is in line with settlements approved by this Court in MDL 1663 and recent cases in this District. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 157 (D.N.J. 2013) (awarding 33.3% of $10.5 million partial settlement fund in attorneys' fees and $1,023,188.76 in expenses); *In re: Liquid Aluminum Sulfate Antitrust Litig.*, 2018 WL 7108059, at *1 (D.N.J. Dec. 3, 2018) (awarding 33.3% of $10,796,800

- 17 -

settlement fund). Class Counsel's maximum expense figure for this Partial Settlement is based on the substantial expense that Plaintiffs have incurred to date in a decade of litigation against 23 separate foreign insurer defendants. This undertaking has necessitated the outlay of hundreds of thousands of dollars for the common benefit of Settlement Class Members – with continuing, significant expenses. *See* Bernay Decl., ¶¶7, 9.

### 3. The Settling Parties Have No Side Agreements

Further, the Settling Parties' Agreement and the exhibits thereto constitute the entirety of their agreement. This is another factor that weighs in favor of preliminary approval.

### 4. Settlement Class Members Are Treated Equitably

Finally, as explained above, Settlement Class Members are treated equitably under the terms of the Agreement. Under the Agreement, each Settlement Class Member is being treated equitably – entitled to claim a *pro rata* share of the monetary relief based on the premium they paid for insurance. Importantly, the Agreement does not release any claims against the Remaining (non-settling) Defendant nor does it release any claim arising after the Class Period. For all these reasons, preliminary approval is warranted here.

- 18 -

## VI.   THE COURT SHOULD CERTIFY A SETTLEMENT CLASS
## FOR SETTLEMENT PURPOSES

The Settling Parties agree that the Court should certify the Settlement Class

for the purpose of settlement pursuant to Rules 23(a) and (b)(3).  The propriety of

certifying a class for purposes of settlement is well established in this Circuit.  *See,*

*e.g.*, *In re NFL Players Concussion Injury Litig.*, 775 F.3d 570, 583 (3d Cir. 2014)

("[P]reliminary analysis of a proposed class is . . . a tool for settlement used by the

parties to fairly and efficiently resolve litigation.") (emphasis in original); *In re Pet*

*Food Prods. Liab. Litig.*, 2008 WL 4937632, at *3 (D.N.J. Nov. 18, 2008) ("Class

actions certified for the purposes of settlement are well recognized under Rule 23.").

Certification of a settlement class is "the best, most practical way to effectuate

settlements involving large numbers of claims by relatively small claimants."  *In re*

*IMAX Sec. Litig.*, 283 F.R.D. 178, 186 (S.D.N.Y. 2012).  Importantly, manageability

is not an issue in deciding whether to certify a settlement class.  *See Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable

management problems . . . is not a consideration when settlement-only certification

is requested.").

### A.   The Settlement Class Satisfies Rule 23(a)

Rule 23(a) permits certification if: "(1) the class is so numerous that joinder

of all members is impracticable; (2) there are questions of law or fact common to the

class; (3) the claims or defenses of the representative parties are typical of the claims

- 19 -

or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, 2013 WL 504857, at *3 (E.D. Pa. Feb. 12, 2013). The Settlement Class meets each requirement for the same reasons this Court previously found in connection with the 2019 and 2023 Partial Settlements.

### 1.    The Settlement Class Is Sufficiently Numerous

The Settling Defendants have identified thousands of Settlement Class Members nationwide. *See* Cowen Decl., ¶3. Numerosity is met. Numerosity is satisfied where the proposed class is so large that the traditional joinder of parties would be "'unworkable.'" *In re Bulk (Extruded) Graphite Antitrust Litig.*, 2006 WL 891362, at *5 (D.N.J. Apr. 4, 2006).

### 2.    Common Questions of Law and Fact Bind the Settlement Class

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Importantly, "Rule 23(a)(2)'s commonality requirement does not require identical claims or facts among class member[s]." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)

(answers to common question must help "drive the resolution" of the litigation).
Courts in this Circuit have found commonality easily met in similar class actions.
*See, e.g.*, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d
283, 308 (3d Cir. 1998) (predominance readily met in RICO action alleging common
scheme).

The same is true here. Plaintiffs' allegations focus on the alleged misconduct
of Defendants – an issue that does not vary for any Settlement Class Member. As
the Court found in approving the 2019 and 2023 Partial Settlements, all Settlement
Class Members share the following legal and/or factual questions:

- whether Defendants made false or misleading statements or omissions;

- whether Defendants' scheme was furthered by mailings or wires;

- the effect of Defendants' conduct on the price of insurance sold to insureds in the United States during the Class Period;

- whether their conduct violated RICO and/or civil conspiracy laws and/or unjustly enriched them; and

- the nature and extent of monetary damages to which Plaintiffs and Settlement Class are entitled.

Because there are several common legal and factual questions related to
liability, the commonality requirement of Rule 23(a)(2) is easily met.

### 3. Plaintiffs' Claims Are Typical

Rule 23(a)(3) requires that the class representatives' claims be "typical of the
claims . . . of the class." As the Third Circuit explained:

- 21 -

4911-7884-3442.v1

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.

*Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994); *see also Marcus*, 687 F.3d at 598 ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class."). Moreover, the "typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *See Prudential*, 148 F.3d at 311.

Here, the claims of Plaintiffs are typical compared to those of other members of the Settlement Class for the same reasons that the Court approved the 2019 and 2023 Partial Settlements. Plaintiffs allege that Defendants engaged in a scheme to conceal the lack of competition in the Lloyd's Market. The claims of Plaintiffs, like those of other Settlement Class Members, arise out of the same alleged conduct by Defendants and are based on the same legal theories. This satisfies Rule 23(a)(3).

### 4.    Plaintiffs and Class Counsel Are Adequate

Rule 23(a) requires that the representative parties fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). This requirement guarantees "that the representatives and their attorneys will competently, responsibly and vigorously prosecute the suit, and that the relationship of the representative

- 22 -

parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977).

As explained above, for the past decade, Plaintiffs and Class Counsel have, and continue to, adequately represent the interests of the Settlement Class, and no conflict exists between Plaintiffs and other Settlement Class Members. *See* Bernay Decl., ¶¶5-9; Schachter Decl., ¶¶6-9. Further, Class Counsel are highly experienced in civil RICO claims and complex class action litigation, and have diligently prosecuted the claims on behalf of the Settlement Class. *See* Bernay Decl., ¶6; Schachter Decl., ¶9. Adequacy is, therefore, satisfied here, as it was with the prior settlements.

### B. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class meets this standard for the same reasons that the Court found it was satisfied with the 2019 and 2023 Partial Settlements.

### 1.    Common Legal and Factual Questions Predominate

To satisfy Rule 23(b)(3)'s requirement that common questions of law and fact predominate, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (quoting William Rubenstein, Alba Conte & Herbert Newberg, *Newberg on Class Actions* §4:25 (4th ed. 2010)). The touchstone of predominance is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594. This rule, however, "does ***not*** require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013). Rather, predominance is determined by whether "the efficiencies gained by class resolution of the common issues are outweighed by individual issues." *Varacallo*, 226 F.R.D. at 231; *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D.N.J. 2003) (predominance requires that "common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members"). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. The

mere existence or possibility of some individual issues does not defeat certification. *See Mercedes-Benz*, 213 F.R.D. at 186.

The Supreme Court has recognized that the Rule 23(b)(3) predominance test can be "readily met" in similar cases. *Amchem*, 521 U.S. at 624-25; *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008) (predominance is readily met because "proof of the conspiracy is a common question that is thought to predominate"); *Prudential*, 148 F.3d at 308 (RICO class action). In addition, the predominance standard is met by a showing that the existence of individual injury resulting from the alleged violation is capable of proof at trial through evidence that is common to the class. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 30 (2013).

Here, Plaintiffs and the Settlement Class allegedly paid supra-competitive prices for insurance. Plaintiffs and the Settlement Class have the same interest in establishing liability, and they all seek damages for the ensuing overcharges. They all will rely on the same evidence of Defendants' violations of law and will rely on class-wide damages models offered by their experts to show the fact and amount of harm that they incurred. Accordingly, the predominance requirement is easily satisfied.

## 2. A Class Action Is Superior to Other Methods of Adjudication

In addition to predominance, Rule 23(b)(3) requires a showing that a class action is "superior to other available methods for fairly and efficiently adjudicating

the controversy." Fed. R. Civ. P. 23(b)(3).  To this end, the Court must balance, in terms of fairness and efficiency, the advantages of class action treatment against alternative available methods of adjudication.  *Prudential*, 148 F.3d at 316.  Further, in evaluating the superiority of a class action, the Court should inquire as to the class members' interest in individually controlling the prosecution of separate actions, the extent and nature of any litigation concerning the controversy already commenced by members of the class, and the desirability or undesirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Here, a class action is superior to other available methods of adjudication "because litigating all of these claims in one action is . . . far more desirable than numerous separate actions litigating the same issues." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 259 (3d Cir. 2009).  By proceeding as a class action, resolution of common issues will lead to an efficient use of judicial resources and a result that is binding on all members.  In addition, the Settlement Class, like the Plaintiffs, are geographically dispersed, which poses the risk of multiple scattered lawsuits with contradictory results.  These issues led the Supreme Court to acknowledge these factors as leading to a finding that a class action is superior to other forms of adjudication.  *Amchem*, 521 U.S. at 617.  This, of course, applies with even greater force where the class-wide resolution is accomplished by a settlement.

- 26 -

### 3. The Court Should Appoint Plaintiffs as Class Representatives and Appoint Class Counsel

Plaintiffs also request that the Court appoint them to serve as representatives for the Settlement Class and to appoint Robbins Geller Rudman & Dowd LLP and Zwerling, Schachter & Zwerling, LLP to serve as Class Counsel for the Settlement Class pursuant to Rule 23(g), as it did with respect to the 2019 and 2023 Partial Settlements.

As discussed before, Plaintiffs have adequately represented the interests of the absent members of the Settlement Class. Likewise, Class Counsel: (i) have already done substantial work in investigating and prosecuting the claims in this Action; (ii) are experienced in handling complex litigation and claims (especially of the type asserted here); and (iii) have extensive knowledge of the applicable laws. In addition, counsel have devoted considerable time and resources to this Action. *See* Bernay Decl., ¶¶7, 9 & Ex. B; Schachter Decl., ¶¶7-9 & Ex. A. These facts support appointing Robbins Geller Rudman & Dowd LLP and Zwerling, Schachter & Zwerling, LLP as Class Counsel.

## VII. THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

The second step of the approval process is to give notice to the Settlement Class. *See Manual for Complex Litigation (Fourth)*, *supra*, §21.63 (2004). Rule 23(c)(2) requires the best practicable, which means it is "reasonably calculated,

- 27 -

under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "'[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process.'" *Capps v. Law Offices of Peter W. Singer*, 2016 U.S. Dist. LEXIS 161137, at *26 (S.D. Cal. Nov. 21, 2016) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975)).

Here, the Settling Defendants will provide the Claims Administrator with the most current list of names of Settlement Class Members to the extent reasonably available from electronic searches on their current underwriting databases. *See* Cowen Decl., ¶3. In addition, the Settling Defendants will request the assistance of coverholders active in the past five years to request that they also provide the names of policyholders as they maintain these names.

These identified policyholders, along with all other insureds of Defendant Lloyd's Syndicates identified in the *Brokers* settlement databases along with the data developed from the 2019 and 2023 Partial Settlements, will be forwarded to a third-party vendor to compile a list of valid addresses and email addresses to which the Summary Notice will be mailed/emailed. *See* Cowen Decl., ¶¶3-7. The Summary Notice will direct Settlement Class Members to the Settlement Website, where they can find Settlement-related documents, including the Agreement, Long-form Notice,

- 28 -

Claim Form, the Plan of Allocation, this Court's Preliminary Approval Order, and other documents. The Claims Administrator will also publish the Summary Notice in different publications and will utilize digital notice *via* the Google Display Network and LinkedIn. *Id.*, ¶¶8-9.

The Notices provide neutral, objective, and accurate information about the nature of the Action and the Partial Settlement. The Notices describe the claims, the Settlement Class, the relief provided under the Partial Settlement, and Settlement Class Member's rights and options, including the deadlines and means of submitting a request for exclusion, submitting a Claim Form, objecting, and/or appearing at the Fairness Hearing personally or through counsel.

The Notice Program provides the best notice practicable under the circumstances. *See generally* Cowen Decl. Accordingly, Plaintiffs respectfully request that the Court approve the proposed Notice Program and direct that notice be disseminated to the Settlement Class.

## VIII. PROPOSED SCHEDULE OF EVENTS

The last step in the settlement approval process is to hold a Fairness Hearing at which the Court will hear argument and make a final decision about whether to approve the Partial Settlement pursuant to Rule 23(e)(2). *See Manual for Complex Litigation*, *supra*, §21.63.

- 29 -

Plaintiffs have submitted an agreed-upon Preliminary Approval Order concurrently with this motion, setting forth the proposed schedule of events from here through final approval. Plaintiffs believe that the Court may enter the Order without the need for a hearing, unless the Court has questions, given that the Court will hold a Fairness Hearing once Settlement Class Members weigh in.

Specifically, Plaintiffs propose the following schedule:

| | |
|---|---|
| Deadline for Settling Defendants to submit names of Settlement Class Members to Claims Administrator | 30 days after the Execution Date |
| Deadline for commencing the mailing of the Summary Notice | 44 days after entry of the Preliminary Approval Order |
| Deadline for commencing publication of the Summary Notice and commencing Digital Notice | 55 days after entry of Preliminary Approval Order |
| Deadline for filing a final approval motion and application for attorneys' fees and expenses and Plaintiffs' Service Awards | 35 days prior to the Fairness Hearing |
| Deadline for requesting exclusion or objecting to the Partial Settlement | 21 days prior to the Fairness Hearing |
| Deadline for filing a reply in support of final approval, attorneys' fees and expenses, and Plaintiffs' Service Awards; deadline for Claims Administrator declaration | 7 days prior to the Fairness Hearing` |
| Fairness Hearing | Approximately 150 calendar days after entry of the Preliminary Approval Order, at the Court's convenience |
| Deadline for filing Claim Forms | 120 days from date of mailing and emailing of the Summary Notice |

- 30 -

This proposed schedule complies with Rule 23, while securing the recoveries for Settlement Class Members in a timely fashion.

## IX.    CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for preliminary approval and enter the Settling Parties' proposed Preliminary Approval Order, which is Exhibit G to the Agreement.

DATED:  April 17, 2025                    Respectfully submitted,

COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
MATTHEW F. GATELY


                                      _s/ Matthew F. Gately_
                                      MATTHEW F. GATELY

Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAM S. SHELDON
ALEXANDRA S. BERNAY
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

- 31 -

ZWERLING, SCHACHTER
    & ZWERLING, LLP
ROBERT S. SCHACHTER
JUSTIN M. TARSHIS
41 Madison Avenue
New York, NY 10010
Telephone: 212/223-3900
212/371-5969 (fax)

LIEFF CABRASER HEIMANN
    & BERNSTEIN, LLP
DAN DRACHLER
1215 Fourth Avenue, Suite 1350
Seattle, WA 98161
Telephone: 206/895-5005
206/895-3131 (fax)

BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.
H. SULLIVAN BUNCH
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: 602/274-1100
602/274-1199 (fax)

FOOTE, MIELKE, CHAVEZ
    & O'NEIL, LLC
ROBERT M. FOOTE
KATHLEEN C. CHAVEZ
10 West State Street, Suite 200
Geneva, IL 60134
Telephone: 630/232-7450
630/232-7452 (fax)

CAFFERTY CLOBES MERIWETHER
    & SPRENGEL LLP
ELLEN MERIWETHER
205 N. Monroe Street
Media, PA 19063
Telephone: 215/864-2800
215/864-2810 (fax)

Attorneys for Plaintiffs

- 32 -